# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| THOR ZURBRIGGEN and DENA CATAN on behalf of themselves and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Case No. _____ |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| TWIN HILL ACQUISITION, INC., a California corporation, | ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CLASS ACTION COMPLAINT

Todd L. McLawhorn
*tmclawhorn@siprut.com*
Stewart M. Weltman
*sweltman@siprut.com*
Michael Chang
*mchang@siprut.com*
**SIPRUT** PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.754.9616
**www.siprut.com**

*Attorneys For Plaintiffs*

Plaintiffs Thor Zurbriggen and Dena Catan (collectively referred to herein as the "Plaintiffs") bring this Class Action Complaint against Defendant Twin Hill Acquisition, Inc. ("Twin Hill"), on behalf of themselves and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## I.    NATURE OF THE ACTION

1.    This matter involves clear and present—as well as future—dangers posed to the health and well-being of thousands of employees of American Airlines ("American"), including thousands of flight attendants and pilots as well as others, such as gate agents. These dangers began on or about September 2016, continue to this day, and will continue to get worse over time. This matter also concerns the safety of those whom American Airlines serves—its passengers.

2.    On or about September 2016, American Airlines implemented a change of uniforms for its worldwide workforce, including flight attendants, pilots and other cockpit crew members and service agents. Several years in development, these uniforms are manufactured by Defendant Twin Hill.

3.    As more fully alleged below, these uniforms, manufactured by Defendant Twin Hill, pose an unreasonable risk of physical harm including current and future serious health problems to those who wear them and to those who are near to or work in the close quarters of an airplane with those who are wearing the uniforms.

4.    Since the introduction of these uniforms into the American Airlines workforce, in just ten months, over 4,000 flight attendants and pilots (with some estimates as high as 7,000) who have either worn or been near those who are wearing these uniforms, have experienced a cascade

of health problems, including, but not limited to, skin rashes, ear and throat irritation, headaches, fatigue, vertigo, the triggering of various auto-immune conditions, and adverse effects on endocrine as well as liver functions.

5.      The full extent of the injuries caused by these unsafe and unreasonably dangerous uniforms cannot and will not be determined for years. Among other concerns, a sizeable percentage of American Airlines flight attendants are women of child-bearing age. Because of the particular cascade of symptoms described above caused by Defendant's uniforms, these women and any children they may bear are at risk for adverse health consequences. For example, there have been reports of effects on menstruation including irregular timing, heavier menstruation and women who have stopped menstruating commencing to menstruate again. Likewise, there have been reports of women losing their hair.

6.      As a result of the foregoing, medical monitoring of all American Airlines employees exposed to these uniforms is required in order to ensure that anyone affected (from those currently experiencing symptoms to those who may develop problems in the future) is provided with compensation for any and all medical examinations that might be required in the future to monitor their health.

7.      Plaintiffs each assert their own individuals claim for personal injury damages, and seek injunctive and equitable relief (including a medical monitoring fund) on behalf of all American Airlines employees who have worn or been exposed to Twin Hill's uniforms since September 2016.

8.      Specifically, on behalf of the Class, Plaintiffs seek (a) injunctive relief to prevent the further sale of these uniforms to American Airlines employees and to recall those uniforms that are already being used, and (b) equitable relief in the form of medical monitoring for the

purpose of detecting and/or diagnosing any conditions, symptoms, or injuries resulting from exposure to the uniforms as the result of Twin Hill's actionable conduct.

## II.    JURISDICTION AND VENUE

9.      This Court has original jurisdiction over Plaintiffs' individual claims for damages pursuant to 28 U.S.C. § 1332(a) because each Plaintiff's damages exceed $75,000 and Plaintiffs and Defendant are citizens of different states. This Court also has original jurisdiction over Plaintiffs' claim for injunctive relief pursuant to 28 U.S.C. § 1332(a) because the cost of the requested injunctive relief exceeds $75,000 and Plaintiffs and Defendant are citizens of different states.

10.     With respect to the class allegations, this Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, the Plaintiffs' and the Class' equitable claims exceed $5,000,000 exclusive of interests and costs, as on their own or in combination the cost of the injunctive relief and the medical monitoring fund each exceed such amount, and there are numerous class members who are citizens of states other than Defendant's states of citizenship. This Court has specific jurisdiction over Defendant because Plaintiff Thor Zurbriggen is a resident and citizen of the State of Illinois, he received and began wearing his uniform in Illinois as well as suffering injury in Illinois, and Defendant has supplied hundreds if not thousands of its uniforms to other Class members who are residents of Illinois and who also suffered injuries in this state.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), (2), and 1391(c). Plaintiff Thor Zurbriggen resides in this district, received his new uniforms (manufactured by Defendant) in this district, was injured in this district and his work activities regularly begin and end in this district. For its part, Defendant distributed hundreds, if not

- 3 -

thousands, of new uniforms to American Airlines employees in this district as American Airlines maintains one of its largest hubs here.

