**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THOR ZURBRIGGEN, DENA CATAN, HALEY JOHNSON, LYNNETTE CHESTER, KIMBERLY JOHNSON, JOSEPH CATAN, BARBARA BELL, LAURA URQUHART, DOUG CRUMRINE, LUJUAN PRESTON, and TIMOTHY TERRY on behalf of themselves and on behalf of all others similarly situated, ) ) ) ) ) ) ) ) ) ) | |
| ) | Case No. 1:17-cv-05648 |
| Plaintiffs, ) | Hon. John J. Tharp, Jr. |
| v. ) | |
| ) | Magistrate Judge Jeffrey Cole |
| TWIN HILL ACQUISITION COMPANY, INC., a California corporation, and AMERICAN AIRLINES, INC., a Delaware corporation, ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Todd L. McLawhorn
*tmclawhorn@siprut.com*
Stewart M. Weltman
*sweltman@siprut.com*
Michael Chang
*mchang@siprut.com*
SIPRUT PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.754.9616
**www.siprut.com**


*Attorneys For Plaintiffs*

Plaintiffs Thor Zurbriggen, Dena Catan, Haley Johnson, Lynnette Chester, Kimberly Johnson, Joseph Catan, Barbara Bell, Laura Urquhart, Doug Crumrine, LuJuan Preston, and Timothy Terry (collectively referred to herein as the "Plaintiffs") bring this Class Action Complaint against Defendants Twin Hill Acquisition Company, Inc. ("Twin Hill") and American Airlines, Inc. ("American" or "American Airlines"), on behalf of themselves and on behalf of all others similarly situated, and complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## I.  <u>NATURE OF THE ACTION</u>

1.      This matter involves clear and present—as well as future—dangers posed to the health and well-being of thousands of employees of American Airlines, including thousands of flight attendants and pilots as well as others, such as service representatives. These dangers began on or before September 2016, continue to this day, and will continue to get worse over time.

2.      On or about September 2016, American Airlines implemented a change of uniforms for its worldwide workforce, including flight attendants, pilots, other cockpit crew members, and service representatives. Several years in development, these uniforms are manufactured by Defendant Twin Hill but were and are purchased and supplied to the American Airlines workforce by American Airlines.

3.      As more fully alleged below, these uniforms manufactured by Defendant Twin Hill pose an unreasonable risk of physical harm, including current and future serious health problems to those who wear them and to those who are near to or work in the close quarters of an airplane with those who are wearing the uniforms.

4.      Since the introduction of these uniforms into the American Airlines workforce, over

the last year, over 5,000 flight attendants, pilots and service representatives who have either worn or been near those who are wearing these uniforms, have experienced a cascade of health problems, including, but not limited to, skin rashes, ear and throat irritation, headaches, fatigue, vertigo, the triggering of various auto-immune conditions, and adverse effects on endocrine as well as liver functions.

5.    Furthermore, a process of sensitization commenced with the introduction of the uniforms in September 2016. Those who have had and continue to have reactions (numbering in the thousands), as well as those who may not yet have had reactions, through repeated exposure to the uniforms, what may have caused no reaction or a milder response early on, now produces stronger and stronger reactions that over time can cause severe reactions in the future. This is true even if the exposures are short term and at very low concentrations of the chemicals and combinations of these chemicals that are in the Twin Hill uniforms.

6.    Organizations such as the European Commission have stated that with regard to chemicals in textiles, "Persons who have exhibited an allergy to certain substances are advised to avoid exposure to these types of substances."  Yet, Defendants continue to allow these uniforms, which clearly are provoking allergic reactions in a substantial and ever growing portion of the American Airlines workforce.

7.    The full extent of the injuries caused by these unsafe and unreasonably dangerous uniforms cannot and will not be determined for years. Among other concerns, a sizeable percentage of American Airlines flight attendants are women of child-bearing age. Because of the particular cascade of symptoms described above caused by these uniforms, these women and any children they may bear are at risk for adverse health consequences. For example, there have been reports of effects on menstruation including irregular timing, heavier menstruation, and women past

menopause who have stopped menstruating commencing to menstruate again. Likewise, there have been reports of women losing their hair.

8.      As a result of the foregoing, at a minimum, medical monitoring of all American Airlines employees exposed to these uniforms is required in order to ensure that anyone affected (from those currently experiencing symptoms to those who may develop problems in the future) is provided with compensation for any and all medical examinations that might be required in the future to monitor their health.

9.      Plaintiffs each assert their own individual claims for personal injury damages, and seek injunctive and equitable relief (including a medical monitoring fund) on behalf of all American Airlines employees who have worn or been exposed to Twin Hill's uniforms since September 2016.

10.     Specifically, on behalf of the Class, Plaintiffs seek (a) injunctive relief to prevent the further provision of these uniforms to American Airlines employees, to provide for the recall or removal of those uniforms that are already being used from the workplace, and to provide for each aircraft and affected workplace to be cleansed, and (b) equitable relief in the form of medical monitoring for the purpose of detecting and/or diagnosing any conditions, symptoms, or injuries resulting from exposure to the uniforms as the result of Twin Hill's and American's actionable conduct.

