**CONFIDENTIAL AND FILED UNDER SEAL**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THOR ZURBRIGGEN, DENA CATAN, HALEY JOHNSON, LYNNETTE CHESTER, KIMBERLY JOHNSON, JOSEPH CATAN, BARBARA BELL, DOUG CRUMRINE, LAJUAN PRESTON, TIMOTHY TERRY, JULIETTE ONODY, CONSTANCE GERMOND MCCORD, TIMOTHY R. AKERS, JULIE BURKE, PATRICIA BEHNKE, EDWARD J. BURKE, STEPHEN WEIGEL, DORA A. BROWN BRANCH, SOAD HAMDAN, VICKIE ISAAC, DEMETRIA ANDERSON, KEITH MAGINN, JUDITH J. DRAKE, DESIREE WEBBER-VAN BOXTEL, CHRISTINA NYAKAS, CHRISTINA H. ENDICOTT, SHERYL KELLY, SCOTT J. AUSTIN, MIN LI, CARLA J. PATTERSON, BOBBI GORDON, CARRIE BEAN, LISA JOY, KATHY L. RUNKLE, VERONICA VERA, JULIE F. KRESKO, SANDRA STUART, DEANNA JONES, and DEBORAH A. BRASIER on behalf of themselves and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:17-cv-05648<br><br>Hon. John J. Tharp, Jr.<br><br>Magistrate Judge Jeffrey Cole<br><br>**JURY TRIAL DEMANDED** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| TWIN HILL ACQUISITION COMPANY, INC., a California corporation, AMERICAN AIRLINES GROUP INC., a Delaware corporation, AMERICAN AIRLINES, INC., a Delaware corporation, PSA AIRLINES, INC., a Pennsylvania corporation, ENVOY AIR INC., a Delaware corporation, and AMERICAN AIRLINES, INC., a Delaware corporation, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## TABLE OF CONTENTS

I.      **Nature of Action** ..................................................................................................1

II.     **Jurisdiction and Venue** ......................................................................................8

III.    **Parties** .................................................................................................................9

      Plaintiffs ...........................................................................................................9

      Defendants ......................................................................................................15

IV.     **Background Facts** .............................................................................................17

      American Selects Twin Hill ...........................................................................17

      American Ignores Its Unions and Attempts to Conceal the Problem ...................18

      American's Management Was Fully Involved ....................................................20

      Oeko-Tex Certifications..................................................................................21

      The First Wear Test .......................................................................................23

      Intertek Testing April 1, 2015 Report.............................................................27

      Second Wear Test ..........................................................................................30

      Intertek Testing April 5, 2016 Report.............................................................33

      August 2016 Final Rollout Preparations.........................................................39

      American Unleashes the Twin Hill Uniforms on an Unsuspecting Workforce.....42

      November 28, 2016 Intertek Testing Report  .......................................................58

      American Denies All Workers' Compensation Claims .....................................59

      American's Knowledge of Proximity Reactions ...............................................60

      American Considers Patch Testing ..................................................................65

      American Seeks To Silence All Critics ...........................................................66

      American Considers Alternative

      Uniforms While Ignoring Proximity Reactors..................................................69

      The Complaints Continue to Grow ..................................................................71

      Harvard School of Public Health Study ..........................................................79

      American Intentionally Harmed and
      Continues to Harm Plaintiffs and the Proximity Reactor Class .........................79

      The January 2018 NIOSH Report ...................................................................106

V.      **Class Allegations** ...........................................................................................112

VI.    **Claims Alleged**.................................................................................................115

        Battery .....................................................................................................115

        Intentional Inflection of Emotional Distress ........................................116

        Strict Liability .........................................................................................117

        Negligence ...............................................................................................119

        Equitable Relief Including Medical Monitoring....................................120

        Fraud ........................................................................................................122

VII.   **Jury Demand**..........................................................................................123

VIII.  **Request for Relief**.................................................................................123

### PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Thor Zurbriggen, Dena Catan, Haley Johnson, Lynnette Chester, Kimberly Johnson, Joseph Catan, Barbara Bell, Doug Crumrine, LaJuan Preston, Timothy Terry, Juliette Onody, Constance Germond McCord, Timothy R. Akers, Julie Burke, Patricia Behnke, Edward J. Burke, Stephen Weigel, Dora A. Brown Branch, Soad Hamdan, Vickie Isaac, Demetria Anderson, Keith Maginn, Judith J. Drake, Desiree Webber-van Boxtel, Christina Nyakas, Christina H. Endicott, Sheryl Kelly, Scott J. Austin, Min Li, Carla J. Patterson, Bobbi Gordon, Carrie Bean, Lisa Joy, Kathy L. Runkle, Veronica Vera, Julie F. Kresko, Sandra Stuart, Deanna Jones, and Deborah A. Brasier (collectively "Plaintiffs") bring this Second Amended Class Action Complaint against Defendants Twin Hill Acquisition Company, Inc. ("Twin Hill") and American Airlines Group Inc., American Airlines, Inc., PSA Airlines, Inc., and Envoy Air Inc. (collectively referred to herein as "American" or "American Airlines"), on behalf of themselves and on behalf of all others similarly situated, complain and allege upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### I.   NATURE OF THE ACTION

1.      This matter involves clear and present—as well as future—dangers posed to the health and well-being of *thousands* of employees of American Airlines, including flight attendants, pilots, and customer service representatives.

2.      The facts, from Plaintiffs' original investigation, now confirmed and supplemented by the beginning of Defendants' initial production of documents pursuant to this District's Mandatory Initial Discovery Pilot ("MIDP"), portray a far worse picture than was known to the public, to American employees who have been and continue to be exposed to Twin Hill uniforms

and what was known at the time of the filing. American has known all along that the Twin Hill uniforms would cause harm to its employees but, rather than correct the problem, American continues to falsely tell its employees that the uniforms have been proven safe. American has provided **zero** evidence to Plaintiffs to support that claim. To the contrary, the documents American produced pursuant to the MIDP ███████████.

3.      The Twin Hill uniforms were officially rolled out on September 19, 2016. Long before that time, starting in 2014 and continuing through today, American management knew that rolling out the Twin Hill uniforms would cause injury to thousands of its employees. American knew the uniforms were unsafe, based on, among other things:

a.      two separate wear tests—(i) one in or about 2014-2015 (which was referenced in the original complaint) and (ii) a much larger one in early 2016 (with over 500 wear testers)—both of which clearly demonstrated that the uniforms were causing injuries to a large swath of the wear testers with injuries similar to those which happened in connection with the Alaska Airlines/Twin Hill incident and which were similar to the symptoms that thousands began reporting both before (when they received their uniforms prior to the rollout in the summer of 2016) and after the September 2016 rollout;

b.      chemical testing American had conducted by Intertek, which literally found the uniforms contained (i) "unknown chemicals" but which Intertek noted likely included potentially dangerous volatile organic compounds, (ii) eight sensitizers that were found in the Twin Hill uniforms but which were not found in other "control"

garments—sensitizers which Intertek told American would cause injuries consistent with what had happened during the wear tests and in connection with the rollout, (iii) other potential carcinogens, including cadmium, pentachlorophenol, tetrachlorophenol, and formaldehyde, and (iv) most importantly, *never stated the uniforms or fabrics were safe*;

    c.    the pleas by the pilot and flight attendant unions not to use or roll out the Twin Hill uniforms due to the safety issues that were clearly established during the wear tests; and

    d.    what was described by the management head of the uniform rollout as a "deluge" ████████████████████████████████

████████████████████████████████████████████████

████████████████████████ as they received their uniforms in advance of the general rollout.

4.    Following the September 2016 rollout, that steady stream of reports of injured employees from the Twin Hill uniforms turned into a river, ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████.[1]

---

[1] American produced documents to Plaintiffs with the numbering scheme "AA-ZUR-00000000". For brevity, Plaintiffs cite those documents as "AA" and omit the leading zeros, thus "AA-ZUR-00009477" is cited as "AA9477". These documents are not being filed now because American designated most of these documents as confidential. Plaintiffs intend to renew their prior motion to de-designate these documents as confidential (Dkt. Nos. 70-71, which was denied without prejudice), and will seek leave to file a supplemental pleading with the cited documents attached as exhibits in the event that motion is successful. In the interim, many of the documents cited herein are contained in the sealed entry of Dkt. No. 70.

5.      The Twin Hill uniforms pose potential long-term health risks to all that are and have been exposed to them, regardless of whether they display the adverse health symptoms that thousands of American employees have and continue to experience or whether through good fortune have yet to manifest symptoms. In this manner, American is intentionally and with substantial certainty harming every employee—no matter whether they have reported adverse health consequences yet.  And American clearly knows the name of each employee who has been and is currently being exposed to these toxic uniforms.

6.      As described below, American currently knows the identity of the Plaintiffs here as well as ██████████████████████████ that they have been and are currently being injured on a daily basis by just being near those wearing the Twin Hill uniforms. With this sort of suffering happening on a daily basis, American's continued false claims that the Twin Hill uniforms are safe while it knows the suffering it is causing is not only inexplicable but shocks the conscience.

7.      This is a public health crisis that requires immediate action. It cannot wait several years for American to correct just because it claims it may introduce new flight attendant uniforms or that at some point in time all pilots too will have replacement uniforms.

8.      This matter also involves a concerted effort—at the highest levels of American's corporate organization—to fraudulently cover up the dangers posed by these uniforms. From the first wear test in 2015 to this day, American has falsely portrayed the Twin Hill uniforms to its entire workforce as having been proven safe. But the facts that American knew prior to the rollout as well as after the rollout, including testing performed on its behalf, show that American knew that its claims about the safety of the uniforms were patently false—and remain so.

9.      For example, American claimed and still maintains that the fabrics used by Twin

Hill were Oeko-Tex certified—Oeko-Tex being a private certification entity. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

10.     American's upper level management tasked with overseeing the uniform rollout put themselves under artificial time pressures. When American discovered that the Twin Hill uniforms were provoking adverse reactions, nearly a year and a half *prior* to the September 2016 rollout— rather than act responsibly and protect its employees—American chose to dismiss these problems at each of the numerous critical junctures when it should have halted this process in its tracks.

11.     American and its upper level managers knew, well before the rollout, based upon the, albeit incomplete, uniform chemical testing conducted by Intertek and pre-wear testing that had been conducted, that a sizeable percentage of American employees were going to experience serious adverse health effects from the Twin Hill uniforms and that it was exposing its entire workforce to potential, but yet to surface, future health issues because of their exposure to these toxic uniforms. Those employees would be working together in close quarters, including in planes with closed air systems that re-circulate the cabin air, when it was and is clear that the toxic uniforms are off-gassing something(s).

12.     Indeed, American's two largest unions, the pilots union ("APA") and the mainline flight attendant union ("APFA"), urged American to use a different vendor, and not to move forward with the Twin Hill rollout, as reports of wear testers having adverse reactions to the uniforms kept rolling in. American dismissed those pleas.

13.     American's upper level management, in the face of this clear evidence of danger to its entire workforce, continued and continues to pretend the uniforms are safe, and to portray

anyone who dared to complain as an isolated incident, overly sensitive, or a malingerer.

14.    The sheer volume of complaints unraveled American's strategy. ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████

15.    ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

16.    Despite the literally thousands of complaints made by its employees about the uniforms, the numerous personal entreaties made to various American managers by employees seriously harmed by the uniforms, and this lawsuit, American has taken only minimal steps in response to this crisis. American has terminated its long-term uniform contract with Twin Hill, and has announced it will replace the Twin Hill uniforms—in a few years or so—when it took close to four years to rollout the cheaply made Twin Hill uniforms. In the meantime, while American has permitted those who choose to wear alternative uniforms (their old blues or off-the-rack replacements as well as some made by another uniform manufacturer chosen by American, *i.e.*, Aramark), the majority continue to wear the Twin Hill uniforms, based on American's repeated but false assurances that the uniforms are safe.

17. The result is that additional complaints continue as those who still wear the Twin Hill uniforms develop reactions to the uniforms, and those who are proximity reactors continue to suffer while they work around the Twin Hill uniforms.

18. To make matters worse, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

19. Hundreds, if not thousands, of American employees who are proximity reactors have told American that they are continuing to have reactions to the Twin Hill uniforms when they are working with co-workers who are wearing the Twin Hill uniforms. American knows specifically who these employees are by name, including, as alleged below, Plaintiffs in this action—because Plaintiffs and other employees told American they were being harmed just by being in proximity to those wearing the Twin Hill uniforms.

20. American has taken no steps to stop harming these people, either by removing the Twin Hill uniforms from the workplace or by granting them unlimited sick leave with full benefits until it correct the harms that it has and still is causing. Instead it requires these employees to work in a dangerous environment that it created.

21. The story of Captain Joseph Catan, summarized below and set forth in greater detail *infra* ¶¶ 348-66, is instructive. After over a year of reporting his proximity reactions to American, American has ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

22.     Plaintiffs, who are from seventeen states, seek, on an individual or class-wide basis:

(1) injunctive relief to (a) prevent the further provision of the Twin Hill uniforms to American

Airlines employees, (b) to provide for the recall of these toxic uniforms and the removal of these

uniforms from the workplace, (c) to provide for each aircraft and affected workplace to be

cleansed, or (d) in the alternative requiring American to provide currently suffering employees

who are proximity reactors, including Plaintiffs and others that it knows by name, sick leave with

full benefits until the problem is cleared up as recommended by NIOSH; and (2) equitable relief

in the form of medical monitoring for the purpose of detecting or diagnosing any conditions,

symptoms, or injuries resulting from the exposure to the uniforms.

23.     Plaintiffs also assert, on an individual basis, claims for personal injury damages that

they have suffered as the result of Twin Hill's and American's conduct.

## II.     JURISDICTION AND VENUE

24.     With respect to the class allegations, this Court has subject matter jurisdiction over

the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1332(d)(2). In the

aggregate, the Plaintiffs' and the Class' equitable claims exceed $5,000,000 exclusive of interests

and costs, and there are numerous class members who are citizens of states other than Defendants'

states of citizenship. This Court has specific jurisdiction over Defendants because Plaintiffs Thor

Zurbriggen, Haley Johnson, Juliette Onody, Julie Burke, Patricia Behnke, Stephen Weigel, Soad

Hamdan, Judith J. Drake, Desiree Webber-van Boxtel, and Sandra Stuart are residents and citizens

of the State of Illinois, received and began wearing their uniforms in Illinois, and suffered injury in Illinois. Defendants have supplied hundreds if not thousands of its uniforms to other Class members who are residents of Illinois and who also suffered injuries in this state. This Court also has supplemental jurisdiction over Plaintiffs' individual claims for damages (to the extent that for certain claims there is no diversity jurisdiction) and injunctive relief under 28 U.S.C. § 1367.

25. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). Plaintiffs Thor Zurbriggen, Haley Johnson, Juliette Onody, Julie Burke, Patricia Behnke, Stephen Weigel, Soad Hamdan, Judith J. Drake, Desiree Webber-van Boxtel, and Sandra Stuart reside in this district, received their new uniforms (manufactured by Defendant Twin Hill) in this district, were injured in this district and their work activities regularly begin and end in this district. For their part, Defendants distributed hundreds, if not thousands, of new uniforms to American Airlines employees in this district as American Airlines maintains one of its largest hubs here.

## III.    PARTIES

*Plaintiffs*

26. Plaintiff Thor Zurbriggen ("Plaintiff Zurbriggen"), a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Zurbriggen is a citizen of Illinois. Plaintiff Zurbriggen is an employee of American Airlines, Inc.

27. Plaintiff Dena Catan ("Plaintiff Dena Catan"), a flight attendant, is a resident and citizen of Connecticut and is currently domiciled in Southbury, Connecticut. For purposes of 28 U.S.C. § 1332, Plaintiff Dena Catan is a citizen of Connecticut. Plaintiff Dena Catan is an employee of American Airlines, Inc.

28. Plaintiff Haley Johnson ("Plaintiff Haley Johnson"), a flight attendant, is a resident

and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Haley Johnson is a citizen of Illinois. Plaintiff Haley Johnson is an employee of American Airlines, Inc.

