# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| THOR ZURBRIGGEN et al., on behalf of themselves and on behalf of all others similarly situated, | ) ) ) | |
| | ) | Case No. 1:17-cv-05648 |
| Plaintiffs, | ) | |
| v. | ) | Hon. John J. Tharp, Jr. |
| | ) | |
| TWIN HILL ACQUISITION COMPANY, INC., a California corporation, AMERICAN AIRLINES GROUP INC., a Delaware corporation, AMERICAN AIRLINES, INC., a Delaware corporation, PSA AIRLINES, INC., a Pennsylvania corporation, ENVOY AIR INC., a Delaware corporation, | ) ) ) ) ) ) ) ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' OPPOSITION TO AMERICAN
## DEFENDANTS' SUPPLEMENTAL MEMORANDUM TO
## DISMISS CLAIMS OF PLAINTIFFS IN APPENDICES A-M

# Table of Contents

Introduction ..................................................................................................................................1

Argument .....................................................................................................................................1

    I.     Workers' compensation does not provide
         the exclusive remedy for the New State Plaintiffs ...............................................1

        A.     Plaintiffs Arcate and Ouladbrik—New York ............................................1

        B.     Plaintiff Graham—South Carolina .............................................................3

        C.     Plaintiff Cassidy—Washington ..................................................................4

        D.     Plaintiff Dunard—Virginia .........................................................................5

        E.     Plaintiff Snow—California ..........................................................................7

        F.     Plaintiff Kure—Missouri ..........................................................................10

    II.    Plaintiffs' fraud claims are not
         barred by workers' compensation exclusivity ....................................................10

    III.   For the reasons set forth in Plaintiffs' Opposition,
         claims of battery, intentional infliction of emotional distress,
         fraud, and medical monitoring are sufficiently pled ...............................................12

Conclusion ................................................................................................................................12

## Table of Authorities

**Cases**

*Acevedo v. Consolidated Edison Co. of N.Y.*,
189 A.D.2d 497 (N.Y. App. Div. 1993) ........................................................................ 2

*Anderson v. Fed. Express Corp.*,
No. C/A 4:09-3039-TLW-SV, 2010 WL 3609103 (D.S.C. May 12, 2010) ................................. 3

*Baker v. Schatz*,
80 Wash. App. 775 (Wash. Ct. App. 1996) ..................................................................... 4

*Barth v. Firestone Tire & Rubber Co.*,
673 F. Supp. 1466 (N.D. Cal. 1987) ............................................................................. 9

*Bigelow v. New York State Dep't of Corr.*,
No. 97-CV-460, 1997 WL 733867 (N.D.N.Y. Nov. 7, 1997) ............................................... 2

*Birklid v. Boeing Co.*,
127 Wash. 2d 853 (Wash. 1995) ............................................................................ 4, 5

*Bldg. & Const. Trades Dep't, AFL-CIO v. Rockwell Int'l Corp.*,
756 F. Supp. 492 (D. Colo. 1991) ............................................................................... 11

*Fermino v. Fedco, Inc.*,
7 Cal. 4th 701 (Cal. 1994) .......................................................................................... 7

*Gunnell v. Metrocolor Labs.*, Inc.,
92 Cal. App. 4th 710 (Cal. Ct. App. 2001) ............................................................ 8, 9, 10

*Haddon v. Metropolitan Life Ins Co.*,
239 Va. 397 (Va. 1990) ............................................................................................. 5

*Hart v. Nat'l Mortg. & Land Co.*,
189 Cal. App. 3d 1420 (Ca. Ct. App. 1987) ................................................................... 7

*Hattox v. State Farm Mut. Auto. Ins. Co.*,
No. 12CV2597-AJB KSC, 2013 WL 314953 (S.D. Cal. Jan. 25, 2013) ................................... 7

*Hazzis v. Modjadidi*,
69 Va. Cir. 385 (Va. Cir. Ct. 2005) .............................................................................. 6

*Hurd v. Monsanto Co.*,
908 F. Supp. 604 (S.D. Ind. 1995) ....................................................................... 11

