# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOR ZURBRIGGEN, DENA CATAN, HALEY JOHNSON, LYNNETTE CHESTER, KIMBERLY JOHNSON, JOSEPH CATAN, BARBARA BELL, DOUG CRUMRINE, LAJUAN PRESTON, TIMOTHY TERRY, JULIETTE ONODY, CONSTANCE GERMOND MCCORD, TIMOTHY R. AKERS, JULIE BURKE, PATRICIA BEHNKE, EDWARD J. BURKE, STEPHEN WEIGEL, DORA A. BROWN BRANCH, SOAD HAMDAN, VICKIE ISAAC, DEMETRIA ANDERSON, KEITH MAGINN, JUDITH J. DRAKE, DESIREE WEBBER-VAN BOXTEL, CHRISTINA NYAKAS, CHRISTINA H. ENDICOTT, SHERYL KELLY, SCOTT J. AUSTIN, MIN LI, CARLA J. PATTERSON, BOBBI GORDON, CARRIE BEAN, LISA JOY, KATHY L. RUNKLE, VERONICA VERA, JULIE F. KRESKO, SANDRA STUART, DEANNA JONES, and DEBORAH A. BRASIER, on behalf of themselves and others similarly situated, | |
| Plaintiffs, | No. 17 C 05648 |
| v. | Judge John J. Tharp, Jr. |
| TWIN HILL ACQUISITION COMPANY, INC and AMERICAN AIRLINES, INC., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs in this action, pilots, flight attendants, and other airline employees, have served

non-party subpoenas on Intertek, a product testing company, and Dr. Andrew Scheman regarding their communications and work with American Airlines related to the Twin Hill uniforms that American introduced in September 2016, which the plaintiffs allege caused a variety of dermal, respiratory, and other health issues. Defendant American Airlines has filed a motion to quash the subpoenas pursuant to Fed. R. Civ. P. 45(d)(3).

## BACKGROUND

In September 2016, American Airlines debuted new uniforms, the first in nearly 30 years, for its above-the-wing workforce. Soon after the rollout, pilots and flight attendants began reporting a variety of health issues linked to the uniforms, including skin rashes, vertigo, and respiratory problems. Within ten days, the Association of Professional Flight Attendants (APFA) had received 400 adverse reaction reports from flight attendants. SAC ¶ 193. In October 2016, an unnamed employee filed a complaint about the new uniforms with OSHA. *Id.* ¶ 269; Mem. Supp. Mot. Quash at 2, ECF No. 119. The APFA filed a presidential grievance regarding the Twin Hill uniforms in December 2016. *See* APFA Grievance, ECF No. 132-3. Soon after the grievance was filed, American's workers' compensation insurer "began consulting with Dr. Andrew Scheman regarding patch testing of the Twin Hill uniforms in connection with at least two uniform-related workers' compensation claims."[1] Mem. Supp. Mot. Quash at 2, ECF No. 119. Dr. Scheman conducted two independent medical examinations for American's workers' compensation insurer, including an examination of plaintiff Robert Johnson. Resp. Mot. Quash at 8-9, ECF No. 127. In approximately January 2017, American began to consult with Dr. Scheman about a patch testing

---

[1] Patch testing involves the application of allergens to patches that are placed on the skin. The patches are typically worn for 48 hours and then removed upon return to the doctor's office. Patch tests can detect delayed allergic reactions, which can take several days to develop. *See generally Allergy Skin Tests*, Mayo Clinic (Apr. 4, 2020), https://www.mayoclinic.org/tests-procedures/allergy-tests/about/pac-20392895.

2

procedure for workers' compensation claims and about uniform testing more broadly. Mem. Supp. Mot. Quash at 3-4, ECF No. 119; Reply Mot. Quash at 2-3, ECF No. 132.

Prior to the uniform rollout, American conducted two initial wear tests of the Twin Hill uniforms, the first in early 2015 and the second in early 2016. In response to complaints in the first wear test, American sought out Intertek to test uniform fabric samples, both worn and unworn, for "chemicals that might provoke skin reactions." SAC ¶ 122. Intertek issued two reports on uniform fabric tests, the first dated April 1, 2015, and the second dated April 5, 2016. Intertek Reports, ECF Nos. 108-1, 108-2. American also avers that it contacted Intertek in November 2016 "in anticipation of litigation and had Intertek conduct further testing." Mem. Supp. Mot. Quash at 2, ECF No. 119.