## III.    PARTIES

*Plaintiffs*

12.    Plaintiff Thor Zurbriggen ("Plaintiff Zurbriggen") is a resident and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Zurbriggen is a citizen of the State of Illinois.

13.    Plaintiff Dena Catan ("Plaintiff Catan") is a resident and citizen of Connecticut and is currently domiciled in Southbury, Connecticut. For purposes of 28 U.S.C. § 1332, Plaintiff Catan is a citizen of the State of Connecticut.

*Defendant*

14.    Defendant Twin Hill Acquisition Company, Inc. ("Twin Hill") is a California corporation with its corporate headquarters located in Texas. Twin Hill operates under the name Twin Hill and Twin Hill Corporate Apparel. Twin Hill is wholly owned by The Men's Wearhouse, Inc. For purposes of 28 U.S.C. § 1332, Twin Hill is a citizen of California and Texas.

## IV.    FACTUAL BACKGROUND

*Adverse Reactions to Twin Hill's Uniforms*

15.    The adverse reactions to Defendant's uniforms were swift and continuous, with reports coming in of adverse reactions within weeks if not days of their introduction into the American Airlines workforce.

16.    In fact, some 24 months prior to their introduction into the American Airlines workforce it appears that Defendant's uniforms were pre-tested on actual American Airlines pilots. At that time, many pilots reported adverse physical reactions including rashes, flu-like symptoms,

- 4 -

headaches, vomiting, and respiratory problems.

17.     The sheer volume of complaints that have been made concerning the new American Airlines uniforms, along with the timing of those complaints, is such that the only plausible explanation is that the uniforms are causing the problems at issue. These reactions can only have been caused by the introduction of the uniforms into the workforce. The introduction of these new uniforms is the single common event that happened to the entire workforce; only after this event did thousands of American Airlines employees begin reporting the above described adverse reactions.

18.     Although Twin Hill has maintained that the new uniforms are safe, it has not identified any other conditions that changed in September 2016 (besides the uniforms) that might provide an alternative explanation for the concurrent incidence of similar health problems experienced by thousands of American Airlines employees after the uniforms were introduced into the workforce.

19.     Instead, Twin Hill appears to base its position upon the purported claim that the testing done to date fails to show that any one of the numerous chemicals used to treat Defendant's uniforms (chemicals which on their own can produce the above described health problems) are at a level high enough to cause health problems. But that position simply ignores that any testing likely cannot determine whether or not a synergistic effect from the combination of these chemicals is causing these ill-effects or whether it is something entirely different from that which has been or is normally tested.

20.     No testing can serve to negate the real-world events that are taking place— thousands of similar adverse reactions have occurred and been reported after the uniforms were introduced into the American Airlines workforce. Those adverse reactions can only be explained

by the fact that it is the uniforms that are causing these reactions.

*Twin Hill Provides New Uniforms to American Airlines*

21.     In September 2016, Twin Hill began distributing new, yet unreasonably dangerous, uniforms to over 60,000 American Airlines employees worldwide. Plaintiffs Zurbriggen and Catan, along with thousands of other American Airlines employees, obtained their new Twin Hill uniforms in the Fall of 2016.

22.     Plaintiff Zurbriggen received and then began wearing his new uniforms in November 2016. Almost immediately he began experiencing the health problems set forth above, including ecchymosis (a blood disorder) and rashes, respiratory problems, eye and throat irritation, severe fatigue both during and after flying, headaches and vertigo.

23.     Plaintiff Zurbriggen ceased wearing the uniforms within a week or so and obtained non-Twin Hill clothing. But like thousands of other American Airlines employees, these symptoms did not dissipate for Plaintiff Zurbriggen when American Airlines permitted employees experiencing these reactions to stop wearing the new Twin Hill uniforms and wear uniforms made by another manufacturer or to return to wearing their old uniforms. In one incident, during the week of June 26, 2017, Plaintiff Zurbriggen's plane was grounded for several hours. Six other crew members were wearing the new uniforms. Yet, although Plaintiff Zurbriggen was not wearing the new uniform, his physical condition greatly deteriorated such that he was not capable of fully performing his functions as the premium or lead flight attendant. This threatened the safety of the passengers on board, as flight attendants, particularly senior flight attendants such as Plaintiff Zurbriggen, are critical in emergency situations. In addition, pilots and other cockpit crew members charged with safely flying these planes are also being adversely affected in a similar fashion.