## II.    JURISDICTION AND VENUE

11.     With respect to the class allegations, this Court has subject matter jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, the Plaintiffs' and the Class' equitable claims exceed $5,000,000 exclusive of interests and costs, and there are numerous class members who are citizens of states other than Defendants'

- 3 -

states of citizenship. This Court has specific jurisdiction over Defendants because Plaintiffs Thor Zurbriggen and Haley Johnson are residents and citizens of the State of Illinois, received and began wearing their uniforms in Illinois as well as suffering injury in Illinois. Defendants have supplied hundreds if not thousands of its uniforms to other Class members who are residents of Illinois and who also suffered injuries in this state. This Court also has supplemental jurisdiction over Plaintiffs' individual claims for damages and injunctive relief under 28 U.S.C. § 1367.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Plaintiffs Thor Zurbriggen and Haley Johnson reside in this district, received their new uniforms (manufactured by Defendant Twin Hill) in this district, were injured in this district and their work activities regularly begin and end in this district. For their part, Defendants distributed hundreds, if not thousands, of new uniforms to American Airlines employees in this district as American Airlines maintains one of its largest hubs here.

## III.     PARTIES

*Plaintiffs*

13.     Plaintiff Thor Zurbriggen ("Plaintiff Zurbriggen"), a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Zurbriggen is a citizen of the State of Illinois.

14.     Plaintiff Dena Catan ("Plaintiff Catan"), a flight attendant, is a resident and citizen of Connecticut and is currently domiciled in Southbury, Connecticut. For purposes of 28 U.S.C. § 1332, Plaintiff Catan is a citizen of the State of Connecticut.

15.     Plaintiff Haley Johnson ("Plaintiff Johnson"), a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Johnson is a citizen of the State of Illinois.

16.     Plaintiff Lynnette Chester ("Plaintiff Chester"), a flight attendant, is a resident and citizen of Indiana and is current domiciled in Valparaiso, Indiana. For purposes of 28 U.S.C. § 1332, Plaintiff Chester is a citizen of the State of Indiana.

17.     Plaintiff Kimberly Johnson ("Plaintiff Kimberly Johnson"), a flight attendant, is a resident and citizen of North Carolina and is currently domiciled in Davidson, North Carolina. For purposes of 28 U.S.C. § 1332, Plaintiff Kimberly Johnson is a citizen of the State of North Carolina.

18.     Plaintiff Joseph Catan ("Plaintiff Joseph Catan"), a pilot and captain, is a resident and citizen of Connecticut and is currently domiciled in Southbury, Connecticut. For purposes of 28 U.S.C. § 1332, Plaintiff Joseph Catan is a citizen of the State of Connecticut.

19.     Plaintiff Barbara Bell ("Plaintiff Bell"), a service representative, is a resident and citizen of Nevada and is currently domiciled in Las Vegas, Nevada. For purposes of 28 U.S.C. § 1332, Plaintiff Bell is a citizen of the State of Nevada.

20.     Plaintiff Laura Urquhart ("Plaintiff Urquhart"), a flight attendant, is a resident and citizen of Texas and is currently domiciled in Haslet, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff Urquhart is a citizen of the State of Texas.

21.     Plaintiff Doug Crumrine ("Plaintiff Crumrine"), a pilot, is a resident and citizen of Texas and is currently domiciled in Granbury, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff Crumrine is a citizen of the State of Texas.

22.     Plaintiff LuJuan Preston ("Plaintiff Preston"), a flight attendant, is a resident and citizen of North Carolina and is currently domiciled in Charlotte, North Carolina. For purposes of 28 U.S.C. § 1332, Plaintiff Preston is a citizen of the State of North Carolina.

23.     Plaintiff Timothy Terry ("Plaintiff Terry"), a pilot, is a resident and citizen of Iowa

and is currently domiciled in West Des Moines, Iowa. For purposes of 28 U.S.C. § 1332, Plaintiff Terry is a citizen of the State of Iowa.

24.     All Plaintiffs are employees of American Airlines.

*Defendants*

25.     Defendant American Airlines, Inc. ("American" or "American Airlines") is a Delaware corporation with its principle executive offices located in Fort Worth, Texas. American Airlines, Inc. is wholly owned by the American Airlines Group Inc. For the purposes of 28 U.S.C. § 1332, American Airlines is a citizen of Delaware and Texas.

26.     Defendant Twin Hill Acquisition Company, Inc. ("Twin Hill") is a California corporation with its corporate headquarters located in Texas. Twin Hill operates under the name Twin Hill and Twin Hill Corporate Apparel. Twin Hill is wholly owned by The Men's Wearhouse, Inc. For purposes of 28 U.S.C. § 1332, Twin Hill is a citizen of California and Texas.

## IV.     FACTUAL BACKGROUND

*Adverse Reactions to Twin Hill's Uniforms*

27.     The adverse reactions to Defendant Twin Hill's uniforms were swift and continuous, with reports coming in of adverse reactions within weeks if not days of their introduction into the American Airlines workforce.

28.     In fact, some 24 months prior to their introduction into the American Airlines workforce, it appears that Defendant Twin Hill's uniforms were pre-tested on actual American Airlines pilots. At that time, many pilots reported adverse physical reactions including rashes, flu-like symptoms, headaches, vomiting, and respiratory problems. When the adverse reactions came to light, the Allied Pilots Association ("APA") specifically requested that American not introduce the uniforms into the workplace. These requests were ignored by both American and Twin Hill.