29.     Plaintiff Lynnette Chester ("Plaintiff Chester"), a flight attendant, is a resident and citizen of Indiana and is current domiciled in Valparaiso, Indiana. For purposes of 28 U.S.C. § 1332, Plaintiff Chester is a citizen of Indiana. Plaintiff Chester is an employee of American Airlines, Inc.

30.     Plaintiff Kimberly Johnson ("Plaintiff Kimberly Johnson"), a flight attendant, is a resident and citizen of North Carolina and is currently domiciled in Davidson, North Carolina. For purposes of 28 U.S.C. § 1332, Plaintiff Kimberly Johnson is a citizen of North Carolina. Plaintiff Kimberly Johnson is an employee of American Airlines, Inc.

31.     Plaintiff Joseph Catan ("Plaintiff Joseph Catan"), a pilot and captain, is a resident and citizen of Connecticut and is currently domiciled in Southbury, Connecticut. For purposes of 28 U.S.C. § 1332, Plaintiff Joseph Catan is a citizen of Connecticut. Plaintiff Joseph Catan is an employee of American Airlines, Inc.

32.     Plaintiff Barbara Bell ("Plaintiff Bell"), a service representative, is a resident and citizen of Nevada and is currently domiciled in Las Vegas, Nevada. For purposes of 28 U.S.C. § 1332, Plaintiff Bell is a citizen of Nevada. Plaintiff Bell is an employee of American Airlines, Inc.

33.     Plaintiff Doug Crumrine ("Plaintiff Crumrine"), a pilot, is a resident and citizen of Texas and is currently domiciled in Granbury, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff Crumrine is a citizen of Texas. Plaintiff Crumrine is an employee of American Airlines, Inc.

34.     Plaintiff LaJuan Preston ("Plaintiff Preston"), a flight attendant, is a resident and citizen of North Carolina and is currently domiciled in Charlotte, North Carolina. For purposes of

28 U.S.C. § 1332, Plaintiff Preston is a citizen of North Carolina. Plaintiff Preston is an employee of American Airlines, Inc.

35. Plaintiff Timothy Terry ("Plaintiff Terry"), a pilot, is a resident and citizen of Iowa and is currently domiciled in West Des Moines, Iowa. For purposes of 28 U.S.C. § 1332, Plaintiff Terry is a citizen of Iowa. Plaintiff Terry is an employee of American Airlines, Inc.

36. Plaintiff Juliette Onody ("Plaintiff Onody"), a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Onody is a citizen of Illinois. Plaintiff Onody is an employee of American Airlines, Inc.

37. Plaintiff Connie Germond McCord ("Plaintiff McCord"), a flight attendant, is a resident and citizen of North Carolina and is currently domiciled in West End, North Carolina. For purposes of 28 U.S.C. § 1332, Plaintiff McCord is a citizen of North Carolina. Plaintiff McCord is an employee of American Airlines, Inc.

38. Plaintiff Timothy R. Akers ("Plaintiff Akers"), a pilot, is a resident and citizen of Florida and is currently domiciled in Ft. Lauderdale, Florida. For purposes of 28 U.S.C. § 1332, Plaintiff Akers is a citizen of Florida. Plaintiff Akers is an employee of American Airlines, Inc.

39. Plaintiff Julie Burke ("Plaintiff Julie Burke"), a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Naperville, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Julie Burke is a citizen of Illinois. Plaintiff Julie Burke is an employee of American Airlines, Inc.

40. Plaintiff Patricia Behnke ("Plaintiff Behnke"), a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Carol Stream, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Behnke is a citizen of Illinois. Plaintiff Behnke is an employee of American Airlines, Inc.

41.    Plaintiff Edward J. Burke ("Plaintiff Edward Burke"), a pilot, is a resident and citizen of Pennsylvania and is currently domiciled in Macungie, Pennsylvania. For purposes of 28 U.S.C. § 1332, Plaintiff Edward Burke is a citizen of Pennsylvania. Plaintiff Edward Burke is an employee of American Airlines, Inc.

42.    Plaintiff Stephen Weigel ("Plaintiff Weigel"), a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Weigel is a citizen of Illinois. Plaintiff Weigel is an employee of American Airlines, Inc.

43.    Plaintiff Dora Ann Brown Branch ("Plaintiff Branch"), a flight attendant, is a resident and citizen of Georgia and is currently domiciled in Atlanta, Georgia. For purposes of 28 U.S.C. § 1332, Plaintiff Branch is a citizen of Georgia. Plaintiff Branch is an employee of American Airlines, Inc.

44.    Plaintiff Soad Hamdan ("Plaintiff Hamdan"), a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Hamdan is a citizen of Illinois. Plaintiff Hamdan is an employee of American Airlines, Inc.

45.    Plaintiff Vickie Isaac ("Plaintiff Isaac"), a flight attendant, is a resident and citizen of Utah and is currently domiciled in Logan, Utah. For purposes of 28 U.S.C. § 1332, Plaintiff Isaac is a citizen of Utah. Plaintiff Isaac is an employee of American Airlines, Inc.

46.    Plaintiff Demetria Anderson ("Plaintiff Anderson"), a flight attendant, is a resident and citizen of Tennessee and is currently domiciled in Cordova, Tennessee. For purpose of 28 U.S.C. § 1332, Plaintiff Anderson is a citizen of Tennessee. Plaintiff Anderson is an employee of Envoy Air Inc.

47.    Plaintiff Keith Maginn ("Plaintiff Maginn"), a flight attendant, is a resident and

- 12 -

citizen of Ohio and is currently domiciled in Cincinnati, Ohio. For purposes of 28 U.S.C. § 1332, Plaintiff Maginn is a citizen of Ohio. Plaintiff Maginn is an employee of PSA Airlines, Inc.

48.     Plaintiff Judith J. Drake ("Plaintiff Drake"), a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Drake is a citizen of Illinois. Plaintiff Drake is an employee of American Airlines, Inc.

49.     Plaintiff Desiree Webber-van Boxtel ("Plaintiff Boxtel"), a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Downers Grove, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Boxtel is a citizen of the State of Illinois. Plaintiff Boxtel was an employee of American Airlines, Inc. and has recently retired.

50.     Plaintiff Christina Nyakas ("Plaintiff Nyakas"), a flight attendant, is a resident and citizen of Florida and is currently domiciled in Pompano Beach, Florida. For purposes of 28 U.S.C. § 1332, Plaintiff Nyakas is a citizen of Florida. Plaintiff Nyakas is an employee of American Airlines, Inc.

51.     Plaintiff Christina H. Endicott ("Plaintiff Endicott"), a flight attendant, is a resident and citizen of Rhode Island and is currently domiciled in East Greenwich, Rhode Island. For purposes of 28 U.S.C. § 1332, Plaintiff Endicott is a citizen of Rhode Island. Plaintiff Endicott is an employee of American Airlines, Inc.

52.     Plaintiff Sheryl Kelly ("Plaintiff Kelly"), a flight attendant, is a resident and citizen of Massachusetts and is currently domiciled in Plymouth, Massachusetts. For purposes of 28 U.S.C. § 1332, Plaintiff Kelly is a citizen of Massachusetts. Plaintiff Kelly is an employee of American Airlines, Inc.

53.     Plaintiff Scott J. Austin ("Plaintiff Austin"), a pilot, is a resident and citizen of Massachusetts and is currently domiciled in Brimfield, Massachusetts. For purposes of 28 U.S.C.

§ 1332, Plaintiff Austin is a citizen of Massachusetts. Plaintiff Austin is an employee of American Airlines, Inc.

54.     Plaintiff Min Li ("Plaintiff Li"), a flight attendant, is a resident and citizen of Florida and is currently domiciled in Boca Raton, Florida. For purposes of 28 U.S.C. § 1332, Plaintiff Li is a citizen of Florida. Plaintiff Li is an employee of American Airlines, Inc.

55.     Plaintiff Carla J. Patterson ("Plaintiff Patterson"), a flight attendant, is a resident and citizen of Ohio and is currently domiciled in West Chester, Ohio. For purposes of 28 U.S.C. § 1332, Plaintiff Patterson is a citizen of Ohio. Plaintiff Patterson is an employee of American Airlines, Inc.

56.     Plaintiff Bobbi Gordon ("Plaintiff Gordon"), a flight attendant, is a resident and citizen of Colorado and is currently domiciled in Calhan, Colorado. For purposes of 28 U.S.C. § 1332, Plaintiff Gordon is a citizen of Colorado. Plaintiff Gordon is an employee of American Airlines, Inc.

57.     Plaintiff Carrie Bean ("Plaintiff Bean"), a pilot, is a resident and citizen of North Carolina and is currently domiciled in Jacksonville, North Carolina. For purposes of 28 U.S.C. § 1332, Plaintiff Bean is a citizen of North Carolina. Plaintiff Bean is an employee of American Airlines, Inc.

58.     Plaintiff Lisa Joy ("Plaintiff Joy"), a flight attendant, is a resident and citizen of North Carolina and is currently domiciled in Holly Springs, North Carolina. For purposes of 28 U.S.C. § 1332, Plaintiff Joy is a citizen of North Carolina. Plaintiff Joy is an employee of American Airlines, Inc.

59.     Kathy L. Runkle ("Plaintiff Runkle"), a flight attendant, is a resident and citizen of Pennsylvania and is currently domiciled in Stewartstown, Pennsylvania. For purposes of 28 U.S.C.

§ 1332, Plaintiff Runkle is a citizen of Pennsylvania. Plaintiff Runkle is an employee of American Airlines, Inc.

60.     Veronica Vera ("Plaintiff Vera"), a flight attendant, is a resident and citizen of Texas and is currently domiciled in Irving, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff Vera is a citizen of Texas. Plaintiff Vera is an employee of American Airlines, Inc.

61.     Julie F. Kresko ("Plaintiff Kresko"), a pilot, is a resident and citizen of Colorado and is currently domiciled in Edwards, Colorado. For purposes of 28 U.S.C. § 1332, Plaintiff Kresko is a citizen of Colorado. Plaintiff Kresko is an employee of American Airlines, Inc.

62.     Sandra Stuart ("Plaintiff Stuart"), a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Elmwood Park, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff Stuart is a citizen of Illinois. Plaintiff Stuart is an employee of American Airlines, Inc.

63.     Deanna Jones ("Plaintiff Jones"), was a flight attendant, is a resident and citizen of Massachusetts and is currently domiciled in Medford, Massachusetts. For purposes of 28 U.S.C. § 1332, Plaintiff Jones is a citizen of Massachusetts. Plaintiff Jones was an employee of American Airlines. She was terminated from her employment at American Airlines on August 3, 2018, due to the accrual of sick leave.

64.     Deborah A. Brasier ("Plaintiff Brasier"), a flight attendant, is a resident and citizen of Arizona, and is currently domiciled in Anthem, Arizona. For purposes of 28 U.S.C. § 1332, Plaintiff Brasier is a citizen of Arizona. Plaintiff Brasier is an employee of American Airlines, Inc.

*Defendants*

65.     Defendant American Airlines Group Inc. is a Delaware corporation with its principal executive offices located in Fort Worth, Texas. American Airlines Group Inc.'s wholly-owned subsidiaries include Defendant American Airlines, Inc., PSA Airlines, Inc. and Envoy Air

Inc. For the purposes of 28 U.S.C. § 1332, American Airlines Group Inc. is a citizen of Delaware and Texas.

66.     Defendant American Airlines, Inc. is a Delaware corporation with its principal executive offices located in Fort Worth, Texas. American Airlines, Inc. is wholly owned by American Airlines Group Inc. For the purposes of 28 U.S.C. § 1332, American Airlines is a citizen of Delaware and Texas.

67.     Defendant PSA Airlines, Inc. is a Pennsylvania corporation with its principal executive offices located in Vandalia, Ohio. PSA is wholly owned by American Airlines Group Inc. For purposes of 28 U.S.C. § 1332, PSA is a citizen of Pennsylvania and Ohio.

68.     Defendant Envoy Air Inc. is a Delaware corporation with its principal executive offices located in Irving, Texas. Envoy is wholly owned by American Airlines Group Inc. For purposes of 28 U.S.C. § 1332, Envoy is a citizen of Delaware and Texas.

69.     On information and belief, Defendants American Airlines Group Inc. and American Airlines, Inc. controlled and dictated the uniforms worn by employees of Defendants PSA Airlines, Inc. and Envoy Air Inc.

70.     Defendant Twin Hill Acquisition Company, Inc. ("Twin Hill") is a California corporation with its corporate headquarters located in Texas. Twin Hill operates under the name Twin Hill and Twin Hill Corporate Apparel. Twin Hill is wholly owned by The Men's Wearhouse, Inc. For purposes of 28 U.S.C. § 1332, Twin Hill is a citizen of California and Texas.

## IV.    BACKGROUND FACTS[2]

*American Selects Twin Hill*

71.     On or about February 2012, American issued a Request for Proposal ("RFP") for a company to develop and manufacture new uniforms for the entire Above the Wing ("ATW") workforce, including flight attendants, pilots and service agents.

72.     American received bids from Land's End, a well-known high-end clothing and uniform manufacturer.  Land's End had previously been selected by Alaska Airlines after it had to replace Twin Hill uniforms due to almost one-third of its workforce getting ill from exposure to the Twin Hill uniforms. But American did not choose Land's End.

73.      Instead, based upon, among other things, cheaper cost, in or around 2013 American chose Twin Hill to manufacture the uniforms, and Kaufman Franco to design them.

74.     It appears that Twin Hill did not have the capital to "invest" in a good garment manufacturing structure in the third world countries where much of its clothing was made. For example, with a large account like American, a uniform manufacturer must reserve, with pre-payments, top garment factories in advance. On information and belief, Twin Hill did not have the wherewithal or infrastructure to do this, so when it landed a large account like American (perhaps its largest ever) it had to scramble to line up the factories on short notice. As a result, quality control went out the window with regard to the fabric and garment factories.

75.     The result was that Twin Hill badly needed to land the American account, even though it really did not have the ability to safely accomplish the job. And, as a result, it did not.

76.     But this had been a problem at Twin Hill for a while. When sales representatives

---

[2] The section entitled Background Facts is based upon documents produced by American and Twin Hill pursuant to the MIDP. They only represent a small amount of the documents that necessarily exist, as the American document custodians whose files were searched did not encompass many of the key players in this event.

reported that customers were adversely reacting to its uniforms on a variety of accounts prior to American, Twin Hill just told the sales representatives to tell customers whatever they could to mollify them.

77.     In fact, Twin Hill's own sales representatives had reactions to Twin Hill uniforms that they stored at their residences or in their vehicles; several used to joke that the job would eventually kill them.

78.     Although Kaufman Franco, which was a high end design firm, was supposed to complete the initial uniform design, that did not happen, and American and Kaufman Franco parted ways, apparently because Kaufman Franco too advised against going with Twin Hill. Instead, Twin Hill took over the entire account, which included uniform design and sourcing.

79.     American hired Twin Hill even though it was fully aware that Twin Hill had, to put it kindly, a checkered past with regard to its uniforms. Substantial numbers of employees of Alaska Airlines, as well as employees at UPS, Southwest and NetJet had all previously complained about their Twin Hill uniforms causing them ill-health.

80.     In contrast, with regard to its proposed new uniform Land's End rollout in the next few years, it was just reported that American has required such things as that the manufacturing process be closely monitored by Oeko-Tex—from fabrics to the jacket buttons, and from manufacture to assembly—with regular testing of the garments to ensure that safe chemicals at safe levels are used at all times. While equally available then, none of this was done in connection with the Twin Hill uniforms—even though American was, as it is now, informed that Twin Hill uniforms had previously caused injury to airline employees.

***American Ignores Its Unions and Attempts to Conceal the Problem***

81.     Before Twin Hill was selected, when it was down to it and Land's End,

- 18 -

representatives of the Allied Pilots Association ("APA") repeatedly pleaded with American to not select Twin Hill because of its history and the dangers Twin Hill uniforms could pose to American's 70,000 person workforce.

82.     But in what became a disturbing pattern from the beginning, ██████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

83.     Thus, from the beginning, when representatives from the APA, AFA (Association of Flight Attendants) and APFA (Association of Professional Flight Attendants) pleaded with American to go with another supplier other than Twin Hill, ███████████████████████████████

And when the unions reported—well before the rollout—that their members who were wear testers and others who received the Twin Hill uniforms were experiencing adverse health consequences (which were similar to those reported by Alaska Airlines employees), American ████████████████
██████████

84.     The result was that rather than treat the complaints it was receiving from the unions as credible and worthy of serious investigation, American sought to discredit and minimize them.