*Johns-Manville Prod. Corp. v. Superior Court*,
27 Cal. 3d 465 (Cal. 1980) ................................................................................... 8

*Lichtman v. Knouf*,
248 Va. 138 (Va. 1994) ........................................................................................ 6

*Lomibao v. Baxter Healthcare Corp.*,
No. CV131789PSGMRWX, 2013 WL 12130320 (C.D. Cal. May 6, 2013) ........... 8, 9

*Murhutta v. Planning Sys. Inc.*,
61 Va. Cir. 340 (Va. Cir. Ct. 2003) ..................................................................... 5, 6

*Palestini v. Gen. Dynamics Corp.*,
99 Cal. App. 4th 80 (Cal. Ct. App. 2002) ............................................................ 8, 9

*Stukes v. Paragon Sys., Inc.*,
No. 2:16CV675, 2017 WL 6667531 (E.D. Va. Oct. 19, 2017) ................................ 6

*Sutter v. First Union Nat. Bank of Virginia, Inc.*,
932 F. Supp. 753 (E.D. Va. 1996) ......................................................................... 6

*Transp. Indem. Co. v. Aerojet Gen. Corp.*,
202 Cal. App. 3d 1184 (Cal. Ct. App. 1988) ......................................................... 8

*Volling v. Antioch Rescue Squad*,
999 F. Supp. 2d 991 (N.D. Ill. 2013) ..................................................................... 3

**Statutes**

Cal. Lab Code § 3602 ..................................................................................... 7 , 8

## Introduction

The law concerning six of thirteen of the new Plaintiffs was previously briefed by the Parties: Plaintiffs Gradei (Illinois), Robert Johnson and Szczepaniak (Florida), Sutherland and Wooten (Ohio), and Thierry (North Carolina). Plaintiffs thus designate their Opposition to the American Defendants' motion to dismiss the SAC (Dkt. 133) (the "Opposition") to this brief in opposition to American's memorandum to dismiss appendices A-M. (Dkt. 147.)

There are seven Plaintiffs from states that were not previously addressed: Snow (California), Kure (Missouri), Ouladbrik and Arcate (New York), Graham (South Carolina), Dunard (Virginia), and Cassidy (Washington) (collectively, "New State Plaintiffs"). Yet, with the exception of Plaintiff Kure's claims under Missouri law, for much of the same reasons as set forth in Plaintiffs' Opposition, the New State Plaintiffs sufficiently allege claims that are not barred by workers' compensation exclusivity. American's conduct toward them after American knew that they were known proximity reactors is intentional under any standard, and Plaintiffs are thereby exempt from workers' compensation exclusivity.

## Argument

### I.     Workers' compensation does not provide the exclusive remedy for the New State Plaintiffs.

#### A.     Plaintiffs Arcate and Ouladbrik—New York.

New York applies the substantial certainty test previously discussed by the Court[1]:

> In order to constitute an intentional tort, the conduct must be engaged in with the desire to bring about the consequences of the act. A mere knowledge and appreciation of a risk is not the same as the intent to cause injury ... *A result is intended if the act is done with the purpose of accomplishing such a result or with knowledge that to a **substantial certainty** such a result will ensue.*

---

[1] The Court previously applied the substantial certainty test to Plaintiffs who reside in North Carolina, Connecticut, Texas. (Dkt. 96 at 13.)

*Acevedo v. Consolidated Edison Co. of N.Y.*, 189 A.D.2d 497, 499 (N.Y. App. Div. 1993) (emphasis added and citation omitted). Just as the claims of other proximity reactor Plaintiffs in substantial certainty states are not barred by workers' compensation exclusivity because American continued to, and continues to, intentionally harm them *after* American was informed that they are proximity reactors, the same is true for Plaintiffs Arcate and Ouladbrik. Both are known proximity reactors to American such that it is substantially certain that injury will occur when these Plaintiffs are in proximity to those wearing the Twin Hill uniforms. (Dkt. 133 at 19-23.)