The plaintiffs have issued subpoenas to both Intertek and Dr. Scheman for documents and communications related to the Twin Hill uniforms. American has moved to quash the subpoenas on the grounds that some—but likely not all—of these materials are protected by the attorney work product doctrine or by Fed. R. Civ. P. 26(b)(4)(D) as the work of nontestifying consultants. American would like to review responsive documents prior to production and then to provide all nonprivileged materials to the plaintiffs along with a privilege log for any materials that it asserts are protected.[2]

## DISCUSSION

The Federal Rules of Civil Procedure provide that a court shall quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). The attorney work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or

---

[2] As such, American's motion is not a motion to quash the plaintiffs' subpoenas entirely.

3

its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Fed. R. Civ. P. 26(b)(4)(D), "which prohibits parties from discovering the research of a nontestifying expert . . . is simply an application of the work product rule. The consultant's work will, by definition, be work product because the party uses the consultant in anticipation of litigation." *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1024 (7th Cir. 2012) (internal quotation marks omitted). Rule 26(b)(4)(D) "concerns experts retained or specially consulted in relation to trial preparations, but it also precludes discovery against experts *merely consulted* in preparation for trial but not retained or specially employed . . . To conclude that an expert was hired in anticipation of litigation, a lawsuit need not have been filed, but there must have existed 'more than a remote possibility of litigation.'" *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1151 (N.D. Ill. 2001). Motions to quash are within the sound discretion of the district court. *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 977 (7th Cir. 2000).

      The plaintiffs object to the motion to quash, arguing that American has provided no details about its agreements with Intertek and Dr. Scheman sufficient to show that they were nontestifying consultants and that American has waived privilege with respect to both Intertek and Dr. Scheman. As to Intertek's and Dr. Scheman's roles as nontestifying consultants, American has the better of the argument. Contrary to plaintiffs' representations, American need not identify which attorney retained the consulting experts or the scope or terms of the retention agreement, as an individual or entity need not be formally retained to be subject to the protections of Rule 26(b)(4)(D); it is sufficient that the individual or entity have been "merely consulted," so long as the consultation

4

was in anticipation of litigation. *Spearman*, 128 F. Supp. 2d at 1151.[3] The plaintiffs do not dispute that American anticipated litigation by September 2016, Resp. Mot. Quash at 7 n.2, ECF No. 127, and accordingly any materials related to American's consultations with Intertek beginning in November 2016 and with Dr. Scheman beginning in or about January 2017 are properly considered protected.[4]

The plaintiffs raise two issues with respect to the scope of the motion to quash. First, the plaintiffs note that Dr. Scheman performed two independent medical examinations for American's workers' compensation insurer in or around August 2017, including one for plaintiff Robert Johnson, which the plaintiffs argue cannot be protected because the examinations were intended to be independent. The Court agrees that the independent medical examinations would not be protected by Rule 26(b)(4)(D), but American's communications with Dr. Scheman, along with any materials in his possession pertaining to his broader consultation with American after approximately January 2017, would be protected. *Cf. Bankr. Estate of Lee v. Burlington N. Santa Fe R.R. Co.*, No. 07-CV-5829, 2010 WL 894056 (N.D. Ill. Mar. 5, 2010) (doctor who performed

---

[3] The plaintiffs argue that *Spearman* is inapposite because there is no evidence that Dr. Scheman provided or was asked to provide any report or other deliverable to American's counsel in anticipation of litigation other than the independent medical examinations. This argument is unavailing, as *Spearman* itself indicates that "facts known by, or opinions held by an informally consulted expert" are protectable; a report or other formal document is not necessary to invoke Rule 26(b)(4)(D). 128 F. Supp. 2d at 1151.

[4] While litigants may not raise new arguments for the first time in a reply brief, *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009), "where the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for [granting a motion], reply papers—both briefs and affidavits—may properly address those issues." *Jones v. R.R. Donnelley & Sons Co.*, No. 96-CV-7717, 1999 WL 33257839, at *3 (N.D. Ill. Feb. 11, 1999) (quoting *Baugh v. City of Milwaukee*, 823 F. Supp. 1452, 1456-57 (E.D. Wis. 1993)). Here, the plaintiffs raised their concerns about the lack of evidence for defense counsel's communications with Intertek and Dr. Scheman in their response brief; the affidavits submitted with American's reply are consistent with American's representations in its motion, and the plaintiffs have had an opportunity to respond in their surreply.

independent medical examination could also serve as protected nontestifying consultant).