24.     Plaintiff Catan received her new Twin Hill uniform while she was on a work hiatus. In October 2016 she tried on everything that she had received, including a gray sweater that was part of the new Twin Hill uniform. Soon thereafter, she began feeling itchiness. She took the uniform off but left it out of its box, leaving it in her living room. That night she had a blinding migraine like headache and continued to have this and other symptoms for two weeks, until she spoke with another flight attendant who was experiencing the same problems. Plaintiff Catan then put the new uniform back in its box and in her garage. While still having the same headache problems that night, the symptoms proceeded to get better once she had banished the new uniforms to her garage.

25.     Before Plaintiff Catan went back to work, American Airlines announced that employees could elect to not wear the new uniforms and instead purchase clothing on their own. Plaintiff Catan took the new uniform she had previously placed in her garage, out of its box, in order to take pictures. Plaintiff Catan tried on and wore a blue sweater provided by Twin Hill for about 15 minutes. She left to go to the mall to buy new clothing. Upon arrival at the mall she was struck with severe dizziness and nausea—so much so that she promptly requested the assistance of the mall security to get back to her car. While driving, her eyes hurt so bad that she could barely see. Upon arrival at her home she vomited and could barely move. Her husband, Joe Catan, an American Airlines pilot who also has been severely affected by the new uniforms, ultimately disposed of them.

26.     Plaintiff Catan returned to work on or about March 2017 after her hiatus ended. Almost immediately she began to experience headaches, respiratory problems and other health related issues. These only begin to dissipate upon her return home after her work assignments have been completed. Plaintiff Catan works a reduced schedule, but, regardless, upon her return to work,

the cycle of health problems arises again.

27.    Plaintiffs Zurbriggen and Catan, as well as thousands of other American Airlines employees, are caught in a nightmarish "Groundhog Day"—a never ending cycle of (a) going to work, (b) experiencing debilitating symptoms of headaches, fatigue, respiratory problems, vertigo and rashes as a result of working in and around persons who are wearing the new uniforms, (c) leaving work and starting to recuperate, (d) only to repeat this again when they return to work.

28.    Plaintiff Zurbriggen's and Catan's experiences are not unique. For example, a flight attendant who had been on disability came back to work approximately six months after the uniforms had been introduced and elected to not wear the new uniforms. Yet, that flight attendant is experiencing the same cascade of symptoms as thousands of others.

29.    That is because Defendant has supplied and continues to supply thousands of other American Airlines employees who continue to wear these new uniforms while they all work in close quarters, including in planes with closed air systems that re-circulate the cabin air.

30.    These new uniforms are made of synthetic materials and so far have been found to contain at least the following chemicals: carbaryl, cadmium, captafol, chromium, copper, formaldehyde, monochlorophenols, nickel, nonylphenol, nonylphenolethoxylates, pentachlorophenol, tetrachlorophenols, and trichlorophenols. Several of these substances are known carcinogens or possible carcinogens as well being known to cause other health problems including auto-immune conditions such as those alleged above.

31.    But it is myopic to focus on any one chemical as the purported cause of any symptoms or particular symptoms, as two or more chemicals may synergistically contribute to a particular health effect or there may be some other cause altogether.

32.    One conclusion that is clear, however, is the new uniforms are causing these health

problems. That is the only possible conclusion given that the thousands of American Airlines flight attendants and pilots began reporting serious adverse reactions only after the new uniforms were introduced.

33.    Shortly after the introduction of the new uniforms, thousands of complaints from flight attendants flooded into their union, the Association of Professional Flight Attendants ("APFA" or the "Union"). The volume was so great that the APFA set up a special task force to address the problems created by the introduction of these uniforms into the American Airlines flight attendant work force.

34.    The number of adverse reactions reported has steadily increased over time. As of July 28, 2017, the APFA reported that it had received 3,758 uniform reaction complaints from American Airlines flight attendants out of the approximately 18,000 flight attendants employed by American.