29.     Moreover, a similar incident occurred when Twin Hill supplied uniforms to Alaska Airlines in 2011. Almost one-third of Alaska Airlines' flight attendants reported adverse health reactions similar to those experienced by American Airlines employees since the introduction of the Twin Hill uniforms. Alaska Airlines flight attendants continue to experience some of the adverse reactions to this date despite Alaska Airlines having transitioned to a different uniform vendor in 2014.

30.     The sheer volume of complaints that have been made concerning the new American Airlines uniforms, along with the timing of those complaints, is such that the only plausible explanation is that the uniforms are causing the problems at issue. These reactions can only have been caused by the introduction of the uniforms into the workforce. The introduction of these new uniforms is the single common event that happened to the entire workforce; only after this event did thousands of American Airlines employees begin reporting the above described adverse reactions.

31.     Moreover, the reported symptoms are consistent with some form of autoimmune reaction due to chemical toxicity caused by chemicals.

32.     Although both American and Twin Hill have maintained that the new uniforms are safe, they have not identified any other conditions that changed in September 2016 (besides the uniforms) that might provide an alternative explanation for the concurrent incidence of similar health problems experienced by thousands of American Airlines employees after the uniforms were introduced into the workforce.

33.     American and Twin Hill's subsequent conduct shows that they too know that the uniforms are unsafe and expose thousands of American Airlines employees to health hazards. For example, this was the first uniform change at American in some 30 years. American had spent

- 7 -

years in its planning, yet within two months, in November 2016, American announced that employees could choose to go back to wearing their previous blue uniforms instead of the new grey uniforms manufactured by Twin Hill. That American so quickly allowed the uniforms that its employees were wearing to become disjointed throughout its workforce, literally, is conduct evidencing an awareness that the uniforms posed health problems to its employees.

34.     Likewise, on or about June 21, 2017, American announced that it would be prematurely discontinuing its relationship with Twin Hill in 2020, cutting the contract short by seven years.  In its public announcement, American stated "it is clear we need a long-term solution because the current approach simply does not work. We now have team members in many different versions of the uniform and that is just not a sustainable path going forward."

35.     Nonetheless, American and Twin Hill appear to base their position that the new Twin Hill uniforms are not the cause of these adverse reactions upon the purported claim that the testing done to date fails to show that any one of the numerous chemicals used to treat Defendant Twin Hill's uniforms (chemicals which on their own can produce the above described health problems) are at a level high enough to cause health problems. But that position simply ignores that these chemicals can and do pose health risks due to the synergistic effects that these chemicals can cause. In short, measuring levels of chemicals present on a single chemical basis is insufficient and ignores the real health risks posed by the uniforms.

36.     No testing can serve to negate the real-world events that are taking place—thousands of similar adverse reactions have occurred and been reported after the uniforms were introduced into the American Airlines workforce. Those adverse reactions can only be explained by the fact that it is the uniforms that are causing these reactions.

***Twin Hill Provides New Uniforms to American Airlines***

37. In September 2016, Twin Hill began distributing new uniforms to over 60,000 American Airlines employees worldwide. Plaintiffs, sometime before or thereafter, all obtained their new Twin Hill uniforms.

38. Plaintiff Zurbriggen had adverse reactions while wearing the Twin Hill uniforms, and even though he stopped wearing the Twin Hill uniforms due to some or all of the adverse reactions, has continued to experience adverse reactions whenever near the Twin Hill uniforms.

39. Plaintiff Catan had adverse reactions while wearing the Twin Hill uniforms, and even though she stopped wearing the Twin Hill uniforms due to some or all of the adverse reactions, has continued to experience adverse reactions whenever near the Twin Hill uniforms.

40. Plaintiff Johnson had adverse reactions while wearing the Twin Hill uniforms, and even though she stopped wearing the Twin Hill uniforms due to some or all of the adverse reactions, has continued to experience adverse reactions whenever near the Twin Hill uniforms.

41. Plaintiff Chester had adverse reactions while wearing the Twin Hill uniforms, and even though she stopped wearing the Twin Hill uniforms due to some or all of the adverse reactions, has continued to experience adverse reactions whenever near the Twin Hill uniforms.

42. Plaintiff Kimberly Johnson had adverse reactions while wearing the Twin Hill uniforms, and even though she stopped wearing the Twin Hill uniforms due to some or all of the adverse reactions, has continued to experience adverse reactions whenever near the Twin Hill uniforms.

43. Plaintiff Joseph Catan had adverse reactions while wearing the Twin Hill uniforms, and even though he stopped wearing the Twin Hill uniforms due to some or all of the adverse reactions, has continued to experience adverse reactions whenever near the Twin Hill uniforms.

44. Plaintiff Bell had adverse reactions while wearing the Twin Hill uniforms, and even though she stopped wearing the Twin Hill uniforms due to some or all of the adverse reactions, has continued to experience adverse reactions whenever near the Twin Hill uniforms.

45. Plaintiff Urquhart had adverse reactions while wearing the Twin Hill uniforms, and even though she stopped wearing the Twin Hill uniforms due to some or all of the adverse reactions, has continued to experience adverse reactions whenever near the Twin Hill uniforms.

46. Plaintiff Crumrine had adverse reactions while wearing the Twin Hill uniforms, and even though he stopped wearing the Twin Hill uniforms due to some or all of the adverse reactions, has continued to experience adverse reactions whenever near the Twin Hill uniforms.