85.     ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████

86.     ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████

87.     This turned into a sanitization exercise that had as its intent and effect to allow

- 19 -

American to falsely claim that its uniforms were safe when it knew that they were not.

88.     Any responsible company, when it hears that its employees are suffering from something that it did to them, at a minimum, must examine the people who are sick and attempt to find out and try to fix the problem. American did not do what any responsible company would do.

89.     To the contrary, American hired one of the only specialists in the United States who might be able to discover at least what it is about these uniforms that is causing skin issues, which in turn might lead to the discovery of other causes. But American promptly put him on the shelf when he reported his first results, stopping his investigation in its early tracks and ending any inquiries he might have made.

90.     He, in turn, has refused to be engaged by Plaintiffs because American has told him to not do so. This is not a litigation strategy—this is part of a larger effort to cover-up what has happened and continues to this date. American does not and has never wanted to know the truth before or after the rollout.

91.     Instead, American ordered outside chemical testing of some Twin Hill garments—

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. For example, American knew (because it had been told by its wear testers and the unions) that the adverse reactions to the Twin Hill uniforms were not limited to skin rashes or skin related problems and included respiratory problems, migraine-like headaches, and vision problems. But at each step all that American requested its testing company to look for were chemicals that might provoke *skin problems*.

***American's Management Was Fully Involved***

92.     ████████████████████████████████████████████████████

- 20 -

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

93.     Fern Fernandez was Vice President Global Marketing, Hector Adler was Vice President Flight Service and Suzanne Boda was Senior Vice President Hubs. ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████

94.     ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████   As more fully set forth below, ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████

95.     Moreover, even though documents have not yet been produced from the files of ████████████, and so Plaintiffs only have glimpses of their involvement as reflected in others' emails, ████████████████████████████████████████████

███████████████████████████████████████████

*Oeko-Tex Certifications*

96.     ████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████

97.     ██████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

Rashes were one of the initial symptoms experienced during the much publicized Alaska Airlines event but not the only ones.

98.     American went to Intertek and asked them to test the Twin Hill uniforms for chemicals that may cause skin reactions. ██████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████

99.     OEKO-TEX is a certification entity. It publishes what it calls the OEKO-TEX 100, which is a list of 100 chemicals that may be found in garments but for which it claims to have set threshold safety levels. The standards are met by private consent and have no legal effect. In addition, the levels set by OEKO-TEX for these chemicals are subject to being questioned, as the National Institute for Occupational Safety and Health ("NIOSH") recognized in a subsequent report it issued regarding the Twin Hill uniforms here. For example, the Oeko-Tex 100 focuses on individual chemicals and their limits, but does not deal with chemical mixtures.

100.     Further, ██████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████. A Class
II certification does *not* mean that everything that the mill makes is certified. Rather, it means that
a particular type of fabric, if made according to an Oeko-Tex approved recipe, has been certified.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

     101.     American falsely proclaimed to its employees that *all* of the fabrics used in the
Twin Hill garments were OEKO-TEX certified when they were not.

     102.     Moreover, American falsely led its employees to believe that the garments were
proven safe under the OEKO-TEX standards, when no already made fabric can be proven safe by
any post production testing for the reasons stated herein.

     103.     ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

*The First Wear Test*

     104.     ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

     105.     ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

106. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮

107. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Brady Byrnes, upper American management and one who is currently responsible for the current Land's End new uniform rollout, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

108. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

109. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In this regard, the Harvard School of Public Health reported in January 2018 that the Twin Hill uniforms were the cause of the illnesses experienced by the Alaska Airlines employees. Yet, today knowing this to be the case with regard to the Alaska Airlines incident and knowing full well that the same has happened to thousands of its employees and is currently happening to ▮▮▮▮▮ of proximity reactors like

Plaintiffs, whom American knows by name are currently suffering, American continues to cause injury to its employees.

110. ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████

111. ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████

112. Thus, at an early stage, ████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████

113. ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████

114.  ████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

115.    The APA conducted a survey of its wear testers after the first wear test, which it shared with American after the wear test. ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

116.  ████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████

117.  ████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

Yet American disregarded this and plowed ahead.

118.  ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

119.     Rather than halting the process, Boda and Fernandez approved a round of testing

by Intertek—████████████████████████████████████████████

███████

120.     ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

121.     ████████████████████████████████████

█████████████████████████████████████

*Intertek Testing April 1, 2015 Report*

122.     ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

123.     ████████████████████████████████████

███████████████████████████████████████████████

████████████

124. ███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

125. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

126. █████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████

127. ████████████ aromatics and low molecular branched hydrocarbons pose serious health risks through the air as opposed to contact with the skin. ████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████

128. These categories of unknown chemicals can provoke precisely the cascade of symptoms experienced by Plaintiffs and the thousands of employees who have and are currently reacting to the Twin Hill uniforms.

129. █████████████████████████████████████

███████████████████████████████████████████



130.

131.

132.     In addition, it is myopic to focus on any one chemical as the purported cause of any symptoms or particular symptoms, as two or more chemicals can combine and synergistically contribute to these reactions as several chemicals present in the uniforms are known auto-immune and allergic sensitizers. Similarly, it is an insufficient explanation to claim that some or all of the chemicals found in the uniforms may be in other items of clothing sold to the consuming public, and thus the uniforms must be safe because this (1) ignores that these uniforms and the 20 or so items that are offered have unique chemical make-ups different from other clothing—even different from clothing previously made by Twin Hill; and (2) ignores that there may be a chemical or chemicals present in these uniforms that have yet to be detected—because it is essentially impossible to test for such chemicals post-production.

133.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

134. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

135. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████ This began a pattern on American's part to consciously follow a path of "see no evil, hear no evil." But that would blow up in its face as the facts below demonstrate.

136. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

**Second Wear Test**

137. ██████████████████████████████████████████████

████████████████████████████████████████

138. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

139. For example, shortly after the completion of the second wear test, ██████████████

████████████████████████ [3] ██████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

█████████████████████████████████████

140.    ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████

    ██████████████████████████████████████████████████████████

    ██████████████████████████████████████████████████████████

    ██████████████████████████████████████████████████████████

    ██████████████████████████████████████████████████████████

    ██████████████████████████████████████████████████████████

    ████████████████████████████

█████████████

141.    ████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

142.    The responses of ██████████████ were even worse. ████████████████████

---

[3] American blocked the names of all persons who reported reactions in its production to Plaintiffs' counsel but it knows the names of all of the persons in the sundry similar communications that poured in as time went on—both pre-rollout and post-rollout.

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████

███████

143. ██ ██ ██ ███ ███ ██ ██ ██ ███ ██ ██ ███
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████████

144. ███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████

145. ███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████████████████ *American*
*knows all of these people by name, but it has withheld their names from this Court and Plaintiffs.*

146. ███████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

of (a) the red flags raised by the 2015 wear test and (b) the APA's pleas to American to not go with Twin Hill because of the adverse health effects it had on its pilot wear testers.

147. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████

148. ███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████

***Intertek Testing April 5, 2016 Report***

149. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████

150. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

151.    Moreover, no entity, not Intertek or anyone else other than Oeko-Tex, can test for compliance with the Oeko-Tex limits; such testing is proprietary to Oeko-Tex. ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

152.    In fact, for those sensitized to the Twin Hill uniforms, this sensitization becomes worse as the exposure continues. Here, virtually everyone who has reported to American as a reactor is at risk to ever increasing sensitization even if they are no longer wearing the Twin Hill uniforms and even if they are not proximity reactors. In the future, even after the Twin Hill uniforms are removed from the workplace, they will be sensitized to these chemicals such that even small amounts will trigger reactions. In short, all reactors are at risk of a living hell going forward as they continue to be exposed to the Twin Hill uniforms and their tolerance decreases such then when they come in contact with items containing very small amounts of such chemicals in everyday items, like shaving cream, cosmetics and other garments, they will react like they react now.  American knows this today.

153.    In addition, people who are not reactors now may develop sensitization at some point in the future.

154.    In short, in addition to knowing by name many proximity reactors, including Plaintiffs in this case, who are harmed every day by being forced to work around these toxic uniforms, American is knowingly harming or at least subjecting every American flight attendant, pilot and gate agent to the risk of serious harm on a daily basis. American has known this both

before the rollout and post-rollout.

155.     ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████

156.     Thus, Intertek told American that the uniforms were unsafe for the persons who

were sensitive to these chemicals and that exposure to sensitizers is cumulative with sensitivity

increasing from continued exposure. ██████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████ Nor did American take any steps to inform its employees about these

risks—though it clearly knew that they existed. Instead, American repeatedly and falsely claimed

to its employees that the uniforms were proven to be safe by the very Intertek reports that told it

otherwise.

157.     ████████████████████████████████████████████████████

██████████████████████████████████████████

          ██      ████████████████████████████████

          ██      ████████████████████████████████████████

          ██      ██████████████████████████

          ██      ████████████████████████████████████

          ██      ██████████████████████████████████████

                  ████████████████████████████████████████

                  ████████████████████████████████████████

158.    The NIH reports the following with regard to volatile organic compounds ("VOCs") █████████████████████:

Short-term exposure to various VOCs may cause:
- Irritation of the eyes and respiratory tract
- Headaches
- Dizziness
- Visual disorders
- Memory problems

Long-term exposure to various VOCs may cause:
- Irritation of the eyes, nose, and throat
- Nausea
- Fatigue
- Loss of coordination
- Dizziness
- Damage to the liver, kidneys, and central nervous system
- Cancer

*Volatile                Organic                Compounds*,                Tox                Town, https://toxtown.nlm.nih.gov/text_version/chemicals.php?id=31 (last visited Oct. 4, 2018).

159.    Many of the above symptoms noted by NIH are the symptoms that were reported to American by its employees before and after the rollout.

160.    Further, with regard to the unknown chemicals, Intertek wrote:

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████

████████ The paragraph abruptly ends here—without any further discussion.

161.    ███████████████████████████████████████████████

███████████████████████████████████████████, American was on notice that there

was something seriously wrong with the Twin Hill uniforms. At a minimum, American should have ordered further investigation into what these chemicals actually were as was offered by Intertek.

162. ████████████████████ From the beginning, American's management was more concerned with ████████████████████████████████████

████████████████████████

163. For example, ██████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

164. Again, as exemplified throughout this event, American management was more concerned about ████████████████████ rather than safety itself. ████████████████

███████████████████████████████████████████████

████████████████

165. ██████████████████████████████████

██████████████████████████████████ The NIH discussion of benzonitrile on its website makes clear the dangers of such a substance. After a skull and crossbones sign, the NIH posts the following on its website regarding benzonitrile:

**Signal:** Danger
**GHS Hazard Statements**
H227: Combustible liquid [Warning Flammable liquids]
H302: Harmful if swallowed [Warning Acute toxicity, oral]

- 37 -

H312: ***Harmful in contact with skin [Warning Acute toxicity, dermal]***
H315: ***Causes skin irritation [Warning Skin corrosion/irritation]***
H319: ***Causes serious eye irritation [Warning Serious eye damage/eye irritation]***
H331: ***Toxic if inhaled [Danger Acute toxicity, inhalation]***
H335: ***May cause respiratory irritation [Warning Specific target organ toxicity, single exposure; Respiratory tract irritation]***
H371: ***May cause damage to organs [Warning Specific target organ toxicity, single exposure]***
H373: ***Causes damage to organs through prolonged or repeated exposure [Warning Specific target organ toxicity, repeated exposure]***
H402: Harmful to aquatic life [Hazardous to the aquatic environment, acute hazard]

*Benzonitrile*, PUBCHEM,

https://pubchem.ncbi.nlm.nih.gov/compound/benzonitrile#section=Safety-and-Hazards (last

visited Oct. 4, 2018) (emphasis added).

166.    In other words, a representative aromatic nitrile would cause all of the reported

symptoms and was listed as dangerous as well as posing the threat of organ toxicity from repeated

exposure. Moreover, aromatic nitriles like benzonitrile as well as any of the other unknown

chemicals raise the specter of long-term health risks including cancer to all employees who work

in or around these toxic uniforms.

167.    ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

168.    ████████████████████████████████████████

████████████████████████████  As a result, the Intertek reports do not discuss

the myriad of dangers caused by these chemicals. And with regard to the effects of just one of

these unknown chemicals, Intertek's discussion of aromatic nitriles ends in mid-thought without

any conclusion.

169. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

170. ████████████████████████████ knew that those assertions were wrong

because: (1) there were unidentified chemicals in the Twin Hill uniforms; (2) ████████████

████████████████████████████████████████████

████████████████████████████████ that was not subject to the Class

II certificates that these mills had; and (3) the Intertek report made no such claim that the uniforms

were 100% safe. ████████

***August 2016 Final Rollout Preparations***

171. Shortly afterwards, as uniforms began to be distributed pre-September 2016, and

as uniform fittings took place, complaints started flowing in from those who had begun to receive

their uniforms starting in early summer 2016.

172. ████████████████████████████████

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

████████████

173. ████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████

████████████████

174. █████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████

175. █████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████

176.    Thus, one month before the formal rollout in September 2016, ███████████████

██████████████████████████████████████████████████

███████████████

177. ████████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████

██████████

178. █████████████  ████████  █████████████████████████

179. ██████████████████████████████

180. ██████████████████████████████

181. ██████████████████████████████

182. If American management were truly concerned about the safety of its employees, American would have done additional testing and postponed the rollout until the results were provided. American did not.

183. Unfortunately, this was just the beginning of the deluge of pre-rollout information American knew about the dangers of the Twin Hill uniforms.

184. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

185. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████

186. ████████████████████████████████████████

████████████████████████████████████████

***American Unleashes the Twin Hill Uniforms on an Unsuspecting Workforce***

187.   On September 19, 2016, American officially rolled out the Twin Hill uniforms to its entire Above-the-Wing workforce of approximately 70,000 employees. American did this in spite of, to name a few red flags: ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

188. ████████████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████

189.

190.

191.

192.

193.

194.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████

195.    ██████████████ that the APFA reached out several times to Twin Hill for testing information regarding the uniforms, ████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

196.    American's reaction—like it had been since the beginning—was ██████████████

██████████████████████████████████████████████

197.    ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

198.    ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████  ████████████

199.    ████████████████████████████████████████████



200.    The adverse physical reactions to these uniforms were so swift and directly related to the introduction and use of these uniforms ███████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████

201.    As a result of these health concerns, American (1) established a call center to review individual "concerns"; (2) offered replacement garments of non-wool and/or non-synthetic fabrics or offered to allow flight attendants to "wear the prior uniform with call center approval"; and (3) agreed to perform "further random testing of garments" in order to determine what was causing flight attendants to experience rashes, skin irritation, headaches and other symptoms.

202.    ████████████████████████████████████████████

████████

203.     In the meantime, given the volume of complaints, a reporter with the Chicago Business Journal began reporting on the problem. ████████████████████

████████████████████████████████████████████

███████████████████████     ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████████████
████████████████████████

███████

204.     ████████████████████████████████████████ Mr. Lazare as he has continued to report on this matter as it has worsened and worsened.

205.     The reports of adverse events were not limited to flight attendants. ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

206.     ████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
█████████████

█████████████████████

207.    ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ American and its workers'

compensation insurer has set up huge roadblocks to each and every IOD by denying them on the

wholly bad faith grounds that such injuries were not work related—primarily because private

doctors, quite understandably, were not able to draw the connection between the uniforms and

their patients' symptoms because they were only looking at individuals. ████████████████

██████████████████████████████

208.    ████████████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████

█████████████████████

209.    ████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

210.  ███████████████████████████████████████████████

█████████████████████████████████████████████

211.  ███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

212.    Yet, apart from the fact that both rounds of Intertek's testing missed key chemicals that were found by the APFA's testing entity, Intertek's prior two testing results raised serious questions about how it conducted its tests and the safety of the Twin Hill uniforms—all of which was squarely presented to American's upper level management.