Plaintiffs Arcate and Ouladbrik notified American that they are proximity reactors. (Dkt. 122-1 at App. B (Plaintiff Ouladbrik), App. J (Plaintiff Arcate).) Plaintiff Ouladbrik notified her manager when having discussions concerning her attendance and use of her sick leave—all of which she was forced to take because of her proximity reactions. Plaintiff Arcate similarly notified his Chief Pilot by letter that he is a proximity reactor. Yet despite these notifications, American did nothing in response. It was on notice that such injuries to both Plaintiffs are substantially certain to occur because it knows them to be proximity reactors. And American cannot now deny the existence of proximity reactors as such allegations are in Plaintiffs' well pleaded Complaint. (SAC ¶¶14-15, 19, 109, 154, 208-9, 274, 295, 302-3, 315, 333, 442, 450 (detailing American's knowledge of proximity reactors in the workplace)); *see Bigelow v. New York State Dep't of Corr.*, No. 97-CV-460, 1997 WL 733867, at *7 (N.D.N.Y. Nov. 7, 1997) (finding plaintiff sufficiently alleged an intentional infliction of emotional distress claim where plaintiff notified superiors of harassment and was continually harmed thereafter); (Dkt. 96 at 28-29 ("a plaintiff must plead and prove that the defendant was (at least) substantially certain that its actions would injure the plaintiff ….") (footnote omitted)).

**B.      Plaintiff Graham—South Carolina.**

South Carolina, where Plaintiff Graham resides, like Illinois, employs the specific intent test.[2] American contends that there are no allegations suggesting a specific intent to harm. (Dkt. 147 at 3.) But Plaintiff Graham alleges the same sort of intent by an employer that classically satisfies the specific intent test—telling her employer that its conduct is causing her harm on a continuing basis and the employer does nothing in response. (Dkt. 122-1 at App. G (notifying crew coordinator that she is a proximity reactor).) Just as this Court held in *Volling*, the District Court in *Anderson* adopted the Magistrate Judge's recommendation finding that the employee sufficiently alleged claims not subject to workers' compensation exclusivity where an employer failed to investigate harassment claims, causing that employee continuing harm. *Anderson v. Fed. Express Corp.*, No. C/A 4:09-3039-TLW-SV, 2010 WL 3609103, at *2 (D.S.C. May 12, 2010) (Hodges, M.J.), *report and recommendation adopted*, No. CIVA 4:09-3039TLWSVH, 2010 WL 3609049 (D.S.C. Sept. 9, 2010); *see Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1003 (N.D. Ill. 2013) (Tharp, J.) (similar). American's awareness that Plaintiff Graham is a proximity reactor while not correcting the problem, is sufficient on its own to satisfy the specific intent test. But it should not be lost that American is responsible for foisting these dangerous uniforms on its workforce with full knowledge that thousands would be harmed and continues to insist that these dangerous uniforms remain in the workplace when it knows that there are proximity reactors and, in particular, that Plaintiff Graham is a proximity reactor. (Dkt. 133 at 23-25.) Plaintiff Graham has satisfied the specific intent test.

---

[2] Other states that apply the specific intent test, which were already addressed by the parties, include Tennessee, Colorado, and Ohio.

Washington employs the "actual knowledge" test for the intentional tort exception to workers' compensation exclusivity.[3] As alleged in the complaint, American has actual knowledge that Plaintiff Cassidy is being harmed as a proximity reactor with the submission of Appendix K to American on December 3, 2018 and thus is liable for her injuries going forward. For the reasons set forth in Plaintiffs' Opposition, American does have the "actual knowledge" with the submission of Appendix K. *Birklid v. Boeing Co.*, 127 Wash. 2d 853, 857, 865–66 (Wash. 1995) (finding "actual knowledge" where employer knew "in advance its workers would become ill from the phenol-formaldehyde fumes, yet put the new resin into production.") (footnote omitted); *Baker v. Schatz*, 80 Wash. App. 775, 783 (Wash. Ct. App. 1996) (finding sufficient basis for actual knowledge where employer "knew its employees were being injured by the working environment at the plant and that if the environment was not altered, it would, with certainty, continue to injure them."); (*see* Dkt. 133 at 19-23.) Despite being a summary judgment opinion, the circumstances between this case and *Birklid* bear mentioning.