The second issue involves the two rounds of testing that Intertek conducted for American in 2015 and early 2016. The plaintiffs argue that because American seeks to protect only materials stemming from its consultation with Intertek in anticipation of litigation beginning in November 2016, it should not be entitled to review all of Intertek's document production in advance. Surreply Mot. Quash at 2, ECF No. 137. The plaintiffs acknowledge, however, that American has produced documents related to Intertek's testing, has not produced a privilege log of any of their communications with Intertek, and that the plaintiffs found and produced a copy of Intertek's February 2017 report to the defendants. Resp. Mot. Quash at 5-6, ECF No. 127. At this stage, there is no indication that American will attempt to improperly hold back responsive material, nor that the plaintiffs could not challenge any materials designated as privileged from these earlier time periods.

The plaintiffs' waiver argument is similarly unavailing. The plaintiffs argue that attorneys Dan Grant and Gerald Smoller indicated that Dr. Scheman had no "formal agreement" or "formal conflict" in his work with American. These two individuals, however, represented American's workers' compensation insurer and Dr. Scheman directly; neither of them could waive American's privilege.[5] Dr. Scheman himself indicated that he believed that "it would be a conflict of interest to work with the plaintiff's attorney unless there is an agreement between the two sides." Resp.

---

[5] Plaintiffs also argue in their surreply that Dr. Scheman's communications with counsel for American's insurer waived any privilege. Surreply Mot. Quash at 3, ECF No. 137. This is not so; a waiver of work product protection occurs only if the disclosure "is inconsistent with the maintenance of secrecy from the disclosing party's adversary," *Minn. Sch. Bds. Ass'n Ins. Tr. v. Emp'rs Ins. Co. of Wausau*, 183 F.R.D. 627, 631-32 (N.D. Ill. 1999), and plaintiffs provide no reason why Dr. Scheman's communication with American's workers' compensation insurer, likely regarding the independent medical examinations, is inconsistent with maintaining secrecy from plaintiffs regarding Dr. Scheman's other consulting work for American in anticipation of litigation.

6

Mot. Quash at 4, ECF No. 127.[6] As to Intertek, while American produced and relied upon two Intertek reports in support of its motion to dismiss, it does not follow that it has waived its privilege as to any other materials. *See Appleton Papers*, 702 F.3d at 1025 ("disclosure of some documents does not necessarily destroy work-product protection for other documents of the same character"). To the extent that plaintiffs are correct that American relying on these reports in support of its motion to dismiss rendered Intertek a testifying rather than nontestifying consultant, Intertek's drafts and communications would still be protected. *See* Fed. R. Civ. P. 26(b)(4)(B)-(C). Accordingly, American has not waived privilege or protection with respect to Dr. Scheman or Intertek.

Finally, the plaintiffs argue that if the materials at issue are protected by the attorney work-product doctrine, American and its counsel would have a better sense of what materials exist. With respect to communications with American's counsel, this is likely correct, but American may not be aware of any notes, drafts, or other protectable documents in the possession of Dr. Scheman or Intertek that nevertheless include the mental impressions of American's counsel. Because the protection extends not just to formal reports or deliverables but also to facts known and opinions held by consultant experts, American's alleged lack of familiarity with the universe of responsive documents is not fatal to its motion to quash. Further, American has submitted a sample set of documents for *in camera* review, and the Court is satisfied that these documents are protectable.

---

[6] Plaintiffs' counsel apparently understood Dr. Scheman's attorney, who stated that Dr. Scheman "has had nearly a year of conversations and work performed for American Airlines concerning the uniforms," Reply Mot. Quash at 2, ECF No. 132, to mean solely the independent medical examinations rather than additional consultation. This misapprehension in no way constitutes a waiver.

\* \* \* \* \*

For the foregoing reasons, American's motion to quash the subpoenas served on Intertek and Dr. Scheman is granted. American shall be permitted to review the documents that Dr. Scheman and Intertek have collected in response to the subpoenas and then to provide all nonprotected documents to the plaintiffs and a privilege log for any documents American asserts are protected by the attorney work-product doctrine or Rule 26(b)(4)(D).

Date: July 29, 2020

John J. Tharp, Jr.
United States District Judge