35.    Similar reactions are being reported by American Airlines pilots and other cockpit crew members, including that their performance in the cockpit and thus the safety of passengers and crew members alike has been put at risk. As one pilot, Joe Catan ("Captain Catan"), the husband of Plaintiff Catan and a Marine veteran who served in Iraq and who is an American Airlines pilot, stated in a "town hall" meeting conducted by the American Airlines' Pr$esident, "I do not have a safe environment in the cockpit."[1]

36.    As Captain Catan noted, he comes to work fit for duty but, upon being exposed to the Twin Hill uniforms, he experiences respiratory issues, headaches and rashes in flight and as a

---

[1] Lewis Lazare, "An American Airlines pilot drops bombshell about Twin Hill uniforms," Chicago Business Journal, May 16, 2017, available at https://www.bizjournals.com/chicago/news/2017/05/16/an-american-airlines-pilot-drops-bombshell-about.html (last visited Aug. 1, 2017).

result, "I don't have a safe environment."[2] As he noted, the only reasonable solution is simple—"Get everyone out of those (Twin Hill) uniforms immediately."[3]

37.     On information and belief, certain American Airlines passengers (e.g., frequent flyers, many of whom fly more often than flight attendants and pilots/crew members) have begun to report similar symptoms.

38.     There have also been reports of flight attendants contracting chemical pneumonia subsequent to the introduction of the new uniforms.

39.     As further detailed below, this action seeks individual damages for Plaintiffs as well as injunctive relief and a medical monitoring class fund to be established for the benefit of those currently affected or those who may be affected in the future, as there are indications that on-going exposure to these uniforms will likely have on-going additional deleterious effects over time that may only surface years afterwards.

40.     The adverse physical reactions to these uniforms were so swift and directly related to the introduction and use of these uniforms that on October 6, 2016, less than one month after their introduction, the APFA announced it had conducted "numerous meetings" with American Airlines' management and that "the Company (American Airlines) formally recognized today the health concerns raised by Flight Attendants who have reported experiencing adverse reactions and symptoms as a result of wearing the new uniform."

41.     In addition, the APFA reported that American Airlines had (1) established a call center to review individual "concerns" (2) offered replacement garments of non-wool and/or non-synthetic fabrics or offered to allow flight attendants to "wear the prior uniform with call center approval" and (3) agreed to perform "further random testing of garments in addition to the

---

[2] *Id.*
[3] *Id.*

independent testing APFA has already commenced, in order to determine what is causing Flight Attendants to experience rashes, skin irritation, headaches and other symptoms."

42.     By at least October 2016, Twin Hill was aware of the serious problems caused by these uniforms. Yet, Twin Hill continues to deny that the uniforms are the cause of any adverse reactions despite that there can be no other reasonable conclusion but that the new uniforms are causing these adverse reactions and serious health problems for American Airlines employees.

43.     The only explanation for such intentional and reckless conduct on Twin Hill's part is that it has made a corporate decision to avoid confronting this serious problem in order to avoid any potential liability.

44.     But such a pennywise and pound foolish approach (1) subjects thousands of American Airlines employees to a hostile and dangerous workplace in which just by going to work these employees get sick and sicker and (2) subjects American Airlines passengers to unsafe conditions including not only debilitating flight attendants whose primary responsibility is the safety of their passengers, but also creates unimaginably unsafe conditions in the cockpit—where pilots are forced to gut through symptoms that impair their abilities to fly the aircraft.

**The Preliminary APFA Testing**

45.     Further evidence that the cause of these problems is and was the new uniforms made by Defendant is that on October 14, 2016, the APFA reported that American Airlines had agreed to jointly test uniform pieces at a testing facility "mutually agreed upon by the parties." In this same posting, the APFA recommended the following to anyone who experienced a reaction: "1. Immediately remove any uniform item that you suspect caused a reaction. 2. Place the uniform item in a zip lock/plastic bag and retain. 3. If you experience severe symptoms, consider seeking medical attention."

46. On October 28, 2016, the APFA reported the initial results of the testing it had ordered. While that testing did not indicate quantities that were outside accepted limits under Oeko-Tex Standard 100 requirement for certification of textile products (a private industry standard as there is no regulatory oversight), a detectable amount of the following substances/chemicals were indicated to be in the uniforms: Pentachlorophenol, Tetrachlorophenols, Trichlorophenols, and free and partially releasable formaldehyde. And at a later date, in a letter to Defendant Twin Hill on January 11, 2017, the APFA noted that its testing had, in fact, "revealed a quantity of substance [sic] in excess of the limit tolerated" by the Oeko-Tex standard.

47. Pentachlorophenol, also known as PCP, was first produced in the 1930s as a pesticide and disinfectant. People may be exposed to PCP through the inhalation of contaminated air and dermal contact with products treated with the chemical. Short term exposure to large amounts of PCP can cause harmful effects on the liver, kidneys, blood, lungs, nervous system, immune system, and gastrointestinal tract. Contact with PCP, particularly in the form of vapor, can irritate the skin, eyes, and mouth. Long-term exposure to low levels such as those that occur in the workplace can cause damage to the liver, kidneys, blood and nervous system. PCP is also associated with carcinogenic, renal, and neurological effects. The U.S. EPA classifies PCP as a possible carcinogen. Single doses of PCP have half-lives in blood of 30-50 hours in humans. Wearing of the new uniforms over time can cause the release of this chemical into the cabin air where it can combine with other vapors caused by the other chemicals in the new uniforms.