47. Plaintiff Preston had adverse reactions while wearing the Twin Hill uniforms, and even though she stopped wearing the Twin Hill uniforms due to some or all of the adverse reactions, has continued to experience adverse reactions whenever near the Twin Hill uniforms.

48. Plaintiff Terry had adverse reactions while wearing the Twin Hill uniforms, and even though he stopped wearing the Twin Hill uniforms due to some or all of the adverse reactions, has continued to experience adverse reactions whenever near the Twin Hill uniforms.

49. Plaintiffs, as well as thousands of other American Airlines employees, are caught in a nightmarish "Groundhog Day"—a never ending cycle of (a) going to work, (b) experiencing debilitating symptoms of headaches, fatigue, respiratory problems, vertigo and rashes as a result of working in and around persons who are wearing the new uniforms, (c) leaving work and starting to recuperate, (d) only to repeat this again when they return to work.

50. Plaintiffs' experiences are not unique. For example, a flight attendant who had been on disability came back to work approximately six months after the uniforms had been introduced and elected to not wear the new uniforms. Yet, that flight attendant is experiencing the same

cascade of symptoms as thousands of others.

51.     That is because Defendants have supplied and continue to supply thousands of other American Airlines employees who continue to wear these new uniforms while they all work in close quarters, including in planes with closed air systems that re-circulate the cabin air.

52.     These new uniforms are made of synthetic materials and so far have been found to contain at least the following chemicals: carbaryl, cadmium, captafol, chromium, chlordane, copper, formaldehyde, monochlorophenols, nickel, nonylphenol, nonylphenolethoxylates, pentachlorophenol, tetrachlorophenols, and trichlorophenols. Several of these substances are known carcinogens or possible carcinogens as well as being known to cause other health problems including auto-immune conditions such as those alleged above.

53.     Testing has shown that the levels of pentachlorophenol and tetrachlorophenol exceed the limits for clothing set by Oeko-Tex 100 standard in several of the most commonly worn clothing items including the suiting skirt.[1]

54.     But it is myopic to focus on any one chemical as the purported cause of any symptoms or particular symptoms, as two or more chemicals can combine and synergistically contribute to these reactions as several chemicals present in the uniforms are known auto-immune and allergic sensitizers. Similarly, it is an insufficient explanation to claim that some or all of the chemicals found in the uniforms may be in other items of clothing sold to the consuming public, and thus the uniforms must be safe because this (1) ignores that these uniforms and the 20 or so items that are offered have unique chemical make-ups different from other clothing, with even clothing made by Twin Hill coming from different factories; and (2) ignores that there may be a

---

[1] Oeko-Tex 100 is a private/independent testing certification service that attempts to set standards for allowable amounts of chemicals in clothing. The standards are only met by private consent and the standards have no legal effect.

chemical or chemicals present in these uniforms that have not yet been detected.

55.     One conclusion that is clear, however, is the new uniforms are causing these health problems. That is the only possible conclusion given that the thousands of American Airlines flight attendants and pilots began reporting serious adverse reactions only after the new uniforms were introduced.

56.     Shortly after the introduction of the new uniforms, thousands of complaints from flight attendants flooded into their unions, the Association of Flight Attendants ("AFA") and the Association of Professional Flight Attendants ("APFA"). The volume was so great that both the AFA and the APFA set up special task forces to address the problems created by the introduction of these uniforms into the American Airlines flight attendant work force.

57.     The number of adverse reactions reported has steadily increased over time. As of September 22, 2017, the APFA reported that it had received 4,002 uniform reaction reports from American Airlines flight attendants out of the approximately 18,000 flight attendants represented by the APFA. Of the approximately 3,000 flight attendants represented by the AFA, approximately 700 have filed adverse reaction reports.

58.     Similar reactions are being reported by American Airlines pilots and other cockpit crew members, including that their performance in the cockpit and thus the safety of passengers and crew members alike has been put at risk. As Plaintiff Joseph Catan, an American Airlines pilot and a Marine veteran who served in Iraq stated in a "town hall" meeting conducted by the American Airlines' President, "I do not have a safe environment in the cockpit."[2]

59.     On information and belief, certain American Airlines passengers (e.g., frequent

---

[2] Lewis Lazare, "An American Airlines pilot drops bombshell about Twin Hill uniforms," Chicago Business Journal, May 16, 2017, available at https://www.bizjournals.com/chicago/news/2017/05/16/an-american-airlines-pilot-drops-bombshell-about.html (last visited Aug. 1, 2017).

flyers, many of whom fly more often than flight attendants and pilots/crew members) have begun to report similar symptoms.

60.     There have also been reports of flight attendants contracting chemical pneumonia subsequent to the introduction of the new uniforms.

61.     As further detailed below, this action seeks individual damages for Plaintiffs as well as injunctive relief and a medical monitoring class fund to be established for the benefit of those currently affected or those who may be affected in the future, as there are indications that on-going exposure to these uniforms will likely have on-going additional deleterious effects over time that may only surface years afterwards.

62.     The adverse physical reactions to these uniforms were so swift and directly related to the introduction and use of these uniforms that on October 6, 2016, less than one month after their introduction "the Company (American Airlines) formally recognized today the health concerns raised by Flight Attendants who have reported experiencing adverse reactions and symptoms as a result of wearing the new uniform."