213.    As alleged above, ██████████████████████████████████████ ███████████████████████████████████████████████ Then, in the second round of testing in 2016, Intertek found benzyl benzoate in several garments at 100ppm (a level in excess of Oeko-Tex limits) including a worn female heavy zip sweater, worn female cardigan, unworn male jacket and unworn male zipper cardigan. This discrepancy in results was a huge red flag—██████████████████████████████████████████████ ████████████████████████████████

214.  ███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████ ██████████████

███████████████████████████████████████████████████

████████████████████████████████ And then there were the discrepancies with

the Intertek results and those of other testing entities who were asked, for example, by the APFA,

to test the uniforms, who found chemicals present that Intertek did not find.

215.    But American took the opposite tack when informing its employees about what the

testing had shown. ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████

        ████████████████████████████████████████████
        ████████████████████████████████████████████
        ████████████████████████████████████████████
        ████████████████████████████████████████████
        ███████████████████████████████████

████████

216.    ████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████And American knew that statement was false when made—American knew the testing

did not prove the uniforms were safe and it knew that thousands of American employees were

reporting reactions to the uniforms.

217.    ████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

218.    ██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

219.    ██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

220.    American's actions in this regard shock the conscience and demonstrate an abject disregard for employee safety.

221.    This was best exemplified when Lewis Lazare of the Chicago Business Journal filed a report noting that the number of flight attendant reactors had risen to 1,300 as of October 26, 2016. Rather than expressing concern that now over 1,000 American employees were suffering as a result of this grossly harmful decision of theirs, ████████████████████████████

██████████████████████████████████████████████████

222. ████████████████████████████████████

████████████████████████████████████ This was consistent with American's position that the issue of thousands of employees suffering from this tragic event is a question of ██████████

223.    On October 27, 2016, the APFA published the results from its testing entity. Not surprisingly, the APFA testing indicated that Intertek's testing had missed the mark.

224.    Thus, the APFA testing, which it placed on its website, identified the presence of pentachlorophenol (PCP), tetrachlorophenols, and trichlorophenols, and free and partially releasable formaldehyde—chemicals that had never been identified by Intertek at all.

225.    That these chemicals were found by the APFA's testing entity should have been no surprise to American as pentachlorophenol (PCP), tetrachlorophenol, and trichlorophenols are all volatile/semi-volatile compounds. All pose cancer risks as well as risks of the very symptoms experienced by thousands of American employees.

226. ████████████████████████████████████

227. ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

228.   ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

229.   Yet, ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████—at least in the documents

produced to Plaintiffs so far.

230.   ██████████████████████████████████████

███████████████████████████████████████████████

█████████████  Thus, while American had been publicly touting for months that its uniforms were

safe because of the purported OEKO-TEX certifications, ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

231.   The answer to American's inquiry was simple. ████████████████████████████

███████████  *Factory* certifications are not *fabric* certifications, and even then, after the fabric is made,

it is shipped to third-world countries to be processed into garments and additional processing that too must be verified/certified ███████████████████████████. As a result, any claim that the Twin Hill uniforms met OEKO-TEX's certification process was false.

232.     Notwithstanding the above, American continued to deny all workmen's compensation claims. ██████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████

233.     This was part of a cover up by American—a fraud that American has perpetrated and continues to perpetrate on its entire workforce, including all those that have been injured so far. Having caused this health crisis by ignoring the wear testing results, its unions' requests to change vendors, and the limited testing it procured from Intertek, American acted consistent with an entity that was now concerned about its workers' compensation liability and not the health of its employees.

234.     In spite of reporting procedures that provided that employees should report problems to their respective base managers, some American employees were so desperate for answers and relief that they communicated directly with upper level management about their suffering.

235.     ██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████



237.    Those chemicals, in addition to being volatile/semi-volatile compounds, can be toxic. Specifically, Pentachlorophenol, also known as PCP, was first produced in the 1930s as a pesticide and disinfectant. People may be exposed to PCP through the inhalation of contaminated air and dermal contact with products treated with the chemical. Short term exposure to large amounts of PCP can cause harmful effects on the liver, kidneys, blood, lungs, nervous system, immune system, and gastrointestinal tract. Contact with PCP, particularly in the form of vapor, can irritate the skin, eyes, and mouth. Long-term exposure to low levels such as those that occur in the workplace can cause damage to the liver, kidneys, blood and nervous system. PCP is also associated with carcinogenic, renal, and neurological effects. The U.S. EPA classifies PCP as a possible carcinogen. Single doses of PCP have half-lives in blood of 30-50 hours in humans. Wearing of the new uniforms over time can cause the release of this chemical into the cabin air where it can combine with other vapors caused by the other chemicals in the new uniforms.

238.    Tetrachlorophenol is an insecticide and a bactericide that is used as a preservative

for latex, wood, and leather. Symptoms of exposure include irritations of the skin, eyes, nose and pharynx, and dermatitis with repeated skin contact.

239.    Trichlorophenol is used as fungicides, herbicides, insecticides, antiseptics, defoliants, and glue preservative. It too is listed as a possible human carcinogen. In animal models, consumption of 2, 4, 6-trichlorophenols leads to an increased incidence of lymphomas, leukemia, and liver cancer.

240.    Formaldehyde is known to be a human carcinogen. While it is widely used in industrial applications, including as a crease resistant in clothing, the chronic long term exposure by inhalation can cause a cascade of health issues from skin rashes and respiratory problems to cancer, as well as causing fatigue.

241.    

242.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, it should also be noted that these uniforms were manufactured in third world countries where oversight is virtually nil, and include Bangladesh ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Indonesia, China, Sri Lanka and Vietnam.

243.    The chemicals contained in the uniforms also have a cumulative effect as exposure continues, which has been and continues to occur with those have already reacted as well as all American employees.  This is why some employees are only just now starting to react, even though they have worn the uniforms without incident for almost two years.

244.    In November 2016, American implicitly if not expressly recognized the seriousness

of this problem, reversing its purportedly long planned first company-wide uniform change in 30 years, and announced that it would allow affected employees to change uniforms, either to go back to wearing their old blue uniforms or buying off the rack pieces that looked like  the Twin Hill uniforms.

245.    In short, as of November 2016, American no longer had a consistent uniform being worn across its workforce—some were wearing the new grey Twin Hill uniforms, others were wearing the old blue uniforms, and still others were wearing grey approximations of the Twin Hill uniforms made by off-the-rack clothing manufacturers chosen by each employee.

246.    As a result, any interest that American may have had in maintaining any consistency of the clothing worn by its employees ceased to exist from that point forward.

247.    Even though those having adverse reactions were permitted to change out of the Twin Hill uniforms, many of them continue to experience adverse reactions with increasing severity because they are near those wearing the new Twin Hill uniforms or in spaces such as company lounges, vans, jump seats, or crew sleeping bunks on the long-haul planes.

248.    This is further evidenced by the fact that after November 2016, thousands more American Airlines employees reported adverse reactions, including many who had never worn the uniforms to begin with.

249.    █████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

250.    █████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

251.   ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

252.   Rather than responding with concern, ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████   Thus, yet again, American management chose to ignore information

regarding ██████████████████████████s and instead chose to fi███████████████

253.   ████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

254.   ████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

255.    ████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████    This was false. And as alleged above, Fernandez, Adler and Boda

knew their safety claim was false when made; they knew that the uniforms had never been proven

safe, ████████████████████████████████████████████████

████████████████████████████████████████████

*November 28, 2016 Intertek Testing Report*

256.    In a panic, after ██████████████████████████████, American ordered

yet a third round of testing in the fall of 2016. ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████.

257.    ████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████

258.    ████████████████████████████████████████████

██████████████████████████████████████████████

- 58 -

259. 

260.

***American Denies All Workers' Compensation Claims***

261.    Early on, in the very first month or so, when the first reactors went to in-house medical staff at American, including doctors, they were told by the medical staff that the uniforms were causing the reactions and that they should file IODs (workers' compensation claims). Plaintiffs are aware of just one such claim that was initially granted by American's workers' compensation insurer, but then it was withdrawn.

262.    Thereafter, and to this day, all IODs have been denied—not one workers' compensation claim has been granted by American or its insurer and for the most part have been denied as injuries that are not work related.

263.    These denials meant that each such person would have had to hire an attorney to pursue American, on an individual basis, through the arbitration process set up for IODs. But American knew that any attorney representing just one client, would, unlike most workplace injuries, have to incur enormous expenses to prove that their individual clients were injured by the uniforms, and such expenses would outstrip any recovery. Thus, any argument on American's part

- 59 -

that a workers' compensation remedy is available to injured employees is cynical, in bad faith and a ploy to send their claims to purgatory.

***American's Knowledge of Proximity Reactions***



264.

265.    At this point, it was clear, or should have been clear, to American senior management that notwithstanding American's shallow offer to employees to switch to alternative uniforms, American's employees would continue to suffer until the uniforms were removed from the workplace because there were people who were reacting when in proximity to the uniforms.

266.

267.

███████████████████████████

268.    Moreover, if somehow he did not know before, ██████ was now fully aware that Twin

Hill uniforms were causing proximity reactions to those persons not even wearing the uniforms.

Thus, tests for skin irritation due to dermal contact—████████████████████████████

████████—were entirely meaningless because, if it had not been clear before (which it was), it

was now clear that the reactions were being caused by off-gassing or vapors as well as skin contact.

269.    As evidence of the further desperation of its employees, a flight attendant filed a

complaint with OSHA. ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████

270.    ██████████████████████████████

████████████████████████████████████

████████████████████

271.    ██████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████

272.    ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ Yet, because the

Intertek reports, ████████████████ were limited to skin irritation issues no mention of

cadmium was even made by them.

273.    ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

274.    In a compelling passage, ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ In fact, in a

naked attempt to rid itself of proximity reactors, American recently instituted a new sick leave

policy that reduces the number of sick days and American has strictly enforced this against reactors. In fact at least one Plaintiff in this action was fired because she had taken too much sick leave due to uniform reactions and others are at risk of losing their jobs, even though American knows that their sick leave requests arose out of their reactions to the Twin Hill uniforms.

275. 

276. This story is a recurring story for thousands of American employees. American knows that a significant portion of its workforce is unable to work around the Twin Hill uniforms, yet continues to deny them compensation and forces them to choose between their jobs or their health. And, as alleged *infra*, American knows who many of these persons are, by name, and continues to require them to work around the Twin Hill uniforms.

277. ████████████████████████████████████

████████████████

278. ████████████████████████████████████

██████████████████████████████████████

279. ████████████████████████████████████

██████████████████████████████████████

█████████████████████████

280. ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

    ████████████████████████████████████
    ████████████████████████████████████
    ████████████████████████████████████
    ████████████████████████████████████
    ████████████████████████████████████
    ███████████████████████

██████████

281. ██████████████████████████████████████

██████████████████████████████████

    ████████████████████████████████████
    ████████████████████████████████████
    ████████████████████████████████████
    ████████████████████████████████████
    ████████████████████████████████████
    ████████████████████████████████████
    ████████████████████████████████████
    ████████████████████████████████████
    ████████████████████████████████████
    ████████████████████████████████████
    █████████████████████████

███████████████

282. ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

283. Isom did not take action to remove the uniforms from the workplace. ████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

284.   ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

*American Considers Patch Testing*

285.   ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

286.   Dr. Scheman is the only doctor trained in the United States to perform a special technique of extracting the "essences" of garments such as the Twin Hill uniforms and then conducting "customized" patch testing to determine if the uniforms were actually provoking skin reactions, and if so what chemicals were causing them.

287.   ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

288.   Plaintiffs' counsel contacted Dr. Scheman to see if he would perform the tests for them. Dr. Scheman said he would only do so if American permitted him. Subsequently, Dr. Scheman then informed Plaintiffs' counsel that American would not give such authorization.

289.   This is consistent with an effort by American to avoid robust testing that might provide answers concerning what chemicals are harming people, which would aid in treatment and prevention. In other words, American again chose to cover-up the problem rather than try to solve

the problem.

*American Seeks To Silence All Critics*

290.    In a further cover-up effort, American sought to silence the APFA. ████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

291.    ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ American chose to save money versus

saving its employees' health.

292.    ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████

293.    ████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

294.    ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

295. ████████████████████████████████████████

296. ████████████████████████████████████████

297. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

298.   ████████████████████████████████████████

████████████████████████████████████ Of course, the answer was that upper level

management knew this for a long time.

299.   ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████

300.   ███████████████████████████████████

██████████

301.   ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████

***American Considers Alternative Uniforms While Ignoring Proximity Reactors***

302.    In February 2017, American began to consider offering an alternative uniform made by Aramark. Unfortunately, notwithstanding the repeated reports of proximity reactions as alleged above, American continued to ignore proximity reactors.

303.    ████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████

304.    ████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

305.    Notably, prior to this time, both Isom and Parker had received emails from Plaintiff Joe Catan, an American Pilot for 26 years and former marine, where he had told them point blank that the Twin Hill uniforms were posing a safety threat in the cockpit due to proximity reactions that he and others were having.

306.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

307. Yet, American did not follow through with Dr. Scheman's patch testing and, in fact as noted previously, American has prevented Dr. Scheman from working with anyone else to help American's employees.

308.

309.

310.      ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

311.      ████████, providing leaves of absence (LOAs) ████████. While LOAs would provide people the opportunity to not work in a toxic environment, they would have no income as a result. Instead, as discussed below, what should be offered, ████████, is that LOAs with full benefits be granted until the Twin Hill uniforms are removed, just like NIOSH recommended that American do earlier this year.

312.      Although American failed to follow through with Dr. Scheman's testing to help determine which chemicals were harming its employees' skin, and failed to provide any relief to proximity reactors, ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

313.      ████████████████████████████████████████

████████████████████████████████████████████

████████████████████ Other airlines were apparently reluctant to sign up with Twin Hill; this actually came to fruition in August 2017 when Twin Hill lost its bid for the United Airlines account to Brook Brothers.

***The Complaints Continue to Grow***

314.      ████████████████████████████████████████

████████████████████████████████████████████

████████████████ This question should have been asked on multiple occasions: ██

315. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████

316. ███████████████████████████████████

███████████████████████████████████

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████

317. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████

318. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████

319.  ████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

    ████████████████████████████████████
    ████████████████████████████████████
    ████████████████████████████████████
    ██████████████████████████

██████████████████

320.  ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████

321.  ████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

322.  ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████

323.    Moreover, recommending that employees go through the IOD process was cynical at best, ███████████████████████████████████████████, since as of that point in time and to this date, American has not granted a single IOD for uniform reactions.

324.    ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████

325.    ████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████ like ████████ of others were proximity reactors who needed the Twin Hill uniforms removed from the workplace.

326.    ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

327.    ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

328.    If there were any doubt about how many persons were reacting, the response to ordering the Aramark alternative uniform put that to rest. ████████████████

████████████████████████████████████████████████████

████████████████████████████████████

329.    Notably, the right to order replacement uniforms was not unfettered. To obtain a replacement uniform, the employee had to certify that he or she had a "reaction" or did not feel comfortable wearing the current uniforms.  In short, in a telling slip, American admitted that its employees were having "reactions" to the uniforms.

330.    While the flight attendants who certified that they were experiencing reactions from the Twin Hill uniforms could order replacement uniforms from Aramark, pilots who certified that they were experiencing problems with the Twin Hill uniforms could order replacement uniforms from Murphy & Hartelius ("M&H"), a high-end uniform manufacturer. ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ Yet, even though the employees had to certify that they were reactors, American to this date has not publicly admitted that the uniforms were and are causing reactions and has not granted one IOD arising out of reactions to the uniforms.

331.    Meanwhile, by ██████████ American pilots were undoubtedly experiencing major problems. ████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████

██████

332.    ██████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████

333.    American management knew that there were serious problems for those who were proximity reactors. ██████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████ But even though NIOSH in its recent report recommended that American grant leave with full pay and benefits for reactors, American has done no such thing.

334.    On June 22, 2017, American announced in a letter to its employees that it was terminating its presumably long-term relationship with Twin Hill as of 2020. The letter was signed by American Airlines' Senior Vice Presidents Kerry Philipovitch, David Seymour, and Kurt Stache (evidencing the removal of the Troika of Fernandez, Adler and Boda from the process). In the letter, American admitted its knowledge of the current serious situation presented by the Twin Hill uniforms: "It is clear we need a long-term solution because the current approach simply does not work." ██████████

335.    The key admission in this letter is, of course, that the current approach was not

working. As noted above, that current approach was to permit employees who were reacting to change to a non-Twin Hill uniform. Thus, in this letter American admitted by its statements and its conduct that it knew that the Twin Hill uniforms had and would continue to cause harm to Plaintiffs and the Class.