In *Birklid*, the employer was found to have actual knowledge that its employees were being harmed where during preproduction testing using phenol-formaldehyde resin, a supervisor noted odors and employees complained of "dizziness, dryness in nose and throat, burning eyes, and upset stomach." 127 Wash.2d at 856. It was "anticipate[d] this problem [would] increase as temperatures rise and production increases." *Id*. Citing economic reasons, the employer refused to improve ventilation in the facility when requested. To no one's surprise, when production did commence, "workers experienced dermatitis, rashes, nausea, headaches, and dizziness. Workers passed out on the job." *Id*. The general supervisor said "he knew these complaints were reactions to working

---

[3] Indiana also uses the same test.

with the phenolic material." *Id*. The Supreme Court of Washington noted that the case was unprecedented:

> In all the other Washington cases, while the employer may have been aware that it was exposing workers to unsafe conditions, its workers were not being injured until the accident leading to litigation occurred. There was no accident here. The present case is the first case to reach this court in which the acts alleged go beyond gross negligence of the employer, and involve willful disregard of actual knowledge by the employer of continuing injuries to employees.

*Id*. at 863. Here, like in *Birklid*, prior to the roll-out, American knew that a certain percentage of its employees were reacting and would react to the uniforms based upon the two wear tests. Further, the two unions pleaded with American to not rollout the uniforms. (SAC ¶¶3, 12, 179, 187.) So it would appear that under Washington's actual knowledge test, not only is American liable to Plaintiff Cassidy for all injuries caused to her since the rollout, it is also liable for injunctive relief for all employees from Washington who have been harmed by the Twin Hill uniforms. But, at a minimum, American is liable to Plaintiff Cassidy for her proximity reaction injuries as American has actual knowledge of Plaintiff Cassidy's claims at least from December 3, 2018 onwards.

### D.    Plaintiff Dunard—Virginia.

American contends that Plaintiff Dunard's claims are barred by workers' compensation exclusivity because his injury is "by accident" under Virginia law.  (Dkt. 147 at 7-8.) American principally relies on *Murhutta v. Planning Sys. Inc.*, 61 Va. Cir. 340 (Va. Cir. Ct. 2003). The court in *Murhutta* in turn relied upon the Virginia Supreme Court's decision in *Haddon* that "an injury caused by an employer's intentional tort falls within the definition of injury *by accident.*" *Id*. (emphasis added and citing *Haddon v. Metropolitan Life Ins Co.*, 239 Va. 397 (Va. 1990)). But that is not the end of it.

The Virginia Supreme Court clarified in *Licthman*, some four years later, that injuries are not "by accident" where "gradually incurred" and "not the result of an identifiable incident." *Lichtman v. Knouf*, 248 Va. 138, 140 (Va. 1994) (describing incidents of harassment endured for over a year that were not subject to workers' compensation exclusivity); *Hazzis v. Modjadidi*, 69 Va. Cir. 385 (Va. Cir. Ct. 2005) (finding claims of mental and physical injuries over several months were not barred by workers' compensation). Plaintiff Dunard's allegations are analogous to those in *Lichtman* and its progeny.

Plaintiff Dunard, a proximity reactor, alleges continuing harms to this day because of his continued exposure to Twin Hill uniforms. (Dkt. 139 at App. M.) The SAC alleges a cumulative injury occurred and continues to occur with exposure to the uniforms that cannot be attributed to an identifiable incident. (Dkt. 98 at ¶11 (American is "exposing its entire workforce to potential, but yet to surface, future health issues because of their exposure to these toxic uniforms"); *id.* at ¶150 ("sensitization increases over time with additional exposure."); *id.* at ¶152 ("virtually everyone who has reported to American as a reactor is at risk to ever increasing sensitization even if they are no longer wearing the Twin Hill uniforms …."). American relies upon cases that miss the point because they arise from a *single* injurious event that makes it an identifiable incident. *Murhatta*, 61 Va. Cir. at 340 (office building fumigated a single time); *Stukes v. Paragon Sys., Inc.*, No. 2:16CV675, 2017 WL 6667531, at *15 (E.D. Va. Oct. 19, 2017) (a meeting where an altercation ensued), *aff'd*, 735 F. App'x 107 (4th Cir. 2018); *Sutter v. First Union Nat. Bank of Virginia, Inc.*, 932 F. Supp. 753, 759 (E.D. Va. 1996) (a forcible removal from the workplace after being terminated). Plaintiff Dunard's injuries are continuing and under Virginia law are not attributable to an identifiable incident, and are thus not subject to workers' compensation exclusivity.