48. Tetrachlorophenols is an insecticide and a bactericide that is used as a preservative for latex, wood, and leather. Symptoms of exposure include irritations of the skin, eyes, nose and pharynx, and dermatitis with repeated skin contact.

49.     Trichlorophenols are used as fungicides, herbicides, insecticides, antiseptics, defoliants, and glue preservative. It too is listed as a possible human carcinogen. In animal models, consumption of 2, 4, 6-trichlorophenols leads to an increased incidence of lymphomas, leukemia, and liver cancer.

50.     Formaldehyde is known to be a human carcinogen. While it is widely used in industrial applications, including as a crease resistant in clothing, the chronic long term exposure by inhalation can cause a cascade of health issues from skin rashes and respiratory problems to cancer, as well as causing fatigue.

51.     Many of the chemicals used in the uniforms are released from wear and being exposed to sweat. The problems get worse as the uniforms are worn more.

52.     Evidence of abnormal enzyme activity in flight attendants has been observed in those who have had and continue to have adverse reactions to the uniforms where no such enzyme activity existed previously.

53.     And it should be noted that the APFA testing did not include testing the cabin air of planes in which employees wearing these uniforms were working—in a closed air environment for hours at a time on a daily basis.

54.     The APFA reported on November 30, 2016, that it had received over 1,600 flight attendant reports of uniform reactions that included, among other things, "headaches, rashes, hives, burning skin and eye irritation, itching and respiratory problems" and that these were caused by direct and indirect contact with the uniforms. Even though American Airlines allowed affected employees to change uniforms, being in or around those wearing the new uniforms, particularly when in the closed air environment of an airplane, continued to cause adverse and severe reactions.

- 13 -

*APFA's Efforts*

55.     On November 30, 2016, the APFA reported to its members that it had requested American Airlines to recall all uniforms until further joint testing with American was completed. American refused. In response, the APFA stated that "a remedy that excludes a full recall of the uniform fails to adequately protect our members."

56.     On December 14, 2016, the APFA reported to its members that it had received almost 2,000 reaction reports, "including from Flight Attendants who have only recently begun to report suspected reactions to their new uniforms."

57.     Furthermore, that new complaints kept on coming in and that the effects were cumulative—in that flight attendants who had not previously experienced reactions, were now experiencing them—bespeaks to the pernicious and ever escalating health problems that these uniforms were and are causing.

58.     On December 21, 2016, APFA's President reported to its members that nearly 2,200 flight attendants had reported reactions to the new uniforms, that this represented 8% of the workforce—with more coming each week—and that this constituted a "serious problem."

59.     APFA also commented on the fact that Twin Hill had sent a letter to the Union denying that there were any problems with their uniforms, despite that the only thing that changed in the work environment for American Airlines employees since September 2016 was that Defendant Twin Hill's uniforms had been introduced to the workforce. In its letter, Twin Hill admitted that it had shipped 1.4 million garments and accessories to more than 65,000 American Airlines employees worldwide.

60.     On February 28, 2017, the Union reported to its members that it had received uniform complaints from 2,887 flight attendants and that new reports were being received each

day.

61.     On March 21, 2017, the Union reported to its members that over 3,000 flight attendants had reported complaints about reactions to the new uniforms that included rashes, hives, respiratory problems and a new serious problem—endocrine issues—something that affects the entire body's functioning and can lead to severe and serious health complications. In this report, the Union also noted that American Airlines had agreed to offer an alternative uniform that would be manufactured by a different manufacturer, but that this was only an interim solution—and this is clear from the fact that until all of these uniforms are taken out of service, Plaintiff and the Class are threatened with continuing and ever worsening health problems by having to work with those who continue to wear the new Twin Hill uniforms.

62.     Thus, while still not directly admitting that the new uniforms posed a health risk, American's conduct demonstrated that the new uniforms were a real, as opposed to imaginary, problem as was asserted by Twin Hill to the Union.

63.     Notwithstanding what appeared to be that small step in the right direction, on May 5, 2017, the Union reported to its members that more than 3,200 flight attendants had now reported adverse reaction reports related to the new uniforms.