63.     As a result of these health concerns, American (1) established a call center to review individual "concerns"; (2) offered replacement garments of non-wool and/or non-synthetic fabrics or offered to allow flight attendants to "wear the prior uniform with call center approval"; and (3) agreed to perform "further random testing of garments" in order to determine what was causing flight attendants to experience rashes, skin irritation, headaches and other symptoms.

64.     By at least October 2016, if not earlier, both American and Twin Hill were aware of the serious problems caused by these uniforms. Yet, Defendants continue to deny that the uniforms are the cause of any adverse reactions despite there being no other reasonable conclusion but that the new uniforms are causing these adverse reactions and serious health problems for

- 13 -

American Airlines employees.

65.     The only explanation for such intentional and reckless conduct on Defendants' part is they have made corporate decisions to avoid confronting this serious problem in order to avoid any potential liability.

66.     But such a pennywise and pound foolish approach (1) subjects thousands of American Airlines employees to being battered  by the uniforms being near them as they go about their work and (2) subjects American Airlines passengers to unsafe conditions including not only exposing them to the hazards posed by being near these uniforms but by debilitating flight attendants whose primary responsibility is the safety of their passengers, and also creates unsafe conditions in the cockpit—where pilots are forced to gut through symptoms that impair their abilities to fly the aircraft.

67.     Further, each American Airlines employee being battered by these uniforms is also subjected to emotional distress as each time they go to work they know that they will be sickened by the uniforms.

68.     In short, this is a current and future public health crisis that needs to be addressed and corrected promptly.

### Uniform Testing

69.     Testing conducted on just some of the pieces of the uniforms has disclosed numerous auto-immune affecting chemicals. Detectable amounts of the following substances/chemicals were indicated to be in the uniforms: (1) Chlordane, (2) Pentachlorophenol (3) Tetrachlorophenols, (4) Trichlorophenols, and (5) free and partially releasable Formaldehyde.

70.     Chlordane is a pesticide/substance that was banned from use in the United States by the United States Environmental Protection Agency ("U.S. EPA") in 1988, as it is one of the

- 14 -

most potent carcinogens tested in animals—as no human testing could ethically be conducted—and its non-cancer health effects include migraines, respiratory problems, immune system problems, blurry vision, confusion, intractable seizures as well as permanent neurological damages, most of which are symptoms that American Airlines employees have experienced in large numbers since the introduction of the Twin Hill uniforms. There is also a possible link between chlordane and autism in children born to mothers exposed to this chemical.

71.     Pentachlorophenol, also known as PCP, was first produced in the 1930s as a pesticide and disinfectant. People may be exposed to PCP through the inhalation of contaminated air and dermal contact with products treated with the chemical. Short term exposure to large amounts of PCP can cause harmful effects on the liver, kidneys, blood, lungs, nervous system, immune system, and gastrointestinal tract. Contact with PCP, particularly in the form of vapor, can irritate the skin, eyes, and mouth. Long-term exposure to low levels such as those that occur in the workplace can cause damage to the liver, kidneys, blood and nervous system. PCP is also associated with carcinogenic, renal, and neurological effects. The U.S. EPA classifies PCP as a possible carcinogen. Single doses of PCP have half-lives in blood of 30-50 hours in humans. Wearing of the new uniforms over time can cause the release of this chemical into the cabin air where it can combine with other vapors caused by the other chemicals in the new uniforms.

72.     Tetrachlorophenol is an insecticide and a bactericide that is used as a preservative for latex, wood, and leather. Symptoms of exposure include irritations of the skin, eyes, nose and pharynx, and dermatitis with repeated skin contact.

73.     Trichlorophenol is used as fungicides, herbicides, insecticides, antiseptics, defoliants, and glue preservative. It too is listed as a possible human carcinogen. In animal models, consumption of 2, 4, 6-trichlorophenols leads to an increased incidence of lymphomas, leukemia,

- 15 -

and liver cancer.

74. Formaldehyde is known to be a human carcinogen. While it is widely used in industrial applications, including as a crease resistant in clothing, the chronic long term exposure by inhalation can cause a cascade of health issues from skin rashes and respiratory problems to cancer, as well as causing fatigue.

75. Testing conducted on the uniforms by the AFA, a union who has publicly stated that it will not rest until all of the Twin Hill uniforms are removed, showed that the lining in both skirts supplied to American Airlines employees failed a recognized fabric standard because of excess amounts of two wood preservative/fungicide chemicals.

76. It should also be noted that these uniforms were manufactured in third world countries where oversight in virtually nil, and include, Bangladesh (where the uniform pieces containing chlordane were made), Indonesia, China, Sri Lanka and Vietnam.

77. Many of the chemicals used in the uniforms are released from wear and being exposed to sweat. The problems get worse as the uniforms are worn more.

78. Evidence of abnormal enzyme activity in flight attendants has been observed in those who have had and continue to have adverse reactions to the uniforms where no such enzyme activity existed previously.

79. In November 2016, American implicitly if not expressly recognized the seriousness of this problem, reversing its purportedly long planned first company-wide uniform change in 30 years, and announced that it would allow affected employees to change uniforms, either to ones made by other uniform manufacturers or to go back to wearing their old blue uniforms.

80. In short, as of November 2016, American no longer had a consistent uniform being worn across its workforce—some were wearing the new grey Twin Hill uniforms, others were

wearing the old blue uniforms, and still others were wearing grey approximations of the Twin Hill uniforms made by other clothing manufacturers of each employee's choice.