336.    If there were, as American and Twin Hill claim, no harm caused by the Twin Hill uniforms and if all of the testing conducted on the uniforms demonstrated that they were safe, then there would have been no reason to reverse course—after only nine months—when this uniform change had been planned over three years—the first of its kind in 30 years—and then announce that a new uniform supplier would be sought out in three years' time.

337.    Unfortunately, even then, this is a non-solution and does not correct Defendants' tortious conduct, since for at least another three years and likely more, as American's internal documents shows that it will take at least two-three years to roll out the uniforms. Given the apparent care that American is now taking—care it should have taken in 2014—the rollout date for the Land's End uniforms may be more than 3 years away.

338.    ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████

339.    ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████████



340. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████ Yet American forced and forces all new hires to purchase the Twin Hill uniforms, from American no less ████████████████████████████████████

██████████ but does not warn them of the possible health risks they pose. In short, American is trying to make a profit off the sale of these toxic uniforms to unsuspecting new hires.

341. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████

342. Not surprisingly, American appears to have a list of those who have reported reactions to it. American reached out to at least some employees who it knew were reacting to the uniforms in December 2017. On December 6, 2017, an American Senior Analyst wrote to "Select Flight Attendants": "We are specifically reaching out to you based on your reaction to the current uniforms." The letter went on to offer them "the opportunity to wear test garments from a new vendor," provided, among other things, they agree to wear the test garments for six months.

343. The number of adverse reactions reported has steadily increased over time. As of September 26, 2018, the APFA reported that it had received 4,830 uniform reaction reports from American Airlines flight attendants out of the approximately 18,000 flight attendants represented by the APFA. Of the approximately 3,000 flight attendants represented by the AFA, approximately 700 have filed adverse reaction reports.

***Harvard School of Public Health Study***

344.    A recently published peer-review study authored by researchers from the Harvard School of Public Health reports the results of an epidemiological study that they conducted on the Twin Hill/Alaska Airlines uniform event. *See* Eileen McNeely, Steven J. Staffa, Irina Mordukhovich & Brent Coull, *Symptoms related to new flight attendant uniforms*, BMC Public Health (2017) 17:972 ("Harvard Report").

345.    The Harvard Report is attached hereto as Exhibit 1, but the key finding is simple. The Harvard scientists found a relationship between the introduction of the Twin Hill uniforms and the wave of adverse reactions that swept across Alaska Airlines: "We found that the introduction of the new flight attendant uniforms was associated with quantifiable health effects. More specifically, ***we found the new uniform introduction to be related to skin rashes and itchiness, as well as respiratory and allergic symptoms.***" *Id.* at 7 (emphasis added).

346.    In particular, with regard to Defendants' contention that the complaints of flight attendants and pilots regarding the Twin Hill uniforms are speculative, just like Twin Hill contended with regard to the Alaska Airlines event, the study notes—unfortunately too late to help Alaska employees harmed by the Twin Hill uniforms, "These results raise the seriousness of the flight attendant complaints about potential harms and the need for further investigation." *Id.*

***American Intentionally Harmed and Continues***
***to Harm Plaintiffs and the Proximity Reactor Class***

347.    By the time American rolled out the Twin Hill uniforms in September 2016, American knew that ███████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████ And as of this date American knows, ██████████████████████████████ its employees are

proximity reactors who continue to be injured from exposure to the Twin Hill uniforms.

348.    While as set forth below, each Plaintiff who is a proximity reactor informed American of his or her specific proximity reaction and American nonetheless forced each Plaintiff to continue to work around the Twin Hill uniforms, American's conduct with respect to Plaintiff Joe Catan is a prime example of how it knowingly continues to harm employees that it knows by name are proximity reactors.  In fact, the conduct reflects an intent to force these employees to quit or be fired.

349.    Plaintiff Captain Joe Catan is a Marine Corps veteran with two tours of duty in Iraq and 26 years with American. Captain Catan had adverse reactions while wearing the Twin Hill uniform. As a result, in December 2016, he stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Captain Catan continued to experience adverse reactions when he worked around others who wore the Twin Hill uniforms, including headaches, runny nose, congestion and hoarseness.

350.    While not debilitating or incapacitating, Captain Catan experiences adverse reactions when he is forced to work with someone who is wearing the Twin Hill uniforms.

351.    Captain Catan has repeatedly told American that he is a proximity reactor. As early as February 2017 and various times thereafter, including in written emails dated February 7, 2017, February 17, 2017, and July 6, 2017, Captain Catan reported to American management that he and many others were experiencing proximity reactions to the Twin Hill uniforms. Captain Catan has written about the proximity reactions that he, and other American employees are experiencing, to Doug Parker (American's CEO), Robert Isom (American's President), Scott Kirby (American's former President), Elise Eberwein (American's VP Customer Experience), and Kimball Stone, (American's VP Flight). In addition, on or about May 17, 2017 at a town hall meeting at American

Airlines LaGuardia airport operations, Captain Catan made a presentation to Isom regarding these health concerns for himself and hundreds, if not thousands, of fellow crewmembers. Captain Catan specifically told Isom the cockpit was not safe because of the proximity reactions.[4] Isom ignored his question about what American was going to do for proximity reactors and claimed that American had solved the problem by allowing people to switch to alternative non-Twin Hill uniforms. Notwithstanding this clear warning that the Twin Hill uniforms were putting both American's employees and passengers at risk, American did not take—and has still yet to take— any steps to address the proximity reactor problem.

352.    At no time did American ever make sure that Captain Catan was not assigned employees to his flights so that he would not have to work around the Twin Hill uniforms. American knew that Captain Catan was suffering, and would continue to suffer, proximity reactions because of its insistence that he, and thousands of others that it knows by name, continue to work around these toxic uniforms, and took no steps to ameliorate his suffering and as discussed below has actually tried to harm Captain Catan further by expressly ordering him to work with pilots who are wearing the Twin Hill garments. Each time that American assigned Captain Catan to work with others who were wearing Twin Hill uniforms while knowing that he would suffer a proximity reaction was and is a separate, intentional tort by American.

353.    In fact, American has repeatedly retaliated against, and taken unwarranted employment actions against Captain Catan, due to Captain Catan's advocacy on behalf of his fellow American employees and proximity reactors.

---

[4] Specifically, Captain Catan told Isom: "I do not have a safe environment in the cockpit." Lewis Lazare, *An American Airlines pilot drops bombshell about Twin Hill uniforms*, CHICAGO BUSINESS JOURNAL (May 16, 2017), *available at* https://www.bizjournals.com/chicago/news/2017/05/16/an-american-airlines-pilot-drops-bombshell-about.html.

354.     On several occasions Captain Catan was approached by management and essentially told to shut up. But he did not, and on or about August 19, 2017, after his usual crewmember briefing, and in between a short flight from JFK to Charlotte and back, a flight attendant touched Captain Catan with her Twin Hill uniform. Within minutes, Captain Catan began to have an asthma like reaction (one of his symptoms even though he has never had asthma before the introduction of the Twin Hill uniforms).

355.     Captain Catan delayed his departure for 20 minutes until the reaction began to subside and then proceeded to JFK uneventfully. But he had had enough, and thus in the interest of safety and because the flight manual compels him to report any safety hazards, Captain Catan

████████████████████████████████████████████████████

356.     ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

357.     ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

358. ███████████████████████████████████████

█████████████████████████████████████

359. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████

360.     The only reasonable inference that can be drawn from American's treatment of

Captain Catan is that ████████████████████████████████████████

██████████████████████████████

361. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████

362. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

363. ██████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

364. ██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

365.     Each time that American assigned Captain Catan to work with others who were wearing the Twin Hill uniforms while knowing that he would suffer a proximity reaction was a separate, intentional tort by American.

366.     In the meantime, Captain Catan has continued to receive praise for his service from his fellow crew members and passengers, ████████████████████████████████████

█████████████████████████████████████

367.     Plaintiff Zurbriggen had adverse reactions while wearing the Twin Hill uniform. As a result, on or about December 2016, he stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Plaintiff Zurbriggen continued to experience adverse reactions when he worked around others who wore the Twin Hill uniforms, and informed American of this problem. Plaintiff Zurbriggen submitted reaction reports to APFA (for reporting to American) on May 15, 2017, June 29, 2017, and August 23, 2017, concerning his proximity reactions. Plaintiff Zurbriggen on or about February/March 2017 showed an American Senior Flight Service Manager his arms and neck which at the time were covered in rashes and welts. He went on to show his reactions to his Base Manager, Regional Director, and Operational Manager. Plaintiff Zurbriggen had also previous interactions with his Regional Director and Operational Manager where they noticed Plaintiff Zurbriggen wearing his own alternate uniform, and acknowledged many flight attendants were approaching them regarding their reactions to the Twin Hill uniforms. On or about August 9, 2017, Plaintiff Zurbriggen filed a Notice of Dispute with American concerning his continued proximity reactions to the Twin Hill uniforms. At no time did American ever reassign Plaintiff Zurbriggen so that he would not have to work around the Twin Hill uniforms. American knew that Plaintiff Zurbriggen was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate his suffering knowingly continued to cause him bodily harm. Each time that American assigned Plaintiff Zurbriggen to work with others who were wearing Twin Hill uniforms while knowing that he would suffer a proximity reaction was a separate, intentional tort by American.

368.     Plaintiff Dena Catan had adverse reactions while wearing the Twin Hill uniform just by wearing it at home, as she was on medical leave due to a broken ankle at the time she received her Twin Hill uniforms. And Plaintiff Dena Catan experienced and experiences adverse

reactions when she works around others who wear the Twin Hill uniforms, and informed American of her on going proximity reactions. On or about October 2016, Plaintiff Dena Catan received her Twin Hill uniforms, tried them on and then hung them up in her living room. For the next two weeks she suffered from a cascade of health issues, all of which stopped when the uniforms were removed to the garage. Plaintiff Dena Catan wore an alternate uniform when she returned to work on or about March 2017. She has never worn the Twin Hill uniforms to work. On or about August 3, 2017, Plaintiff Dena Catan filed a Notice of Dispute with American concerning her continued proximity reactions to the Twin Hill uniforms. At no time did American ever reassign Plaintiff Dena Catan so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Dena Catan was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Dena Catan to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

369.    Plaintiff Haley Johnson had adverse reactions while wearing the Twin Hill uniform. As a result, in mid-January 2017, she stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Plaintiff Haley Johnson continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. Plaintiff Haley Johnson submitted reaction reports to APFA (for reporting to American) on June 10, 2017, July 2, 2017, August 17, 2017, September 26, 2017, and January 1, 2018. In addition, she reported problems directly to American. On September 1, 2017, Plaintiff Haley Johnson filed a Notice of Dispute with American concerning her continued proximity reactions to the Twin Hill uniforms. And on February 27, 2018, Plaintiff Haley Johnson told her flight service

manager that she experienced proximity reactions while working around other flight attendants, including having hives for 13 straight days. At no time did American ever reassign Plaintiff Haley Johnson so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Haley Johnson was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Haley Johnson to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

370.    Plaintiff Chester had adverse reactions while wearing the Twin Hill uniform. As a result, in October 2016, she stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Plaintiff Chester continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. Plaintiff Chester submitted an Injury on Duty report to American in November 2016. And she had direct conversations with her base manager and her regional manager in November and December 2016 in which she informed both of them that she was having proximity reactions. Plaintiff Chester also emailed her manager in July 2018 that she was unable to fly on international flights due to her proximity reactions. She also sent her manager a doctor's note indicating that she was suffering respiratory issues allegedly caused by the uniforms and recommending that she not fly international flights. At no time did American ever reassign Plaintiff Chester so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Chester was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned

Plaintiff Chester to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

371.     Plaintiff Bell had adverse reactions while wearing the Twin Hill uniform. But Plaintiff Bell continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On or about March 2017, Plaintiff Bell stopped wearing the Twin Hill uniform because of reactions to them and began wearing an alternate uniform. Plaintiff Bell informed her manager regarding her reactions to the Twin Hill uniform and her desire to switch to an alternate (her old uniform). While she was permitted to wear her old uniform, her manager informed her that they were not filing Injury on Duty reports. Later, on or about May 2017, her Manager filed an Injury on Duty report for Plaintiff Bell regarding her reactions to the uniforms, when she was out of the Twin Hill uniforms for about two months by that point. Nonetheless, that Injury on Duty report was denied. At no time did American ever reassign Plaintiff Bell so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Bell was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Bell to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

372.     Plaintiff Crumrine had adverse reactions while wearing the Twin Hill uniform. As a result, on or about May 2017, he stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Plaintiff Crumrine continued to experience adverse reactions when he worked around others who wore the Twin Hill uniforms, and informed American of this problem. He had filed an Injury on Duty report regarding adverse reactions to the uniforms on June 5, 2017.

Plaintiff Crumrine informed a Chief Pilot about possible reactions to the uniforms in regards to the IOD he had filed. At no time did American ever reassign Plaintiff Crumrine so that he would not have to work around the Twin Hill uniforms. American knew that Plaintiff Crumrine was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate his suffering knowingly continued to cause him bodily harm. Each time that American assigned Plaintiff Crumrine to work with others who were wearing Twin Hill uniforms while knowing that he would suffer a proximity reaction was a separate, intentional tort by American.

373.    Plaintiff Preston had adverse reactions while wearing the Twin Hill uniform. As a result, on or about December 5, 2016, she informed her supervisor that she would stop wearing them because of her experience. But Plaintiff Preston continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. Plaintiff Preston filed an Injury on Duty report to American sometime on or about December 2016, concerning her reactions while wearing the Twin Hill uniforms. Nonetheless, despite not wearing the Twin Hill uniform, Plaintiff Preston requested leave under the Family and Medical Leave Act on three separate occasions from 2016 to 2018 because of her reactions to the uniforms. At no time did American ever reassign Plaintiff Preston so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Preston was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Preston to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

374.    Plaintiff Onody had adverse reactions while wearing the Twin Hill uniform. As a result, when she returned to work from an unrelated surgery sometime on or about July 2017, she

returned wearing an alternative uniform. But Plaintiff Onody continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. Plaintiff Onody reported her uniform reactions to the APFA on numerous occasions thereafter (for reporting to American), including a Uniform Reactions Report on or about August 17, 2017. At no time did American ever reassign Plaintiff Onody so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Onody was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Onody to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

375.    Plaintiff Julie Burke had adverse reactions while wearing the Twin Hill uniform. But Plaintiff Julie Burke continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On or about October 2016, Plaintiff Julie Burke stopped wearing the Twin Hill uniform because of reactions to them and began wearing an alternate uniform. On or about July 10, 2017, Plaintiff Julie Burke emailed Jill Surdek, a Vice President at American, that she was still experiencing reactions to the Twin Hill uniforms despite being out of them since October 2016. On or about September 27, 2017, at a Purser Seminar in Chicago, Plaintiff Julie Burke informed several Base Managers that she could not be near the Twin Hill uniforms without getting a reaction. On or about May 22, 2018, Plaintiff Julie Burke emailed a Director of Flight Services, Senior Base Manager, and Base Operations Manager regarding a proximity reaction she experienced while working near a colleague wearing Twin Hill, and followed up these managers via email and phone again in July to inquire if the situation had been addressed. On or about July 19, 2018, Plaintiff Julie Burke called her manager

to discuss a confrontation with a colleague regarding her wearing an alternative uniform after informing this colleague they she would like to keep an arm's distance away. During her conversation with her manager regarding this incident, her manager told Plaintiff Julie Burke not to ask other employees to stay an arm's distance away, and she should tell her colleagues that her "body is inadequate," and that it was her fault she was having issues being in proximity to the uniform. Her manager informed her that she would be terminated if she could not perform all her duties in close proximity with other Flight Attendants wearing Twin Hill. At no time did American ever reassign Plaintiff Julie Burke so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Julie Burke was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Julie Burke to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

376.     Plaintiff Behnke never wore the Twin Hill uniforms to work. Nonetheless, Plaintiff Behnke experienced adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On or about March 1, 2017, Plaintiff Behnke returned from leave wearing an alternative uniform she purchased off the rack. She called American's uniform reaction hotline after experiencing a proximity reaction, and told them that she was reacting despite wearing an alternative uniform. On or about July 2017, a base manager commented verbally that Plaintiff Behnke was wearing a non-Twin Hill scarf and inquired if she would wear the Twin Hill scarf. Plaintiff Behnke replied she would prefer to be able to breathe. At no time did American ever reassign Plaintiff Behnke so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Behnke was suffering, and would continue

to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Behnke to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

377. Plaintiff Edward Burke had adverse reactions while wearing the Twin Hill uniform. On or about January 2017, Plaintiff Edward Burke filed an Injury on Duty report regarding reactions to wearing the uniforms. Thereafter, Plaintiff Edward Burke informed his Office Manager that he would revert to wearing his old blue uniform because of his reactions to the uniforms. From his various communications with management American knew that Plaintiff Edward Burke was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate his suffering knowingly continued to cause him bodily harm. At no time did American ever reassign Plaintiff Edward Burke so that he would not have to work around the Twin Hill uniforms. Each time that American assigned Plaintiff Edward Burke to work with others who were wearing Twin Hill uniforms while knowing that he would suffer a proximity reaction was a separate, intentional tort by American.