Plaintiff Snow's claims are not barred by the California Workers' Compensation Act ("CWCA") because Plaintiff meets two different exceptions to the CWCA: (1) American's conduct exceeds the scope of the typical employer-employee relationship and (2) Plaintiff pleads the fraudulent concealment exception.

First, American overlooks that an exception exists outside of those codified in Cal. Lab Code § 3602(b) for intentional conduct that exceeds the scope of the typical employer-employee relationship. *Fermino v. Fedco, Inc.*, 7 Cal. 4th 701, 714 (Cal. 1994) ("there are certain types of intentional employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought."); *see Hart v. Nat'l Mortg. & Land Co.*, 189 Cal. App. 3d 1420, 1432 (Ca. Ct. App. 1987) (permitting IIED claim where the "employers step out of their roles as such and commit acts which do not fall within the reasonably anticipated conditions of work…."); *Hattox v. State Farm Mut. Auto. Ins. Co.*, No. 12CV2597-AJB KSC, 2013 WL 314953, at *5 (S.D. Cal. Jan. 25, 2013) ("The test for deciding whether a plaintiff may pursue a tort action, or is confined to a workers' compensation proceeding, is based on whether the acts complained of are normally within an employer-employee relationship."); (Dkt. 147 at 8 n.4.) Claims associated with criticisms as to work performance, demotions, dismissals and the like are not subject to this exception because they occur in the normal course of employment. But situations involving illegal discriminatory practices and sexual harassment, in contrast, are. *Id*. The same should be true of American's conduct here as providing toxic uniforms and then allowing them to remain in the workplace is abnormal conduct.

The fact and circumstances surrounding the Twin Hill uniform roll out and American's conduct in relation to it do not come within the normal scope of the employer-employee

relationship. Instead of removing the Twin Hill uniforms from the workplace for proximity reactors like Plaintiff Snow, whom American knows will be injured because she is a proximity reactor, or at least reassigning proximity reactors so that they are not exposed to the Twin Hill uniforms, American *requires* proximity reactors endure their suffering as they continue to work around the Twin Hill uniforms. Such conduct is clearly outside of the normal course of employment.[4] A manager even told Plaintiff Snow to suffer through her reactions. (Dkt. 122-1 at App. A.)

Second, the fraudulent concealment exception to workers' compensation exclusivity applies. When an employer (1) has knowledge that plaintiff is suffering a work-related injury; (2) the employer conceals that knowledge from plaintiff; and (3) the plaintiff's injury is aggravated as a result, California recognizes the fraudulent concealment as an exception to workers' compensation exclusivity.[5] Cal. Lab. Code § 3602(b)(2); *Palestini v. Gen. Dynamics Corp.*, 99 Cal. App. 4th 80, 89-90 (Cal. Ct. App. 2002) (holding plaintiff sufficiently pleaded fraudulent concealment exception attributable to repeated exposure to carcinogenic chemicals that the

---

[4] While American maintains that Plaintiff Snow alleges injuries that "arose during the course and scope of her employment," this is not what the cases it cites hold as those cases involved jobs that necessarily involved the dangers of chemical exposure such as employees whose jobs exposed them to chemicals as cleaners. *See Lomibao v. Baxter Healthcare Corp.*, No. CV131789PSGMRWX, 2013 WL 12130320, at *1 (C.D. Cal. May 6, 2013) (toxic fumes as a cleaner); *Gunnell v. Metrocolor Labs.*, Inc., 92 Cal. App. 4th 710 (Cal. Ct. App. 2001) (same). The same cannot be said of an American Airlines flight attendant, pilot, or service representative—especially when the source of their harm are uniforms.