64.     As of June 16, 2017, the APFA reported receiving 3,478 uniform reaction reports.

65.     And as of July 28, 2017, 3,758 uniform complaints had been filed with the Union.

***Pilots Are Experiencing the Same Problems as the Flight Attendants***

66.     The adverse health effects of these uniforms have not been limited to flight attendants.

67.     While pilots were under different pressures that caused many to remain silent about the fact that they were experiencing difficulties while in the cockpit, on April 18, 2017, the Chicago

- 15 -

Business Journal reported that American Airlines pilots, at least as many as 100, had expressed significant concerns about the Twin Hill uniforms and were also experiencing the same serious reactions as those of the flight attendants.

68.     On April 19, 2017, a representative of the pilots' union confirmed that at least 100 pilots had lodged reports of experiencing the same symptoms as the flight attendants but that there were indications that the numbers were greater than 100. As a result, the pilots' union announced that it was initiating an investigation and conducting a survey of its members.

69.     And on or around June 5, 2017, this same pilots' union spokesperson stated the obvious, that pilots experiencing these symptoms were unsafe and noted that numerous affected pilots had taken time off to recover from their reactions.

70.     As of June 21, 2017, 600 pilots had filed uniform reaction complaints with the Allied Pilots Association ("APA")—the pilots' union.

## V.     CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring Count V, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and(b)(2) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All American Airlines current and former employees who were exposed to Twin Hill's uniforms on or after September 1, 2016 (the "Class").

Excluded from the Class are Defendant, its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

72.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because

- 16 -

all of the elements of Rule 23 (a) and (b)(2) are met here, as Plaintiffs can prove the elements of their and the class' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim, Defendant continues to act and refuses to discontinue actions which are harmful to the Class as a whole and Plaintiffs seek equitable relief against Defendant on behalf of themselves and the Class.

73. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all members of the Class is impracticable. To date, tens of thousands of American Airline's employees have worn, or been exposed to, Defendant's unsafe uniforms, and thousands have made complaints to their respective unions. The precise number of Class members and their addresses is presently unknown to Plaintiffs, but may be ascertained from the books and records of Twin Hill and American Airlines as well as the APFA and APA, as both maintain adverse reaction reports files. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

74. **Commonality – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(2).** This action involves common questions of law and fact, including, without limitation:

(a) Whether the uniforms supplied by Twin Hill to American Airlines' employees are unsafe and dangerous;

(b) Whether Twin Hill knew that the uniforms it supplied to American Airlines' employees were unsafe and dangerous; and

(c) Whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to, medical monitoring, injunctive or declaratory relief.

75. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class members because, among other things, all Class members are at risk for short and long-term injuries resulting from exposure to the Twin Hill uniforms.

76.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class members they seek to represent; they have retained counsel competent and experienced in complex and class action litigation; and Plaintiffs intend to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

77.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Twin Hill has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive and declaratory relief, as described below.

## VI.     CLAIMS ALLEGED

### COUNT I
### Strict Liability
### (On Behalf of Plaintiff Zurbriggen and the Class)

78.     Plaintiff Zurbriggen incorporates paragraphs 1 through 77 as if fully set forth herein.

79.     The uniforms provided by Twin Hill to American Airlines employees were at the point of manufacture and continue to be unreasonably dangerous in that they are the only possible cause of the thousands of adverse reactions that occurred in the American Airlines workforce after the introduction of the Twin Hill uniforms. The uniforms have caused Plaintiff Zurbriggen and other class members to experience adverse medical reactions, including the cascade of health issues alleged above.

- 18 -

80.     The uniforms contained latent defects causing the uniforms to provoke the adverse reactions described above when they left Defendant's control and were provided to Plaintiff Zurbriggen and other American Airlines employees.

81.     As a result of Twin Hill's actions, Plaintiff Zurbriggen suffered individual damages. Plaintiff Zurbriggen seeks an individual award of compensatory damages, pain and suffering, and any other relief to which he is entitled under the law.

82.     Since at least the Fall of 2016 when American's flight attendants began to report adverse medical effects from wearing Twin Hill's uniforms, and possibly earlier, Twin Hill was aware of the unsafe nature of its uniforms. This conduct demonstrates malice, evil motive, or the reckless disregard for the rights of others such that an award of punitive damages is appropriate.

83.     Because Plaintiff Zurbriggen continues to work for American Airlines, and continues to be exposed to co-workers who are wearing Twin Hill's dangerous uniforms, Plaintiff Zurbriggen individually, and on behalf of the Class, seeks to enjoin Twin Hill from selling any additional uniforms to American's employees and to require Twin Hill to recall from the market those uniforms it has already provided to American's employees. Plaintiff Zurbriggen further seeks a declaration that the uniforms manufactured by Twin Hill for American's employees are unreasonably dangerous.