81.     As a result, any interest that American may have had in maintaining any consistency of the clothing worn by its employees ceased to exist from that point forward.

82.     Even though those having adverse reactions were permitted to change out of the Twin Hill uniforms, many if not most of them continue to experience adverse reactions with increasing severity because they are in or near those wearing the new Twin Hill uniforms.

83.     This is further evidenced by the fact that after November 2016, thousands more American Airlines employees reported adverse reactions, and many of them had never worn the uniforms to begin with.

84.     It is estimated that at this time, approximately 25-30% of the American Airlines workforce are reactors, meaning that 70-75% are still able to and do wear the Twin Hill uniforms. But the number of new reactors is increasing every day.

85.     Twin Hill has admitted that it shipped over 1.4 million garments and accessories to more than 65,000 American Airlines employees worldwide. As of September 2017, approximately 4,500 flight attendants and over 600 pilots have filed adverse reaction reports with their unions. American has not revealed the number of adverse reaction reports or injured on duty reports filed with it.

86.     An APA spokesperson stated the obvious, that pilots experiencing these symptoms were unsafe and noted that numerous affected pilots had taken time off to recover from their reactions.

87.     On June 22, 2017, American announced in a letter to its employees that it was terminating its presumably long-term relationship with Twin Hill as of 2020.  The letter was signed

by American Airlines' Senior Vice Presidents Kerry Philopvitch, David Seymour, and Kurt Stache. In the letter, American admitted its knowledge of the current serious situation presented by the Twin Hill uniforms: "It is clear we need a long-term solution because the current approach simply does not work."

88.     The key admission in this letter is, of course, that the current approach was not working.  As noted above, that current approach was to permit employees who were reacting to change to a non-Twin Hill uniform. Thus, in this letter American admitted by its statements and its conduct that it knew that the Twin Hill uniforms had and would continue to cause harm to Plaintiffs and the Class.

89.     If there were, as American and Twin Hill claim, no harm caused by the Twin Hill uniforms and if all of the testing conducted on the uniforms demonstrated that they were safe, then there would have been no reason to reverse course—after only nine months—when this uniform change had been planned over three years—and then announce that a new uniform supplier would be sought out in three years' time.

90.     Unfortunately, even then, this is a non-solution and does not correct Defendants' tortious conduct, since for at least another three years and likely more, as American has announced that its search for new uniform suppliers will involve numerous requests for proposals from numerous uniform manufacturers.

91.     Meanwhile, apparently realizing the real dangers that these uniforms present in the cockpits, American has allowed its pilots to order uniforms from a high-end uniform manufacturer—Murphy & Hartelius ("M&H") —at American's expense.  As of this date, over 7,000 out of 15,000 American Airlines' pilots have requested out of the Twin Hill uniforms and ordered uniforms from M&H.

## V.   CLASS ACTION ALLEGATIONS

92.   Plaintiffs bring Count I through V, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and(b)(2) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All American Airlines current and former employees who were exposed to Twin Hill's uniforms on or after September 1, 2016 (the "Class").

Excluded from the Class are Defendants, their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

93.   Certification of Plaintiffs' claims for class-wide treatment is appropriate because all of the elements of Rule 23 (a) and (b)(2) are met here, as Plaintiffs can prove the elements of their and the class' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim, Defendants continue to act and refuse to discontinue actions which are harmful to the Class as a whole and Plaintiffs seek equitable relief against Defendants on behalf of themselves and the Class.

94.   **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all members of the Class is impracticable. To date, tens of thousands of American Airlines employees have worn, or been exposed to the unsafe uniforms and thousands have made complaints to their respective unions and American. The precise number of Class members and their addresses is presently unknown to Plaintiffs, but may be ascertained from the books and records of Twin Hill and American Airlines as well as the AFA, APFA and APA, as they maintain adverse reaction reports files for those who are currently

reported as reactors though it is anticipated that this number will increase over time as more people become sensitized to the uniforms. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

95.     **Commonality – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(2).** This action involves common questions of law and fact, including, without limitation:

(a)     Whether the uniforms supplied by Twin Hill and American to American Airlines' employees are unsafe and dangerous;

(b)     Whether and when Defendants knew that the uniforms it supplied to American Airlines' employees were unsafe and dangerous; and

(c)     Whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to, medical monitoring, injunctive or declaratory relief.

96.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class members because, among other things, all Class members are at risk for short and long-term injuries resulting from exposure to the Twin Hill uniforms.

97.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class members they seek to represent; they have retained counsel competent and experienced in complex and class action litigation; and Plaintiffs intend to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

98.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Both Twin Hill and American have acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive and declaratory relief, as described below.

## VI.    CLAIMS ALLEGED

### COUNT I
### Battery
### (On Behalf of All Plaintiffs individually and On Behalf
### of the Class Against Both American Airlines and Twin Hill)

99.    Plaintiffs individually as to their damages claims and on behalf of the Class with regard to their equitable claims for injunctive, declaratory and medical monitoring relief, incorporate paragraphs 1 through 98 as if fully set forth herein.

100.    Defendants American and Twin Hill's actions constitute an intentional and malicious battery committed by them against Plaintiffs and the Class members as each set forces in motion which ultimately resulted in unauthorized and unconsented contact with the Plaintiffs and the Class.