378. Plaintiff Hamdan had adverse reactions while wearing the Twin Hill uniform. As a result, on or about September 2016, she stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Plaintiff Hamdan continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On September 30, 2016, Plaintiff Hamdan informed her supervisor that she would no longer be wearing the uniforms because of her reactions to them. Plaintiff Hamdan on or about December 2016, filed with the APFA (for purposes of reporting to American) that she was still reacting to the Twin Hill uniforms, despite not wearing them anymore. At no time did American ever reassign

Plaintiff Hamdan so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Hamdan was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Hamdan to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

379.    Plaintiff Isaac had adverse reactions while wearing the Twin Hill uniform. As a result, on or about November 2016, she stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Plaintiff Isaac continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On January 5, 2017, Plaintiff Isaac emailed Doug Parker and Hector Adler, senior American executives, demanding a recall of the Twin Hill uniforms. On May 17, 2017, Plaintiff Isaac again emailed senior American executives, including Robert Isom, Suzanne Boda, Douglas Parker, and Jull Surdek regarding the uniforms. On or about June 21, 2017, Plaintiff Isaac submitted a reaction report to the APFA regarding her proximity reactions to the uniforms. On or about June 27, 2017, Plaintiff Isaac emailed Jill Surdek regarding measures she was taking in attempting to avoid having proximity reactions, including switching to glasses and cleaning the jump seats she sits in during flights. Plaintiff Isaac also exchanged emails with Jill Surdek on July 11, 2017, regarding her ongoing treatment of reactions to the uniforms. On or about August 1 and 28, 2017, Plaintiff Isaac emailed the APFA specifically regarding proximity reactions suffered by her and many others. On or about August 29, 2017, Plaintiff Isaac informed the APFA in order to correct errors when recounting her proximity reactions to the uniforms, after she had stopped wearing the Twin Hill uniforms. At no time did American ever reassign Plaintiff Isaac so that she would not have to work

around the Twin Hill uniforms. American knew that Plaintiff Isaac was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Isaac to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

380. Plaintiff Anderson had adverse reactions while wearing the Twin Hill uniform. As a result, on or about July 2017, she stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Plaintiff Anderson continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed Envoy and American of this problem. On or about July 20, 2017, Plaintiff Anderson informed an Envoy Inflight service manager that she could no longer wear the uniform, and was subsequently advised to wear an alternate uniform. Thereafter, due to another proximity reaction, on or about September 30, 2017, she again contacted Envoy's Inflight service office and subsequently contacted an Inflight service manager regarding her reactions. On or about April 27, 2018, Plaintiff Anderson again contacted an Inflight service manager regarding her proximity reactions. On or about May 15, 2018, Plaintiff Anderson emailed an American flight service manager that she had a reaction to the uniform, and had contacted the Inflight office that morning and was not able to be at the airport due to proximity reactions. On or about August 14, 2018, Plaintiff Anderson submitted Fitness for Duty Certification that indicated she was not fit for duty because of her proximity reactions to the Twin Hill uniforms. At no time did  Envoy or American ever reassign Plaintiff Anderson so that she would not have to work around the Twin Hill uniforms. Envoy and American knew that Plaintiff Anderson was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that

- 94 -

Envoy and American assigned Plaintiff Anderson to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

381.     Plaintiff Maginn had adverse reactions while wearing the Twin Hill uniform. As a result, on or about September 6, 2017, he stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Plaintiff Maginn continued to experience adverse reactions when he worked around others who wore the Twin Hill uniforms, and informed American and PSA of this problem. On or about September 21, 2017, Plaintiff Maginn emailed PSA's Manager of Inflight Services regarding his reactions to the uniforms despite not wearing them anymore. On or about September 27, 2017, Plaintiff Maginn again emailed PSA's Manager of Inflight Services regarding his reactions to the uniforms. On or about December 6, 2017, Plaintiff Maginn emailed PSA's Director of Inflight Services regarding his reactions to the uniforms. Plaintiff Maginn also applied for leave under the Family and Medical Leave Act on April 10, 2018, due to his proximity reactions to the uniforms. American and PSA knew that Plaintiff Maginn was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate his suffering knowingly continued to cause him bodily harm. At no time did PSA or American ever reassign Plaintiff Maginn so that he would not have to work around the Twin Hill uniforms.  Each time that American and PSA assigned Plaintiff Maginn to work with others who were wearing Twin Hill uniforms while knowing that he would suffer a proximity reaction was a separate, intentional tort by American.

382.     Plaintiff Drake had adverse reactions while wearing the Twin Hill uniform. As a result, sometime on or about late 2017, she stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Plaintiff Drake continued to experience adverse reactions when

she worked around others who wore the Twin Hill uniforms, and informed American of this problem. Plaintiff Drake spoke with her supervisor numerous times over the course of eight to nine months since she has been out of the Twin Hill uniforms regarding her proximity reactions. As recently as September 2018, she showed her supervisor reactions on her neck. At no time did American ever reassign Plaintiff Drake so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Drake was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Drake to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

383. Plaintiff Boxtel had adverse reactions while wearing the Twin Hill uniform. But Plaintiff Boxtel continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On or about December 8, 2016, Plaintiff Boxtel informed her supervisor that she was going to not wear the Twin Hill uniforms because of her reactions to them. Then, on or about January 5, 2017, she informed her supervisor by phone that she wanted to file an Injury on Duty report with American due to reactions she had suffered on or about January 3, 2017, that was attributable to the uniforms, despite her not wearing the Twin Hill uniforms anymore. At no time did American ever reassign Plaintiff Boxtel so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Boxtel was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Boxtel to work with others who were wearing Twin Hill uniforms

while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

384.    Plaintiff Nyakas had adverse reactions while wearing the Twin Hill uniform. But Plaintiff Nyakas continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On or about April 2017, Plaintiff Nyakas stopped wearing the Twin Hill uniform because of reactions to them and began wearing an alternate uniform. On or about December 2017, Plaintiff Nyakas's Flight Service Manager noted that Plaintiff Nyakas was wearing an alternate uniform and expressed concern that she was unable to wear the Twin Hill uniform because of her reaction. Thereafter, on or about January 2018, Plaintiff Nyakas notified the Purser Manager of the adverse reactions she was still experiencing because of the uniforms and was advised not to work her assigned trip and was subsequently sent to American's medical unit. Shortly thereafter, she received a voicemail from her Flight Service Manager who expressed regret that she was still experiencing reactions to the uniforms. She had been out of the uniforms for over a year at this point. At no time did American ever reassign Plaintiff Nyakas so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Nyakas was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Nyakas to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

385.    Plaintiff Endicott had adverse reactions while wearing the Twin Hill uniform. As a result, sometime on or about April 2017, she stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Plaintiff Endicott continued to experience adverse reactions

when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. Thereafter, she filed a reaction report with the APFA (for reporting to American), regarding her reactions to the Twin Hill uniforms. She also filed an Injury on Duty Report on or about July 2017, regarding her reactions to the Twin Hill uniforms. At no time did American ever reassign Plaintiff Endicott so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Endicott was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Endicott to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

386. Plaintiff Patterson had adverse reactions while wearing the Twin Hill uniform. But Plaintiff Patterson continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On or about October 2016, she stopped wearing the Twin Hill uniform because of reactions to them and began wearing an alternate uniform. Plaintiff Patterson notified her union on October 13, 2016 and filed an Injury on Duty report with American on October 15, 2016. Thereafter, despite being out of the uniform, Plaintiff Patterson submitted reaction reports to APFA (for reporting to American) on January 17, 2017, January 23, 2017, and February 8, 2017. At no time did American ever reassign Plaintiff Patterson so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Patterson was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Patterson to work with others who were wearing Twin Hill

uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

387.    Plaintiff Gordon had adverse reactions while wearing the Twin Hill uniform. As a result, she never had occasion to wear the Twin Hill uniforms to work and also wore an alternate uniform. But Plaintiff Gordon continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. With the exception of the Twin Hill scarf, on or about February 2017, Plaintiff Gordon stopped wearing the Twin Hill uniform and began wearing an alternate uniform. She eventually stopped wearing the scarf on or about April 2017. Nonetheless, Plaintiff Gordon informed her supervisor at American on or about January 2017 that she would not be wearing the uniform, and also reported the same to the APFA by submitting a reaction report (for reporting to American). Then on or about April 2017, Plaintiff Gordon informed her supervisor and an APFA union board member that she was still having reactions to the uniforms despite being out of them completely. On or about May 2017, Plaintiff Gordon again informed her supervisor that she was continuing to have proximity reactions to the Twin Hill uniforms. At no time did American ever reassign Plaintiff Gordon so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Gordon was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Gordon to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

388.    Plaintiff Joy had adverse reactions while wearing the Twin Hill uniform. As a result, she never had occasion to wear the Twin Hill uniforms to work and also wore an alternate uniform. But Plaintiff Joy continued to experience adverse reactions when she worked around

others who wore the Twin Hill uniforms, and informed American of this problem. On or about October 3, 2016, Plaintiff Joy was contacted by an American flight service manager, for purposes of submitting an Injury on Duty report regarding her proximity reactions. On or about November 6, 2017, Plaintiff Joy filed another Injury on Duty report regarding her proximity reactions. On December 6, 2017, via email, American reached out to Plaintiff Joy to become a wear tester for the new uniform based on her reactions to the Twin Hill uniforms. In February 2017, Plaintiff Joy took approximately two weeks of unpaid voluntary leave to recuperate, in part, with her continued proximity reactions to the Twin Hill uniforms. During this period, she spoke with an American flight service manager about her continued proximity reactions to the Twin Hill uniform. On or about March 22, 2017, Plaintiff Joy filed another Injury on Duty report regarding her proximity reactions. At no time did American ever reassign Plaintiff Joy so that she would not have to work around the Twin Hill uniforms. Moreover, on numerous occasions, Plaintiff Joy emailed a flight service manager, informing them of her proximity reactions, including emails sent on or about October 22, 2016, November 6, 2016, and January 24, 2017. American knew that Plaintiff Joy was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Joy to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

389.    Plaintiff Runkle had adverse reactions while wearing the Twin Hill uniform. But Plaintiff Runkle continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On or about February 27, 2017, Plaintiff Runkle called American's uniform hotline to switch from the Twin Hill uniforms because of her reactions. At some point after switching to an alternate uniform, she notified her

- 100 -

Supervisor that she was still reacting and she was continuing to experience reactions to the uniforms. At no time did American ever reassign Plaintiff Runkle so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Runkle was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Runkle to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

390.    Plaintiff Vera had adverse reactions while wearing the Twin Hill uniform. As a result, on or about March 9, 2017, she stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Plaintiff Vera continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On or about March 9, 2017, she called American's uniform hotline and was informed that she did not need to wear the Twin Hill uniform and was advised to purchase her own alternative uniform pieces. On or about May 31, 2017, Plaintiff Vera spoke with an American Vice President and spoke about the difficulties caused by the uniforms, and specifically represented that despite not wearing the Twin Hill uniforms, she was experiencing reactions when exposed to individuals who still were wearing the Twin Hill uniforms. On or about June 2017, Plaintiff Vera spoke with her Flight Service Manager about reactions to the uniforms where she was advised to file an Injury on Duty report, but stated she was reluctant to do so because she heard they were all being denied. On or about June 17, 2017, Plaintiff Vera met with a Flight Service Manager regarding a proximity reaction she had experienced on a trip, and had a subsequent conversation with another Flight Service Manager where she was advised to file an Injury on Duty report, which she did on this instance because of the increasing severity of her reactions. Her Injury on Duty was denied. On or

about June 23, 2017, Plaintiff Vera had a meeting with American representatives, including her Flight Service Manager, regarding her ongoing proximity reactions to the uniforms. At that meeting, Plaintiff Vera provided summary materials regarding her reactions and other paperwork provided to her supervisors, where it was advised she seek a position for temporary re-assignment for a position where she would be able to work from home. On or about July 2017, Plaintiff Vera advised her Flight Service Manager that she had told her insurer regarding multiple proximity reactions. On or about January 2018, Plaintiff Vera advised her Flight Service Manager that it be notated that she was having reactions to the Twin Hill uniforms so that it would not be called into question why she was not wearing the Twin Hill uniform. This was done prior to transferring to another base of operations. On or about July 13, 2018, Plaintiff Vera, via phone, informed American crew tracking that she would need to change positions on an aircraft because she was experiencing reactions sitting in close proximity to another flight attendant wearing Twin Hill. On or about July 2018, Plaintiff Vera had a telephone communication with Sedgwick, the entity handling Injury on Duty reports for American, regarding the previous denial of the Injury on Duty report she filed. During that call, she described the proximity reaction she experienced on or about July 13, 2018. At no time did American ever reassign Plaintiff Vera so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Vera was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Vera to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

391.    Plaintiff Kresko had adverse reactions while wearing the Twin Hill uniform. As a result, in April 25, 2018, she stopped wearing the Twin Hill uniform and began wearing an

alternate uniform. But Plaintiff Kresko continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On or about May 17, 2018, Plaintiff Kresko contacted American's uniform team regarding reactions that she was still experiencing reactions despite not wearing the Twin Hill uniforms. That same day she spoke with the Flight Office regarding her uniform reactions. On May 23, 2018, Plaintiff Kresko spoke with the Flight Office explaining her proximity reactions to the Twin Hill uniforms and inquired if the office had an alternate non-Twin Hill tie available. Despite being told just moments prior she was reacting to the uniforms, the Flight Office representative handed her a Twin Hill tie. On or about June 11, 2018, Plaintiff Krekso called the Flight Office again seeking reimbursement for new pants she had bought due to proximity reactions to the Twin Hill uniforms, and was simply told that no reimbursement would be provided. On or about July 6, 2018, Plaintiff Kresko filed an Injury on Duty report regarding my reactions to the uniforms which was subsequently denied on July 12, 2018. At no time did American ever reassign Plaintiff Kresko so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Kresko was suffering, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Kresko to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

392.     Plaintiff Jones had adverse reactions while wearing the Twin Hill uniform. As a result, in October 2016, she stopped wearing the Twin Hill uniform and began wearing an alternate uniform. But Plaintiff Jones continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On or about December 13, 2016, Plaintiff Jones emailed among others, high level American executives,

including Doug Parker, Hector Adler, Robert Isom, Kerry Philipovitch, regarding the inadequacy of offering "replacement" uniforms and demanding a recall of all Twin Hill uniforms as reactions would otherwise continue. Plaintiff Jones had verbal discussions regarding her attendance, where she informed American personnel, including a base manager, on or about September 12, 2017, that she did not wear the Twin Hill uniforms because she felt that being around them was causing her adverse reactions to worsen. On or about April 30, 2017, she also called American regarding her anxiety with the uniforms. On or about January 29, 2018, Plaintiff Jones emailed Jill Surdek, a Vice President at American, outlining her reactions to the uniforms across the past year and seeking reimbursement for clothing purchased off the shelf because she is unable to wear the Twin Hill uniforms. Plaintiff Jones submitted an application for leave under the Family and Medical Leave Act on July 16, 2018. Plaintiff Jones submitted an Injury on Duty report to American concerning her proximity reactions to the Twin Hill uniforms on or about November 3, 2016, March 19, 2017, May 29, 2017, and March 18, 2018. At no time did American ever reassign Plaintiff Jones so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Jones was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Jones to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

393.     Plaintiff Brasier had adverse reactions while wearing the Twin Hill uniform. But Plaintiff Brasier continued to experience adverse reactions when she worked around others who wore the Twin Hill uniforms, and informed American of this problem. On or about October 2017, Plaintiff Brasier stopped wearing the Twin Hill uniform because of her reactions to them and began wearing an alternate uniform. Plaintiff Brasier submitted a reaction report to APFA (for reporting

to American) on November 6, 2017, regarding her reactions to the Twin Hill uniforms. At no time did American ever reassign Plaintiff Brasier so that she would not have to work around the Twin Hill uniforms. American knew that Plaintiff Brasier was suffering, and would continue to suffer, proximity reactions, and instead of taking steps to ameliorate her suffering knowingly continued to cause her bodily harm. Each time that American assigned Plaintiff Julie Brasier to work with others who were wearing Twin Hill uniforms while knowing that she would suffer a proximity reaction was a separate, intentional tort by American.