[5] The Supreme Court of California in *Johns-Manville*, which American's authority, *Gunnell*, relies upon, created the exception for the aggravation of injuries attributable to fraudulent concealment that was later codified as the fraudulent concealment exception. *Johns-Manville Prod. Corp. v. Superior Court*, 27 Cal. 3d 465, 476–77 (Cal. 1980) (concluding workers' compensation exclusivity "would not be [] undermined by holding defendant liable for the aggravation of this plaintiff's injuries …."); *Transp. Indem. Co. v. Aerojet Gen. Corp.*, 202 Cal. App. 3d 1184, 1186 (Cal. Ct. App. 1988) ("The Johns–Manville exception is codified in Labor Code section 3602, subdivision (b)(2).") (footnote omitted).

employer affirmatively represented was safe); *Barth v. Firestone Tire & Rubber Co.*, 673 F. Supp. 1466, 1476 (N.D. Cal. 1987) (similar). *Palestini* is instructive.

In *Palestini*, the lower court's dismissal of an employee's claims was reversed when the court found that the fraudulent concealment exception applied where the defendants repeatedly represented that certain chemicals the employee was exposed to were safe and would not harm him. 99 Cal. App. 4th at 82-83. The plaintiff was exposed to carcinogenic chemicals while at work and the defendants failed to adequately prevent his exposure. The gloves provided were inadequate as they would disintegrate and provide little or no protection against the chemicals. *Id*. at 90. Instead, like here, the defendants affirmatively represented that the chemicals were safe and would not cause the employee any harm. *Id*. at 94.

American knows that Plaintiff Snow is a proximity reactor. As noted in Plaintiffs' Opposition, employees such as Snow "have plausibly relied . . . on American's statements about uniform safety." (Dkt. 133 at 28; SAC ¶¶87, 101-2, 113, 144, 148, 156, 167, 216, 227-31, 255, 260, 479-86.) Indeed, that is why employees like Plaintiff Snow have continued to wear the uniforms—American has proclaimed the uniforms to be safe. Like the defendants in *Palestini*, American also provides its employees with inadequate protections to exposure to the Twin Hill uniforms. All the while, American knows that there are proximity reactors in its workforce, like Plaintiff Snow, who are and will be harmed so long as the Twin Hill uniforms are in the workplace and their injuries will only be aggravated by the effects of sensitization. *See supra* I.D.

American's reliance on *Lomibao* is misplaced. There, the court only addressed fraudulent concealment in passing because the plaintiff did not assert it and no allegations supported it. *Lomibao v. Baxter Healthcare Corp.*, No. CV131789PSGMRWX, 2013 WL 12138733, at *4 (C.D. Cal. Aug. 5, 2013). Also, in its reliance upon *Gunnell*, American does not recognize that the

employer prevailed *only* because its misconduct did not go past the assurance to provide a safe physical environment and assuring the safety of substances in the workplace. *Gunnell*, 92 Cal. App. 4th at 722-23 (reversing jury verdict where employer's conduct did not go beyond "failure to assure that the substances used by the employee or the physical environment were safe."). We are past that point here.

Plaintiff Snow's injuries are attributable to her reliance on American's fraudulent proclamations that the uniforms were proven safe as she would not have worn them for as long as she did otherwise. (Dkt. 133 at 28-29.) Those injuries were and are currently aggravated by the effects of sensitization from continued exposure to the uniforms. *See supra* I.D. Plaintiff Snow's claims can proceed outside of the CWCA.

### F.    Plaintiff Kure—Missouri.

Plaintiff Kure concedes that he does not have a ripe battery or IIED claim against American in the event this Court applies workers' compensation exclusivity to his claim.