**COUNT II**
**Strict Liability**
**(On Behalf of Plaintiff Catan and the Class)**

84.     Plaintiff Catan incorporates paragraphs 1 through 77 as if fully set forth herein.

85.     The uniforms provided by Twin Hill to American Airlines employees were at the point of manufacture and continue to be unreasonably dangerous in that they are the only possible cause of the thousands of adverse reactions that occurred in the American Airlines workforce after

- 19 -

the introduction of the Twin Hill uniforms. The uniforms have caused Plaintiff Catan and other class members to experience adverse medical reactions, including the cascade of health issues alleged above.

86. The uniforms contained latent defects causing the uniforms to provoke the adverse reactions described above when they left Defendant's control and were provided to Plaintiff Catan and other American Airlines employees.

87. As a result of Twin Hill's actions, Plaintiff Catan suffered individual damages. Plaintiff Catan seeks an individual award of compensatory damages, pain and suffering, and any other relief to which she is entitled under the law.

88. Since at least the Fall of 2016 when American's flight attendants began to report adverse medical effects from wearing Twin Hill's uniforms, and possibly earlier, Twin Hill was aware of the unsafe nature of its uniforms. This conduct demonstrates malice, evil motive, or the reckless disregard for the rights of others such that an award of punitive damages is appropriate.

89. Because Plaintiff Catan continues to work for American Airlines, and continues to be exposed to co-workers who are wearing Twin Hill's dangerous uniforms, Plaintiff Catan individually, and on behalf of the Class, seeks to enjoin Twin Hill from selling any additional uniforms to American's employees and to require Twin Hill to recall from the market those uniforms it has already provided to American's employees. Plaintiff Catan further seeks a declaration that the uniforms manufactured by Twin Hill for American's employees are unreasonably dangerous.

**COUNT III**
**Negligence**
**(On Behalf of Plaintiff Zurbriggen and the Class)**

90. Plaintiff Zurbriggen re-alleges and incorporates by reference the allegations

- 20 -

contained in paragraphs 1 through 77 above as if fully set forth herein.

91.    Twin Hill had a duty towards Plaintiff Zurbriggen and the class to provide uniforms that were safe and would not cause them harm such as the cascade of adverse reactions set forth above.

92.    Twin Hill breached that duty by providing uniforms that were not safe and that caused Plaintiff Zurbriggen to suffer injuries and the threat of future injuries.

93.    As a result of Twin Hill's actions, Plaintiff Zurbriggen suffered individual damages. Plaintiff Zurbriggen seeks an individual award of compensatory damages, pain and suffering, and any other relief to which he is entitled under the law.

94.    Since at least the Fall of 2016 when American's flight attendants began to report adverse medical effects from wearing Twin Hill's uniforms, and possibly earlier, Twin Hill was aware of the unsafe nature of its uniforms. This conduct demonstrates malice, evil motive, or the reckless disregard for the rights of others such that an award of punitive damages is appropriate.

95.    Because Plaintiff Zurbriggen continues to work for American Airlines, and continues to be exposed to co-workers who are wearing Twin Hill's dangerous uniforms, Plaintiff Zurbriggen individually, and on behalf of the Class, seeks to enjoin Twin Hill from selling any additional uniforms to American's employees and to require Twin Hill to recall from the market those uniforms it has already provided to American's employees. Plaintiff Zurbriggen further seeks a declaration that the uniforms manufactured by Twin Hill for American's employees are unreasonably dangerous.

**COUNT IV**
**Negligence**
**(On Behalf of Plaintiff Catan and the Class)**

96.    Plaintiff Catan re-alleges and incorporates by reference the allegations contained in

paragraphs 1 through 77 above as if fully set forth herein.

97.    Twin Hill had a duty towards Plaintiff Catan and the class to provide uniforms that were safe and would not cause them harm such as the cascade of adverse reactions set forth above.

98.    Twin Hill breached that duty by providing uniforms that were not safe and that caused Plaintiff Catan to suffer injuries and the threat of future injuries.

99.    As a result of Twin Hill's actions, Plaintiff Catan suffered individual damages. Plaintiff Catan seeks an individual award of compensatory damages, pain and suffering, and any other relief to which she is entitled under the law.

100.    Since at least the Fall of 2016 when American's flight attendants began to report adverse medical effects from wearing Twin Hill's uniforms, and possibly earlier, Twin Hill was aware of the unsafe nature of its uniforms. This conduct demonstrates malice, evil motive, or the reckless disregard for the rights of others such that an award of punitive damages is appropriate.