101.    In this regard, both Defendants intended and did cause Plaintiffs and the Class to come in contact with a substance (the uniforms) or substances (the chemicals in the uniforms) in a manner that was offensive, unauthorized and unconsented.

102.    Defendant Twin Hill manufactured and American distributed to its employees unsafe and dangerous uniforms which have and continue to cause unauthorized and unconsented contacts to Plaintiffs and the class.

103.    Defendants knew that these uniforms were unsafe and dangerous as early as when they received the results of the pre-launch testing of the uniforms on pilots and the fact that the APA specifically requested that they not introduce the uniforms into the workplace.

104.    As of November 2016 and to this date, both Defendants were fully aware that the uniforms were unsafe and dangerous, that they were inflicting and continue to inflict batteries upon Plaintiffs and the Class. Plaintiffs and the Class have suffered damages as a result of Defendants' conduct.

## COUNT II
### Intentional Infliction of Emotional Distress
### (On Behalf of All Plaintiffs individually and On Behalf of
### the Class Against Both American Airlines and Twin Hill)

105.    Plaintiffs individually as to their damages claims and on behalf of the Class with regard to their equitable claims for injunctive, declaratory and medical monitoring relief, incorporate paragraphs 1 through 98 as if fully set forth herein.

106.    Defendants' conduct as alleged herein has been both extreme and outrageous.

107.    Defendants have both caused a dangerous substance to be introduced and remain in or near the Plaintiffs and the Class.

108.    Plaintiffs, and thousands of other American Airlines employees, encounter severe emotional distress at work because they attend work knowing that (1) their symptoms will worsen with continued exposure to Twin Hill's uniforms and (2) that their employer, a company that many have worked for decades, and with full knowledge of the harms caused by these uniforms, was intentionally causing physical injury to them on a daily basis.

109.    Defendant American has knowingly put Plaintiffs and the Class in an outrageous and unconscionable position of either (a) missing work, losing income, and losing any benefits of seniority, or (b) attending work and getting sick each time they attend.

110.    And for new hires, all of whom are on a probationary status and all of whom are given new Twin Hill uniforms, it is even more outrageous, as these employees must quietly endure this physical torture or lose the new jobs that they only recently obtained.

111.    As for Twin Hill, it too is guilty of outrageous and extreme conduct in that it has knowingly caused dangerous uniforms to continue to be in or near American Airlines employees and continues to supply new uniforms to American Airlines employees.

112.    Such conduct has caused severe emotional distress and damages upon the Plaintiffs and the Class.

**COUNT III**
**Strict Liability**
**(On Behalf of All Plaintiffs individually and the Class Against Twin Hill Only)**

113.    Plaintiffs individually as to their damages claims and on behalf of the Class with respect to their equitable claims for injunctive, declaratory and medical monitoring relief incorporate paragraphs 1 through 98 as if fully set forth herein.

114.    The uniforms provided by Twin Hill to American Airlines employees were at the point of manufacture and continue to be unreasonably dangerous in that they are the only possible cause of the thousands of adverse reactions that occurred in the American Airlines workforce after the introduction of the Twin Hill uniforms. The uniforms have caused Plaintiffs and other Class members to experience adverse medical reactions, including the cascade of health issues alleged above.

115.    The uniforms contained latent defects causing the uniforms to provoke the adverse reactions described above when they left Defendant Twin Hill's control and were provided to Plaintiffs and other American Airlines employees.

116.    As a result of Twin Hill's actions, Plaintiffs suffered individual damages. Plaintiffs seek an individual award of compensatory damages, pain and suffering, and any other relief to which they are entitled under the law.

117.    Since at least the fall of 2016 when American's flight attendants began to report adverse medical effects from wearing Twin Hill's uniforms, and possibly earlier, Twin Hill was aware of the unsafe nature of its uniforms. This conduct demonstrates malice, evil motive, or the reckless disregard for the rights of others such that an award of punitive damages is appropriate.

118.    Because Plaintiffs continue to work for American Airlines, and continue to be

- 23 -

exposed to co-workers who are wearing Twin Hill's dangerous uniforms, Plaintiffs individually, and on behalf of the Class, seek to enjoin Twin Hill from selling any additional uniforms to American's employees and to require Twin Hill to recall from the market those uniforms it has already provided to American's employees. Plaintiffs further seek a declaration that the uniforms manufactured by Twin Hill for American's employees are unreasonably dangerous.

**COUNT IV**
**Negligence**
**(On Behalf of All Plaintiffs individually and the Class Against Twin Hill Only)**

119.   Plaintiffs individually as to their damages claims and on behalf of the Class with respect to their equitable claims for injunctive, declaratory and medical monitoring relief incorporate paragraphs 1 through 98 as if fully set forth herein.

120.   Twin Hill had a duty towards Plaintiffs and the Class to provide uniforms that were safe and would not cause them harm such as the cascade of adverse reactions set forth above.

121.   Twin Hill breached that duty by providing uniforms that were not safe and that caused Plaintiffs to suffer injuries and the threat of future injuries.

122.   As a result of Twin Hill's actions, Plaintiffs suffered individual damages.  Plaintiffs seek individual awards of compensatory damages, pain and suffering, and any other relief to which they are entitled under the law.