394. Plaintiffs Akers, Weigel, Kelly, Bean, and Stuart, despite continuing to suffer from proximity reactions, have not yet reported their proximity reactions to American but this pleading and the earlier pleadings to which they were parties served and serve as such notification.

395. Plaintiffs Kimberly Johnson, McCord, Austin, and Li had no occasion to have proximity reactions because they have been grounded since their reactions were too severe to work and thus have not returned to work since such reactions.

396. Plaintiff Branch has yet to experience a proximity reaction, but takes precautionary measures to minimize contact with other flight attendants.

397. Plaintiff Terry had adverse reactions while wearing the Twin Hill uniform. He filed an Injury on Duty report on October 25, 2017, for an injury that occurred on September 28, 2017. That Injury on Duty was denied on October 31, 2017.

398. Plaintiffs, as well as thousands of other American Airlines employees, are caught in a nightmarish "Groundhog Day"—a never ending cycle of (a) going to work, (b) experiencing debilitating symptoms of headaches, fatigue, respiratory problems, vertigo and rashes as a result of working in and around persons who are wearing the new uniforms, (c) leaving work and starting to recuperate, (d) only to repeat this again when they return to work.

399. And American continues to pile on. American recently announced a new attendance policy effective October 1, 2018, lowering the amount of sick leave days that flight attendants may take, which will significantly restrict its employees' ability to work through the problems they are experiencing from the Twin Hill uniforms. This appears calculated to rid the American work force of proximity reactors and to avoid offering those employees leave with full benefits until the Twin Hill uniforms are removed, as recommended by NIOSH and discussed below.

**The January 2018 NIOSH Report**

400. On January 10, 2018, the National Institute for Occupational Safety and Health ("NIOSH") ("NIOSH Report") issued a report, attached hereto as Exhibit 2, apparently in response to the complaint filed by a flight attendant as alleged above.

401. From the NIOSH report, it appears that American and Twin Hill made one-sided presentations to NIOSH and hid from NIOSH that they were both aware that *thousands* of American employees were suffering from proximity reactions. For example, NIOSH reported that based upon what had been shared with it that, "Symptoms reported to occur while not wearing the uniform, but in the proximity of others wearing the new uniform, were reported 47 times." That was a vast understatement of the number of proximity reactors of which American was aware.

402. With regard to chemical mixtures of individual chemicals that are at "subthreshold" levels on their own, NIOSH stated: "Laboratory analyses showed measureable amounts of known irritants and sensitizers in a subset of uniform pieces. *There is evidence in the literature that subthreshold concentrations of irritants can have an additive effect on the skin [Tur et al. 1995]. For example, if the skin is exposed to only one of these irritants, no visible changes are seen, but if exposed to several, the skin may develop an irritant response.*" (emphasis added). Thus, NIOSH recognized the threat posed by chemical mixtures.

403.    Furthermore, NIOSH stated that "One study noted that it is currently difficult to detect newer textile allergens because chemicals used in textiles are not always declared [Lisi et al 2014]." That is precisely the case here, as there is no evidence currently produced to Plaintiffs that either American or Twin Hill sought such chemical declarations at all.

404.    NIOSH also noted that formaldehyde may leach out of the uniforms:

A review article on textile formaldehyde releasing finishes stated that the amounts of free formaldehyde in textiles has decreased drastically in recent years and are generally low [GAO report 2010; DeGroot and Maibach 2010]. However, if cured incorrectly (not heated to a certain temperature for  specific length of time), the finishing chemicals may not bind to the fabric fibers as they should and in certain conditions such as sweating, high heat, and high humidity, the chemicals may leach out [DeGroot and Maibach 2010]. Although the use of textile resins with lower formaldehyde release has resulted in a decrease in the occurrence of formaldehyde-associated textile allergic contact dermatitis, it is still commonly seen with highly finished garments such as uniforms [Mobolaji-Lawal and Nedorost 2015].

405.    Furthermore, as to any "dose/response" evidence (one of the primary bases for the negative result in the Alaska Airlines trial), NIOSH noted that this is essentially meaningless: "The concentration at which each textile chemical causes sensitization has not been established for most chemicals, even for known dermal sensitizers."

406.    NIOSH went on to comment about the limitations of patch testing:

Skin patch testing is useful in determining whether someone has allergic contact dermatitis; however, there are limitations. There are a limited number of allergens that are included in skin patch test kits, including the specific series that includes textile allergens. If an individual is not tested to the pertinent allergen, no reactions are noted on evaluation and the individual might be erroneously considered to not have skin allergy. Patch testing with actual pieces of the uniform may be a better way of detecting allergic contact dermatitis. However, results may be falsely negative since the conditions that elicit leaching of dyes and resins from the fabric, such as sweating and friction, may not be the same when placing a piece of the textile on the skin of the back [Mobolaji-Lawal and Nedorost 2015].

Thus, ████████████████████████████████████████████████ was an impossible burden that merely artificially resulted in the denial of IODs. And it shelved Dr.

Scheman, the one person in the United States capable of developing a customized patch test for the Twin Hill uniforms and skin problems.

407.     Furthermore, with regard to the continued exposure of American's employees to the Twin Hill uniforms, NIOSH noted that employees were at risk for worsening conditions as exposure continues:

> Persistent postoccupational dermatitis (PPOD) can occur following allergic or irritant contact dermatitis. PPOD begins as a clear-cut occupational contact dermatitis. It initially gets better when removed from exposure, but with time, the capacity for resolution is lost and persistent dermatitis develops. Predictive factors for PPOD include duration of disease, inability to avoid causative agents, and age [Meding et al. 2005].
> . . .
> Many skin disorders, including contact dermatitis, have been shown to have a significant impact on quality of life [Lan et al. 2008; Fowler et al. 2006; Cvetkovski et al. 2005; Kadyk et al. 2003]. Rapid identification and treatment of contact dermatitis is important in preventing longer-term symptoms.

408.     American failed to identify or help employees who were suffering from contact dermatitis to seek treatment. To the contrary, American contended the uniforms were safe, suggesting no treatment was needed.

409.     Contrary to American's repeated proclamations that the Intertek testing proved that the Twin Hill uniforms were safe, NIOSH noted that with regard to the chemicals identified by Intertek, "For most of the identified sensitizing agents, there is little data available in the scientific literature or within regulatory guidelines about the amount of dermal exposure necessary to cause sensitization or to cause a reaction in a sensitized individual. This lack of data made evaluating the potential of sensitization for most chemicals and metals difficult." Thus, according to NIOSH, searching for one or even multiple chemicals as the culprits was a fools' errand.

410.     Thus, contrary to American's repeated assertions, the literally thousands of employees that reported reactions were not imagining their symptoms, as even at subthreshold

amounts as per OEKO-TEX or other "standard" setting organizations, there are no set amounts that do or do not cause reactions. Rather, the critical question to be asked in such events is, "Are people reacting?" The answer here is undoubtedly yes; American knew this as early as late 2014/early 2015.

411.    In fact, NIOSH pointed out how Intertek's testing report had failed to provide key information about the "unknown" chemicals—the organic compounds that can pose such dangers.

412.    As for the symptoms that employees were experiencing, NIOSH noted that they ranged far wider than just skin issues as American had Intertek investigate. NIOSH listed symptoms reported to the APFA:

> Reported skin problems included hives, rashes, blistering, itching, discoloration, bruising, open sores, sunburn-like rash, chemical-like rash, and swelling. *Reported respiratory problems included shortness of breath, wheezing, cough, congestion, asthma, sore throat, sinusitis, and coughing up blood. Reported eye problems included irritation, excessive tearing, redness, infections, styes, conjunctivitis, swelling, bloodshot eyes, subconjunctival hemorrhage, spasms, and twitching. Reported musculoskeletal problems included joint pain, muscle aches and spasms, fibromyalgia, muscle fatigue, and muscle atrophy. Reported gastrointestinal problems included stomach discomfort or irritation, nausea, diarrhea, and vomiting. Reported neurological problems included insomnia, headaches/migraines, cognitive issues, and depression. Other reported symptoms or signs reported as related to the uniform included thyroid issues, weight gain or loss, irregular menstrual cycles, sleep disturbances, night sweats, excessive hair loss, palpitations, increased or decreased blood pressure, swollen lymph nodes, recurring sinus and bronchial infections, laryngitis, overall edema, fatigue and exhaustion.* Skin symptoms and respiratory symptoms were the most commonly reported symptoms.

(emphasis added).

413.    NIOSH summarized what American and Twin Hill told it with respect to the wear testing: "From late September 2015 until late October 2015, a second wear test with uniforms designed by Twin Hill was conducted. The wear test survey focused on fit, function, construction, and style. Health symptom questions were not included." That description of the second wear test is wrong. The second wear test was conducted because of the health issues raised in the first wear

test, and in fact revealed additional health issues. Thus, either NIOSH misunderstood what American and Twin Hill told it, or American and Twin Hill lied to NIOSH about the second wear test. And as alleged above this wear test was only one of several and in each instance wear testers reported ill-health from the Twin Hill uniforms.

414.    NIOSH also confirmed that American and Twin Hill were aware of adverse reactions before the formal rollout in September 2016: "According to the employee requestors and APFA representatives, employees began reporting symptoms they believed to be related to touching or wearing the Twin Hill uniform shortly after uniforms were delivered beginning in May 2016. APFA began a webpage on August 11, 2016 which solicited reports of health effects potentially related to the new uniforms."

415.    NIOSH noted that Twin Hill stated that it had 14 different mills manufacture the fabric used for the uniforms, and while most had OEKO-TEX certificates, two did not.

416.    NIOSH also noted that the fabric was then shipped from the fabric mills to 12 "separate independent factories to assemble the garments." Three of those factories were in China, three in Vietnam, two in Bangladesh, two in Sri Lanka, one in Indonesia, and one in Hungary.

417.    Unlike American, NIOSH actually spoke to employee reactors, "Of the 50 employees, 29 reported skin irritation, 13 reported respiratory symptoms, and nine reported eye symptoms after wearing the uniform. Some of the employees reported fatigue, flu-like body aches, and changes in thyroid function and menstrual patterns."

418.    And unlike American's public statements—particularly those provided to employees after reactions were being reported, NIOSH put the lie to any claim that the Intertek testing proved that the uniforms were free of chemicals that could cause adverse reactions.

419.    In its letter to American dated January 10, 2018 (the prior excerpts were drawn

from the appendix to its letter), NIOSH only focused on the reported skin and respiratory symptoms.

420.    While no one chemical was found above thresholds, NIOSH again repeated that mixtures could provide additive effect and provoke reactions.

421.    Most important, however, were NIOSH's conclusions and recommendations. While NIOSH did not have enough data to reach conclusions about proximity exposures—likely because American did not tell NIOSH that it estimated that as many as 3,500 employees were proximity reactors—NIOSH nonetheless concluded: "It is possible that textile chemicals in the uniforms or the physical irritant properties of the uniform fabrics have caused skin symptoms among some AA employees who wore the uniforms. Irritant and allergenic compounds were identified in some uniform garments, which could cause these skin symptoms."

422.    Most important, however, was NIOSH's recommendation No. 6:

> Remove employees with physician-diagnosed health problems related to the uniform from exposure, and retain pay and benefits for these employees. Follow recommendations from the diagnosing physician concerning return-to-work for employees previously removed because of work-related exposures. In some cases of allergic asthma and allergic contact dermatitis, employees may need to be reassigned (with retention of pay and employment status) with work conditions in which exposure is minimal or nonexistent.

423.    NIOSH also noted that skin reactions can result in respiratory problems, citing highly regarded experts in this area, including from Yale University.

424.    Thus, based upon what it saw, even though important information was withheld from it, NIOSH assessed the facts and concluded that employees who were diagnosed as reactors should be granted leaves of absence with full pay until they stop reacting or as is the most likely case, the cause of the symptoms, the uniforms, are removed from the workplace and the workplace is cleaned.

425.    As set forth in the prayer for relief below, Plaintiffs seek, in the alternative to

removing and replacing the Twin Hill uniforms, that the Court adopt NIOSH's recommendation No. 6 and that when an employee provides a doctor's diagnosis of a health problem related to the uniforms, at the employee's election he or she should be awarded paid leave with full benefits.

426.    The burden on American will be minimal compared to the continued suffering that the employees have and continue to suffer. Furthermore, if as American contends the amount of reactors is small, to comply with the NIOSH recommendation should not be great. And if the number is large enough to make this recommendation too burdensome then the uniforms should be removed from the workplace.

427.    Over half of the pilots have already ordered alternative uniforms. Over 14,000 flight attendants are already wearing alternative uniforms—from the Aramark alternative uniforms to their old blue uniforms.

428.    The burden on American of requiring all other employees to stop wearing the Twin Hill uniforms, until a company-wide replacement is available, pales in comparison to the suffering that thousands of American employees will suffer over the next 2-4 years.

## V.  CLASS ACTION ALLEGATIONS

429.    Plaintiffs bring Count I through VI, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and(b)(2) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All American Airlines current and former employees who were exposed to Twin Hill's uniforms on or after September 1, 2016 (the "Uniform Class").

Excluded from the Uniform Class are Defendants, their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Uniform Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to

revise the Uniform Class definition based upon information learned through discovery.

430.     Plaintiffs bring Counts I, II, and V, as set forth below, on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and(b)(2) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All American Airlines current and former employees who were exposed to Twin Hill's uniforms, reported a problem with exposure to Twin Hill's uniforms to American Airlines, and who reacted to the Twin Hill uniforms after such a report (the "Proximity Reactor Class").

Excluded from the Proximity Reactor Class are Defendants, their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Proximity Reactor Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Proximity Reactor Class definition based upon information learned through discovery.

431.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because all of the elements of Rule 23 (a) and (b)(2) are met here, as Plaintiffs can prove the elements of their and the class' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim, Defendants continue to act and refuse to discontinue actions which are harmful to the Classes as a whole and Plaintiffs seek equitable relief against Defendants on behalf of themselves and the Classes.

432.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that individual joinder of all members of the Classes is impracticable. To date, tens of thousands of American Airlines employees have worn, or been exposed to the unsafe uniforms and thousands have made complaints to their respective unions and American. The precise number of Class members and their addresses is presently unknown to Plaintiffs, but may

be ascertained from the books and records of Twin Hill and American Airlines as well as the AFA, APFA and APA, as they maintain adverse reaction reports files for those who are currently reported as reactors though it is anticipated that this number will increase over time as more people become sensitized to the uniforms. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

433. **Commonality – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(2).** This action involves common questions of law and fact, including, without limitation:

(a) Whether the uniforms supplied by Twin Hill and American to American Airlines' employees are unsafe and dangerous;

(b) Whether and when Defendants knew that the uniforms it supplied to American Airlines' employees were unsafe and dangerous; and

(c) Whether Plaintiffs and the other Class members are entitled to equitable relief, including but not limited to, medical monitoring, injunctive or declaratory relief.

434. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the claims of the other Class members because, among other things, all Class members are at risk for short and long-term injuries resulting from exposure to the Twin Hill uniforms.

435. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class members they seek to represent; they have retained counsel competent and experienced in complex and class action litigation; and Plaintiffs intend to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

436. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Both Twin Hill and American have acted or refused to act on grounds generally applicable to

Plaintiffs and the other Class members, thereby making appropriate final injunctive and declaratory relief, as described below.

## VI. CLAIMS ALLEGED

### COUNT I
### Battery
**(On behalf of all Plaintiffs individually against both Defendants,**
**On behalf of the Uniform Class against Twin Hill,**
**On behalf of the Proximity Reactor Class against American)**

437.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 436 above as if fully set forth herein.

438.   Defendants American and Twin Hill's actions constitute an intentional and malicious battery committed by them against Plaintiffs and the Class members as each set forces in motion which has resulted in continuing unauthorized and unconsented contact with the Plaintiffs and the Classes.

439.   In this regard, both Defendants intended and did cause and continue to cause Plaintiffs and the Classes to come in contact with a substance (the uniforms) or substances (the chemicals in the uniforms) in a manner that was offensive, unauthorized and unconsented.

440.   Defendant Twin Hill manufactured and distributed, and American distributed and continues to distribute as well as permit its employees to wear unsafe and dangerous uniforms which have and continue to cause unauthorized and unconsented contacts to Plaintiffs and the Classes.

441.   Defendants knew that these uniforms were unsafe and dangerous as early as when they received the results of the pre-launch testing of the uniforms on pilots and the fact that the APA specifically requested that they not introduce the uniforms into the workplace.

442.    Defendant American knew that each of the Plaintiffs and the Proximity Reactors Class has experienced and continues to experience adverse reactions to the Twin Hill uniforms, regardless of whether or not Plaintiffs and the Proximity Reactors Class were wearing the Twin Hill uniforms themselves. Further, Defendant American knows, by name, each of the Plaintiffs and the Proximity Reactors Class to be proximity reactors, yet nonetheless requires Plaintiffs and the Proximity Reactors Class to work around the uniforms, knowing that the Plaintiffs and the Proximity Reactors Class are being injured as the result of continued exposure to the uniforms.

443.    As of at least August 2016 and to this date, both Defendants were fully aware that the uniforms were unsafe and dangerous, that they were inflicting and continue to inflict batteries upon Plaintiffs and the Classes. Plaintiffs and the Classes have suffered damages as a result of Defendants' conduct.

## COUNT II
### Intentional Infliction of Emotional Distress
### (On behalf of all Plaintiffs individually against both Defendants,
### On behalf of the Uniform Class against Twin Hill,
### On behalf of the Proximity Reactor Class against American)

444.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 436 above as if fully set forth herein.

445.    Defendants' conduct as alleged herein has been both extreme and outrageous.

446.    Defendants have both caused a dangerous substance to be introduced and remain in or near the Plaintiffs and the Classes.

447.    Plaintiffs, and thousands of other American Airlines employees, encounter severe emotional distress at work because they attend work knowing that (1) their symptoms will worsen with continued exposure to Twin Hill's uniforms and (2) their employer, a company that many

have worked for decades, and with full knowledge of the harms caused by these uniforms, as well as their names, is intentionally causing physical injury to them on a daily basis.

448.     Defendant American has knowingly put Plaintiffs and the Proximity Reactor Class in an outrageous and unconscionable position of either (a) missing work, losing income, and losing any benefits of seniority, or (b) attending work and getting sick each time they attend.

449.     And for new hires, all of whom are on a probationary status and all of whom are given new Twin Hill uniforms, it is even more outrageous, as these employees must quietly endure this physical torture or lose the new jobs that they only recently obtained.

450.     Defendant American knows that each of the Plaintiffs and the Proximity Reactors Class continue to experience adverse reactions to the Twin Hill uniforms just by working around them or the places where persons have worked with them on, regardless of whether or not Plaintiffs and the Proximity Reactors Class were wearing the Twin Hill uniforms themselves. Further, Defendant American knows, by name, each of the Plaintiffs and the Proximity Reactors Class yet nonetheless requires Plaintiffs and the Proximity Reactors Class to continue to work around the uniforms, while knowing that the Plaintiffs and the Proximity Reactors Class are being injured as the result of continued exposure to the uniforms.

451.     As for Twin Hill, it too is guilty of outrageous and extreme conduct in that it has knowingly caused dangerous uniforms to continue to be in or near American Airlines employees and refuses to issue a recall.

452.     Such conduct has caused severe emotional distress and damages to the Plaintiffs and the Classes.

## COUNT III
### Strict Liability
### (On behalf of all Plaintiffs individually and the Uniform Class against Twin Hill only)

453.     Plaintiffs reallege and incorporate by reference the allegations contained in

paragraphs 1 through 436 above as if fully set forth herein.

454.    The uniforms provided by Twin Hill to American Airlines employees were at the point of manufacture and continue to be unreasonably dangerous in that they are the only possible cause of the thousands of adverse reactions that occurred in the American Airlines workforce after the introduction of the Twin Hill uniforms. The uniforms have caused Plaintiffs and other Uniform Class members to experience adverse medical reactions, including the cascade of health issues alleged above.

455.    The uniforms contained latent defects causing the uniforms to provoke the adverse reactions described above when they left Defendant Twin Hill's control and were provided to Plaintiffs and other American Airlines employees.

456.    As a result of Twin Hill's actions, Plaintiffs suffered individual damages. Plaintiffs seek an individual award of compensatory damages, pain and suffering, and any other relief to which they are entitled under the law.

457.    Since at least the fall of 2016 when American's flight attendants began to report adverse medical effects from wearing Twin Hill's uniforms, and possibly earlier, Twin Hill was aware of the unsafe nature of its uniforms. This conduct demonstrates malice, evil motive, or the reckless disregard for the rights of others such that an award of punitive damages is appropriate.

458.    Because Plaintiffs continue to work for American Airlines, and continue to be exposed to co-workers who are wearing Twin Hill's dangerous uniforms, Plaintiffs individually, and on behalf of the Class, seek to enjoin Twin Hill from selling any additional uniforms to American's employees and to require Twin Hill to recall from the market those uniforms it has already provided to American's employees. Plaintiffs further seek a declaration that the uniforms manufactured by Twin Hill for American's employees are unreasonably dangerous.

## COUNT IV
### Negligence
**(On behalf of all Plaintiffs individually and the Uniform Class against Twin Hill only)**

459.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 436 above as if fully set forth herein.

460.    Twin Hill had a duty towards Plaintiffs and the Uniform Class to provide uniforms that were safe and would not cause them harm such as the cascade of adverse reactions set forth above.

461.    Twin Hill breached that duty by providing uniforms that were not safe and that caused Plaintiffs to suffer injuries and the threat of future injuries.

462.    As a result of Twin Hill's actions, Plaintiffs suffered individual damages.  Plaintiffs seek individual awards of compensatory damages, pain and suffering, and any other relief to which they are entitled under the law.

463.    Since at least the fall of 2016 when American's flight attendants began to report adverse medical effects from wearing Twin Hill's uniforms, and possibly earlier, Twin Hill was aware of the unsafe nature of its uniforms. This conduct demonstrates malice, evil motive, or the reckless disregard for the rights of others such that an award of punitive damages is appropriate.

464.    Because Plaintiffs continue to work for American Airlines, and continue to be exposed to co-workers who are wearing Twin Hill's dangerous uniforms, Plaintiffs individually, and on behalf of the Uniform Class, seek to enjoin Twin Hill from selling any additional uniforms to American's employees and to require Twin Hill to recall from the market those uniforms it has already provided to American's employees. Plaintiffs further seek a declaration that the uniforms manufactured by Twin Hill for American's employees are unreasonably dangerous.

**COUNT V**
**Equitable Relief Including Medical Monitoring**
**(On behalf of all Plaintiffs individually against both Defendants,**
**On behalf of the Uniform Class against Twin Hill,**
**On behalf of the Proximity Reactor Class against American)**

465.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 436 above as if fully set forth herein.

466.   Plaintiffs and other Class Members have been, and continue to be, exposed to Twin Hill's dangerous uniforms by virtue of their employment at American Airlines.

467.   Plaintiffs and other Class Members have experienced and continue to experience adverse medical symptoms from the exposure to Twin Hill's uniforms, including skin rashes, ear and throat irritation, headaches, fatigue, vertigo, the triggering of various auto-immune conditions, and adverse effects on endocrine as well as liver functions.

468.   Some of the adverse medical effects that Plaintiffs and the Classes have suffered from the exposure to Twin's Hill's uniforms have latent effects, which may not become known until some later date.

469.   By failing to provide safe uniforms to American Airlines employees, and continuing to provide unsafe uniforms to American Airlines employees, Twin Hill is strictly liable and has also breached its duty of reasonable and ordinary care to the Plaintiffs and the Classes. Twin Hill's conduct has exposed the Plaintiffs and the Classes to on-going and future risks of harmful medical conditions.

470.   Defendant American knows that each of the Plaintiffs and the Proximity Reactors Class continue to experience adverse reactions to the Twin Hill uniforms on a daily basis since their proximity reactions were reported to American. Further, American knew, by name, each of

the Plaintiffs and the Proximity Reactors Class yet nonetheless required Plaintiffs and the Proximity Reactors Class to work around the uniforms thereafter, while knowing that the Plaintiffs and the Proximity Reactors Class were and continue to be injured as the result of continued exposure to the uniforms.

471. By reason of its battery upon Plaintiffs and the Proximity Reactor Class, American has exposed the Plaintiffs and the Proximity Reactor Class to on-going and future risks of harmful medical conditions.

472. Furthermore, all American employees exposed to the Twin Hill uniforms are at risk of future health problems.

473. As a proximate result of Defendants tortious conduct, Plaintiffs and the Classes have experienced an increased risk of developing additional medical conditions, including skin rashes, ear and throat irritation, headaches, fatigue, vertigo, the triggering of various auto-immune conditions, and adverse effects on endocrine as well as liver functions.

474. To remedy Defendants tortious conduct, Defendants should establish and fund a medical monitoring fund in an amount that will assist in diagnosing the adverse health effects experienced by Plaintiffs and the Classes now and in the future. This medical monitoring fund is reasonably necessary to reduce the risk to the Plaintiffs and the Classes of suffering long-term injuries, diseases and losses.

475. By monitoring and testing Plaintiffs and the Classes, the risk that Plaintiffs and the Classes will suffer long-term injuries, diseases and losses without adequate treatment will be significantly reduced.

476. Plaintiffs and the Classes seek an injunction creating a Court-supervised, Defendant-funded medical monitoring program that will facilitate the diagnosis of Plaintiffs and the Classes

for medical conditions resulting from their exposure to Twin Hill's unsafe uniforms. The medical monitoring fund remedy should include a trust fund to pay for the medical monitoring and diagnosis of Plaintiffs and the Classes as frequently and appropriately as necessary.

477.   Plaintiffs and the Classes have no adequate remedy at law in that monetary damages alone cannot compensate them for the risk of long-term physical and economic losses due to medical conditions resulting from their exposure to Twin Hill's uniforms. Without a Court-approved medical monitoring program as described above, or established by the Court, Plaintiffs and the Classes will continue to face an unreasonable risk of injury and disability, and remain undiagnosed.

### COUNT VI
**Fraud**
**(On behalf of all Plaintiffs against American,**
**On behalf of the Uniform Class against American)**

478.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 436 above as if fully set forth herein.

479.   As alleged above, American has knowingly tried to cover-up the dangers posed by the toxic Twin Hill uniforms. Specifically, as alleged in paragraphs 8, 102, 216, 241, and 255, American repeatedly told its entire workforce, including the Uniform Class, that the Twin Hill uniforms had been proven safe. That was untrue.

480.   This includes American's falsely portraying the uniforms as safe based upon testing that it knew was incomplete and then misrepresented the results to its workforce.

481.   All American employees were entitled to the truth, whether or not they were proximity reactors, because exposure to these uniforms may have long-term health effects for all exposed.

482.   American made those false statements to its entire workforce, which included

Plaintiffs and the Uniform Class, in order to induce them to continue working at American and to either wear or work around the Twin Hill uniforms.

483. Plaintiff and the Uniform Class relied upon American's false statements.

484. By covering-up the truth, thousands have relied upon the falsehoods perpetrated by American and have been injured and continued to be injured to this date. This is both fraud by affirmative misstatements as well as fraud by omission. By rolling out the Twin Hill uniforms in September 2016 when it knew that they posed dangers, American gave Plaintiffs and the Uniform Class the false belief that they were safe because reasonable employees naturally assume that their employers will provide them with safe uniforms.

485. Plaintiffs seek individual damages for the fraud perpetrated upon them as well as the Uniform Class by American.

486. On behalf of the Uniform Class, Plaintiffs seek an injunction requiring American to publicly disclose all of the information that it knows about the safety, or lack thereof, of the Twin Hill uniforms.

## VII.  JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## VIII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class proposed in this Complaint, respectfully request that the Court enter an Order awarding the following relief:

(a)    Certifying this action as a class action; designating Plaintiffs as Representatives for the Classes; and appointing the undersigned as Class Counsel;

(b)     Permanently enjoining Defendants from continuing to commit battery and intentional infliction of emotional distress upon Plaintiffs and the Classes, enjoining Twin Hill from continuing to sell the uniforms at issue, requiring Twin Hill to recall those uniforms previously provided to American Airlines employees, and requiring American to remove the Twin Hill uniforms from its workforce and permit its employees to work in an environment free from the Twin Hill uniforms; or alternatively, for American to adopt NIOSH Recommendation No. 6 and provide leave, with full pay and benefits, to all employees who provide a physician note diagnosing them as proximity reactors until the Twin Hill uniforms have been removed from the workplace;

(c)     Ordering Defendants to establish a medical monitoring program that includes (i) a trust fund, in an amount to be determined, to pay for the medical monitoring of all American Airlines employees who were exposed to the Twin Hill uniforms, (ii) notification to all such employees in writing that they may require medical monitoring necessary to diagnose long-term effects from the Twin Hill uniforms; and (iii) detailed analysis and disclosure of the chemicals to which the employees have been exposed so that treating physicians may be better informed to provide treatment;

(d)     Ordering American to publicly disclose all of the information that it knows about the safety, or lack thereof, of the Twin Hill uniforms;

(e)     Awarding Plaintiffs their individual damages in an amount to be proven at trial;

(f)     Awarding attorneys' fees and costs to Plaintiffs and the Classes; and

(g)     Such other and further relief as the Court deems just and proper.

Dated:  October 4, 2018                              Respectfully submitted,


                                                     By:*/s/ Todd L. McLawhorn*

                                                     Todd L. McLawhorn
                                                     *tmclawhorn@siprut.com*
                                                     Stewart M. Weltman
                                                     *sweltman@siprut.com*
                                                     Michael Chang
                                                     *mchang@siprut.com*
                                                     **SIPRUT PC**
                                                     17 North State Street
                                                     Suite 1600
                                                     Chicago, Illinois 60602
                                                     Phone: 312.236.0000
                                                     Fax: 312.754.9616

                                                     Warren T. Burns*
                                                     *wburns@burnscharest.com*
                                                     **BURNS CHAREST LLP**
                                                     500 North Akard Street
                                                     Suite 2810
                                                     Dallas, Texas 75201
                                                     Phone: 469.904.4550

                                                     Korey A. Nelson*
                                                     *knelson@burnscharest.com*
                                                     Charles J. Gower*
                                                     *jgower@burnscharest.com*
                                                     **BURNS CHAREST LLP**
                                                     365 Canal Street
                                                     Suite 1170
                                                     New Orleans, Louisiana 70130
                                                     Phone: 504.799.2845

                                                     *Admitted Pro Hac Vice

                                                     ***Attorneys for Plaintiffs
                                                     and the Proposed Putative Classes***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that the foregoing **Plaintiffs' Second Amended Class Action Complaint** was filed electronically with the Clerk of the Court using the CM/ECF system on this 4th day of October 2018, and served electronically on all counsel of record.

*/s/ Todd L. McLawhorn*