### II.    Plaintiffs' fraud claims are not barred by workers' compensation exclusivity.

American again relies upon its argument that fraud claims are barred by workers' compensation exclusivity because a separate injury apart from exposure to the uniforms is not alleged. (Dkt. 147 at 9.) Again, that is incorrect. (Dkt. 133 at 27-29.) Plaintiffs plead that American fraudulently represented to its workforce that the Twin Hill uniforms were proven safe numerous times after the roll-out. (SAC ¶¶87, 101-2, 113, 144, 148, 156, 167, 216, 227-31, 255, 260, 479-86.) Likewise, throughout this period, Plaintiffs stopped wearing the uniforms at varying points in time because Plaintiffs were lulled into not associating their harms with the uniforms in the face of constant representations by their employer that the uniforms were proven safe. Thus where "deceit follows the injury and produces a second injury," workers' compensation exclusivity does

not apply. (Dkt. 133 at 28-29.) Plaintiffs also bring the fraud claims on behalf of themselves *and* the Uniform Class—which includes "current and former employees who were exposed" to the uniforms. This includes those who are currently wearing the uniforms and have yet to make the connection between their illnesses and the uniforms because of American's fraudulent representations. Alternatively, it also includes those who have yet to react but will. These claims are similarly pled as deceit that causes subsequent injuries.

American previously asserted that Plaintiffs misunderstand the scope of this exception because "it does not apply to scenarios in which deceit leads to continuous or repeated injuries of the same kind where those injuries *are compensable* under the workers' compensation regime." (Dkt. 141 at 16 (emphasis added).) But that position presupposes that the intentional tort claims alleged against it are subject to workers' compensation. As discussed at length, these intentional tort claims fall squarely within exceptions allowing such claims to be adjudicated outside of the workers' compensation regime. American's reliance on cases where the plaintiffs failed to allege intentional torts, subjecting them to workers' compensation exclusivity, are thus unavailing. *Bldg. & Const. Trades Dep't, AFL-CIO v. Rockwell Int'l Corp.*, 756 F. Supp. 492, 495 (D. Colo. 1991) (finding no intentional tort exception to workers' compensation exclusivity in Colorado), *aff'd sub nom. Bldg. & Const. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487 (10th Cir. 1993)[6]; *Hurd v. Monsanto Co.*, 908 F. Supp. 604, 610 (S.D. Ind. 1995) (failing to allege facts of actual knowledge that injury was certain), *aff'd in part sub nom. Hurd v. Westinghouse Elec. Corp.*, 107 F.3d 873 (7th Cir. 1997). Plaintiffs properly plead separate injuries following American's fraudulent representations at numerous points in time which produced separate and distinct injuries.

---

[6] As agreed by the Parties, Colorado recognizes the specific intent exception to overcome workers' compensation exclusivity (Dkt. 108 at 11; Dkt. 133 at 23, n.13.) The court in *Rockwell* did not address this exception.

**III. For the reasons set forth in Plaintiffs' Opposition, claims of battery, intentional infliction of emotional distress, fraud, and medical monitoring are sufficiently pled.**

Plaintiffs refer to their Opposition in support of their claims of battery, intentional infliction of emotional distress, and medical monitoring. (Dkt. 133 at 27-30.)

<u>**Conclusion**</u>

For the foregoing reasons, this Court should deny the American Defendants' motion to dismiss Plaintiffs' Second Amended Complaint.

Dated:  March 20, 2019                                Respectfully submitted,

By:*/s/ Todd L. McLawhorn*

Todd L. McLawhorn
*tmclawhorn@siprut.com*
Stewart M. Weltman
*sweltman@siprut.com*
Michael Chang
*mchang@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.754.9616

Warren T. Burns*
*wburns@burnscharest.com*
**BURNS CHAREST LLP**
500 North Akard Street
Suite 2810
Dallas, Texas 75201
Phone: 469.904.4550

Korey A. Nelson*
*knelson@burnscharest.com*
Charles J. Gower*
*jgower@burnscharest.com*
**BURNS CHAREST LLP**

365 Canal Street
Suite 1170
New Orleans, Louisiana 70130
Phone: 504.799.2845

*Admitted Pro Hac Vice

***Attorneys for Plaintiffs
and the Proposed Putative Classe***

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned, an attorney, certifies that the foregoing **Plaintiffs' Opposition to American Defendants' Supplemental Memorandum to Dismiss Claims of Plaintiffs in Appendices A-M** was filed electronically with the Clerk of the Court using the CM/ECF system on this 20th day of March 2019, and served electronically on all counsel of record.

*/s/Todd L. McLawhorn*