101.    Because Plaintiff Catan continues to work for American Airlines, and continues to be exposed to co-workers who are wearing Twin Hill's dangerous uniforms, Plaintiff Catan individually, and on behalf of the Class, seeks to enjoin Twin Hill from selling any additional uniforms to American's employees and to require Twin Hill to recall from the market those uniforms it has already provided to American's employees. Plaintiff Catan further seeks a declaration that the uniforms manufactured by Twin Hill for American's employees are unreasonably dangerous.

## COUNT V
### Equitable Relief Including Medical Monitoring
### (On Behalf of Plaintiffs and the Class)

102.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 77 above as if fully set forth herein.

103.    Plaintiffs and other Class Members have been, and continue to be, exposed to Twin

Hill's dangerous uniforms by virtue of their employment at American Airlines.

104.    Plaintiffs and other Class Members have experienced adverse medical symptoms from the exposure to Twin Hill's uniforms, including skin rashes, ear and throat irritation, headaches, fatigue, vertigo, the triggering of various auto-immune conditions, and adverse effects on endocrine as well as liver functions.

105.    Some of the adverse medical effects that Plaintiffs and the Class have suffered from the exposure to Twin's Hill's uniforms have latent effects, which may not become known until some later date.

106.    By failing to provide safe uniforms to American Airlines employees, and continuing to provide unsafe uniforms to American Airlines employees, Twin Hill is strictly liable and has also breached its duty of reasonable and ordinary care to the Plaintiffs and the Class. Twin Hill's conduct has exposed the Plaintiffs and the Class to on-going and future risks of harmful medical conditions.

107.    As a proximate result of Twin Hill's tortious conduct, Plaintiffs and the Class have experienced an increased risk of developing additional medical conditions, including skin rashes, ear and throat irritation, headaches, fatigue, vertigo, the triggering of various auto-immune conditions, and adverse effects on endocrine as well as liver functions.

108.    To remedy Twin Hill's tortious conduct, Twin Hill should establish and fund a medical monitoring fund in an amount that will assist in diagnosing the adverse health effects experienced by Plaintiffs and the Class. This medical monitoring fund is reasonably necessary to reduce the risk to the Plaintiffs and the Class of suffering long-term injuries, diseases and losses.

109.    By monitoring and testing Plaintiffs and the Class, the risk that Plaintiffs and the Class will suffer long-term injuries, diseases and losses without adequate treatment will be

significantly reduced.

110.   Plaintiffs and the Class seek an injunction creating a Court-supervised, Defendant-funded medical monitoring program that will facilitate the diagnosis of Plaintiffs and the Class for medical conditions resulting from their exposure to Defendant's unsafe uniforms. The medical monitoring fund remedy should include a trust fund to pay for the medical monitoring and diagnosis of Plaintiffs and the Class as frequently and appropriately as necessary.

111.   Plaintiffs and the Class have no adequate remedy at law in that monetary damages alone cannot compensate them for the risk of long-term physical and economic losses due to medical conditions resulting from their exposure to Twin Hill's uniforms. Without a Court-approved medical monitoring program as described above, or established by the Court, Plaintiffs and the Class will continue to face an unreasonable risk of injury and disability, and remain undiagnosed.

## VII.  JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## VIII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court enter an Order awarding the following relief:

(a)   Certifying this action as a class action; designating Plaintiffs as Representatives for the Class; and appointing the undersigned as Class Counsel;

(b)   Enjoining Defendant from continuing to sell the uniforms at issue and requiring Defendant to recall those uniforms previously provided to American Airlines employees;

- 24 -

(c)      Ordering Defendant to establish a medical monitoring program that includes (i) a trust fund, in an amount to be determined, to pay for the medical monitoring of all American Airlines employees who were exposed to Defendant's uniforms, (ii) notification to all such employees in writing that they may require medical monitoring necessary to diagnose long-term effects from Defendant's uniforms; and (iii) detailed analysis and disclosure of the chemicals to which the employees have been exposed so that treating physicians may be better informed to provide treatment;

(d)      Awarding Plaintiffs Zurbriggen and Catan their individual damages in an amount to be proven at trial;

(e)      Awarding attorneys' fees and costs to Plaintiffs and the Class; and

(f)      Such other and further relief as the Court deems just and proper.


Dated:  August 2, 2017                    Respectfully submitted,


By:   */s/ Todd L. McLawhorn*

Todd L. McLawhorn
*tmclawhorn@siprut.com*
Stewart M. Weltman
*sweltman@siprut.com*
Michael Chang
*mchang@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.754.9616

***Attorneys For Plaintiffs***