123.   Since at least the fall of 2016 when American's flight attendants began to report adverse medical effects from wearing Twin Hill's uniforms, and possibly earlier, Twin Hill was aware of the unsafe nature of its uniforms. This conduct demonstrates malice, evil motive, or the reckless disregard for the rights of others such that an award of punitive damages is appropriate.

124.   Because Plaintiffs continue to work for American Airlines, and continue to be exposed to co-workers who are wearing Twin Hill's dangerous uniforms, Plaintiffs individually,

and on behalf of the Class, seek to enjoin Twin Hill from selling any additional uniforms to American's employees and to require Twin Hill to recall from the market those uniforms it has already provided to American's employees. Plaintiffs further seek a declaration that the uniforms manufactured by Twin Hill for American's employees are unreasonably dangerous.

## COUNT V
### Equitable Relief Including Medical Monitoring
### (On Behalf of Plaintiffs and the Class
### Against Both American Airlines and Twin Hill)

125.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 98 above as if fully set forth herein.

126.    Plaintiffs and other Class Members have been, and continue to be, exposed to Twin Hill's dangerous uniforms by virtue of their employment at American Airlines.

127.     Plaintiffs and other Class Members have experienced adverse medical symptoms from the exposure to Twin Hill's uniforms, including skin rashes, ear and throat irritation, headaches, fatigue, vertigo, the triggering of various auto-immune conditions, and adverse effects on endocrine as well as liver functions.

128.    Some of the adverse medical effects that Plaintiffs and the Class have suffered from the exposure to Twin's Hill's uniforms have latent effects, which may not become known until some later date.

129.    By failing to provide safe uniforms to American Airlines employees, and continuing to provide unsafe uniforms to American Airlines employees, Twin Hill is strictly liable and has also breached its duty of reasonable and ordinary care to the Plaintiffs and the Class. Twin Hill's conduct has exposed the Plaintiffs and the Class to on-going and future risks of harmful medical conditions.

130.    By reason of its battery upon Plaintiffs and the Class, American has exposed the

Plaintiffs and the Class to on-going and future risks of harmful medical conditions.

131.    As a proximate result of Defendants tortious conduct, Plaintiffs and the Class have experienced an increased risk of developing additional medical conditions, including skin rashes, ear and throat irritation, headaches, fatigue, vertigo, the triggering of various auto-immune conditions, and adverse effects on endocrine as well as liver functions.

132.    To remedy Defendants tortious conduct, Defendants should establish and fund a medical monitoring fund in an amount that will assist in diagnosing the adverse health effects experienced by Plaintiffs and the Class. This medical monitoring fund is reasonably necessary to reduce the risk to the Plaintiffs and the Class of suffering long-term injuries, diseases and losses.

133.    By monitoring and testing Plaintiffs and the Class, the risk that Plaintiffs and the Class will suffer long-term injuries, diseases and losses without adequate treatment will be significantly reduced.

134.    Plaintiffs and the Class seek an injunction creating a Court-supervised, Defendant-funded medical monitoring program that will facilitate the diagnosis of Plaintiffs and the Class for medical conditions resulting from their exposure to Twin Hill's unsafe uniforms. The medical monitoring fund remedy should include a trust fund to pay for the medical monitoring and diagnosis of Plaintiffs and the Class as frequently and appropriately as necessary.

135.    Plaintiffs and the Class have no adequate remedy at law in that monetary damages alone cannot compensate them for the risk of long-term physical and economic losses due to medical conditions resulting from their exposure to Twin Hill's uniforms. Without a Court-approved medical monitoring program as described above, or established by the Court, Plaintiffs and the Class will continue to face an unreasonable risk of injury and disability, and remain undiagnosed.

## VII.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court enter an Order awarding the following relief:

(a)   Certifying this action as a class action; designating Plaintiffs as Representatives for the Class; and appointing the undersigned as Class Counsel;

(b)   Preliminarily and permanently enjoining Defendants from continuing to commit battery and intentional infliction of emotional distress upon Plaintiffs and the Class and enjoining Twin Hill from continuing to sell the uniforms at issue and requiring Twin Hill to recall those uniforms previously provided to American Airlines employees;

(c)   Ordering Defendants to establish a medical monitoring program that includes (i) a trust fund, in an amount to be determined, to pay for the medical monitoring of all American Airlines employees who were exposed to the Twin Hill uniforms, (ii) notification to all such employees in writing that they may require medical monitoring necessary to diagnose long-term effects from the Twin Hill uniforms; and (iii) detailed analysis and disclosure of the chemicals to which the employees have been exposed so that treating physicians may be better informed to provide treatment;

(d)   Awarding Plaintiffs their individual damages in an amount to be proven at trial;

(e)   Awarding attorneys' fees and costs to Plaintiffs and the Class; and

(f)   Such other and further relief as the Court deems just and proper.

Dated:  September 28, 2017                  Respectfully submitted,

By:    */s/ Todd L. McLawhorn*

Todd L. McLawhorn
*tmclawhorn@siprut.com*
Stewart M. Weltman
*sweltman@siprut.com*
Michael Chang
*mchang@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.754.9616

*Attorneys For Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that the foregoing **Plaintiffs' First Amended Class Action Complaint** was filed electronically with the Clerk of the Court using the CM/ECF system on this 28th day of September, 2017, and served electronically on all counsel of record.

*/s/ Todd L. McLawhorn*